# EXHIBIT A

# In the Superior Court of the State of Arizona
# In and For the County of Maricopa

Clerk of the Superior Court
*** Electronically Filed ***
D. Bicoy, Deputy
10/18/2022 8:49:10 AM
Filing ID 15001104

**Plaintiff's Attorneys:**

Justin Henry - Primary Attorney
Bar Number: 027711, issuing State: AZ
Law Firm: Slavicek Law Firm
5500 North 24th Street
Phoenix, AZ 85016
Telephone Number: (602)285-4420
Email address: justin@slaviceklaw.com

CV2022-013851

Brett Slavicek
Bar Number: 019306, issuing State: AZ
Law Firm: Slavicek Law Firm
Telephone Number: (602)285-4426

**Plaintiff:**

Chase Whitehead

**Defendant:**

Amica Mutual Insurance Company

Discovery Tier t3

Case Category: Other Civil Case Categories
Case Subcategory: Declaratory Judgment

AZTurboCourt.gov Form Set #7311551

Clerk of the Superior Court
*** Electronically Filed ***
D. Bicoy, Deputy
10/18/2022 8:49:10 AM
Filing ID 15001105

Person/Attorney Filing: Justin Henry
Mailing Address: 5500 North 24th Street
City, State, Zip Code: Phoenix, AZ 85016
Phone Number: (602)285-4420
E-Mail Address: justin@slaviceklaw.com
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 027711, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

Chase Whitehead
Plaintiff(s),
v.
Amica Mutual Insurance Company
Defendant(s).

Case No. CV2022-013851

**SUMMONS**

To: Amica Mutual Insurance Company

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS. READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to <u>Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.</u> Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

AZturboCourt.gov Form Set #731551

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of MARICOPA

SIGNED AND SEALED this Date: *October 18, 2022*

*JEFF FINE*
Clerk of Superior Court

By: *DUANE BICOY*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #7311551

Clerk of the Superior Court
*** Electronically Filed ***
D. Bicoy, Deputy
10/18/2022 8:49:10 AM
Filing ID 15001103

Brett L. Slavicek (No. 019306)
James Fucetola (No. 029332)
Justin Henry (No. 027711)
**THE SLAVICEK LAW FIRM**
5500 North 24th Street
Phoenix, Arizona 85016
Telephone: (602) 285-4435
Fax: (602) 287-9184
Email: brett@slaviceklaw.com
        james@slaviceklaw.com
        justin@slaviceklaw.com

*Attorney for Plaintiffs*

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| CHASE WHITEHEAD, a single man; <br><br> Plaintiff, <br><br> vs. <br><br> AMICA MUTUAL INSURANCE COMPANY, a Rhode Island corporation, <br><br> Defendant. | **Case No.**     CV2022-013851 <br><br> **CLASS ACTION COMPLAINT** <br><br> (Declaratory Judgment) <br> (Breach of Contract) <br> (Bad Faith) <br><br> **TIER 3** |

Plaintiff Chase Whitehead for his Complaint against Defendant Amica Mutual Insurance Company ("Amica") alleges as follows:

## I. THE PARTIES

1. Chase Whitehead is a single man and, at all relevant times, was an insured on an insurance policy with Defendant Amica providing, among other coverages, uninsured and underinsured motorist coverage covering multiple vehicles on the same policy.

1

2.     Defendant Amica is a corporation incorporated under the laws of the State of Rhod Island, and is duly licensed to administer insurance in the State of Arizona.

## II.     NATURE OF THE ACTION

3.     This matter concerns the unlawful denial of "Stacked Uninsured Motorist Coverage" and "Stacked Underinsured Motorist Coverage" to a class of insureds entitled to Uninsured Motorist and Underinsured Motorist coverage on policies issued by Defendant Amica in Arizona.

4.     For purposes of this Complaint, "Stacked Uninsured Motorist Coverage" generally refers to the ability of insureds to obtain benefits under their Uninsured Motorist Coverage when there are multiple vehicles with Uninsured Motorist Coverage on one policy issued by Defendant Amica.

5.     For purposes of this Complaint, "Stacked Underinsured Motorist Coverage" generally refers to the ability of insureds to obtain benefits under their Underinsured Motorist Coverage when there are multiple vehicles with Underinsured Motorist Coverage on one policy issued by Defendant Amica.

6.     The denial of Stacked Uninsured Motorist Coverage and Stacked Underinsured Motorist Coverage is contrary to well-established Arizona law as well as the language of the Amica policy.  As such, the denial of benefits is unreasonable, is not "fairly debatable," and instead places Defendant Amica' own interests ahead of the class of policyholders and insureds.

2

7.     On March 6, 2020, Chase Whitehead was riding his 2008 Kawasaki motorcycle when he was involved in a collision with non-party Damien Wilson in Phoenix, Arizona.

8.     As a direct and proximate result of the collision, Chase suffered severe and permanent physical, emotional and economic injuries.

9.     As a direct and proximate result of the collision, Chase incurred reasonable and necessary medical expenses in excess of $160,000.

10.    Non-party Damien Wilson was solely at fault for causing the March 6, 2020 collision.

11.    Non-party Damien Wilson did not have any valid bodily injury liability, personal injury umbrella liability, or any other insurance coverage which may pay for the damages suffered by Chase Whitehead.

12.    At the time of the collision, Kenneth Whitehead held a policy with Defendant Amica covering (1) his 2002 Ford Mustang; (2) his 2008 Infiniti G35 under Policy No. 90030221TD, effective March 24, 2019 through March 24, 2020.  Coverage during this period consisted of, among other things, Uninsured Motorist Coverage and Underinsured Motorist Coverage in the amount of $100,000 per person, subject to an aggregate limit of $300,000 per collision.  A true and correct copy of the Amica policy is attached hereto as **Exhibit A.**

13.    Kenneth Whitehead is Chase Whitehead's father.

3

14.    At the time of the collision, Chase Whitehead resided with his father, Kenneth Whitehead.

15.    At the time of the collision, Chase Whitehead was a "family member" of Kenneth Whitehead.  *See* Exhibit A, Amica Policy at 021.

16.    Defendant Amica charged $57 for the Uninsured Motorist Coverage and $89 for the Underinsured Motorist Coverage on the 2002 Ford Mustang.  *See* Exhibit A, Amica Policy at 017.

17.    Defendant Amica charged $57 for the Uninsured Motorist Coverage and $89 for the Underinsured Motorist Coverage on the 2008 Infiniti G35.

18.    Chase Whitehead is an "insured" under the terms and conditions of the Uninsured Motorist Coverage and Underinsured Motorist Coverage of the Amica policy.

19.    Non-party Damien Wilson's vehicle is an "uninsured motor vehicle" under the terms and conditions of the Amica policy.

20.    On November 9, 2020, Chase submitted a claim to Defendant Amica seeking Uninsured Motorist benefits on all vehicles insured on the policy.  The deadline to pay the available policy limits was December 8, 2020.

21.    Thereafter, Defendant Amica paid the policy limits—$100,000.00—on **one of the vehicles** covered under Policy No. 90030221TD.

22.    Defendant Amica failed and/or refused to pay the remaining policy limits properly owed to Chase on the other vehicle on the Amica policy.

4

23. Thereafter, on August 30, 2022, Chase submitted a second policy limits demand to Amica demanding payment of the remaining policy limits available on the policy as well as accrued interest for Amica's failure to pay the limits in a timely manner pursuant to A.R.S. 20-462. The deadline to respond to the demand was October 14, 2022.

24. Defendant Amica refused to pay the policy limits insisting there was no additional coverage on the vehicle as well as demanding Chase comply with terms and conditions that were not contained in the Amica policy.

25. Defendant Amica disclaimed any additional Uninsured Motorist Coverage on the policy. Defendant Amica alleged Stacked Uninsured Motorist Coverage was not available on the Amica policy relying on policy language that fails to preclude Stacked Uninsured Motorist Coverage.

26. The Limit of Liability clause provides:

**LIMIT OF LIABILITY**

**A.** The limit of liability shown in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of **bodily injury** sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for **bodily injury** resulting from any one accident.

This is the most we will pay regardless of the number of:

1. **Insureds**;
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.

5

*See* Exhibit A, Amica Policy at 038.

27. The Limit of Liability language does not preclude Stacked Uninsured Motorist Coverage. *See State Farm Mut. Auto. Ins. Co. v. Lindsey*, 182 Ariz. 329, 331 (1995); *see also Heaton v. Metropolitan Group Prop. And Cas. Ins. Co.*, 2021 WL 6805629 (D.Ariz. Oct. 19, 2021).

28. Even if the Limit of Liability language was sufficient to preclude Stacked Uninsured Motorist Coverage—it is not—the Limit of Liability language does not inform insureds of their right to select which coverage will apply in violation of A.R.S. § 20-259.01(H).

29. Defendant Amica did not advise Chase, in writing, of his right to select which coverage would apply within 30 days of receiving notice of the collision as required by A.R.S. § 20-259.01(H).

30. Accordingly, Stacked Uninsured Motorist Coverage is permitted even if the Limit of Liability language precluded stacking—which, it does not. *See* A.R.S. § 20-259.01(H); *see also Schwallie v. American Family Mut. Ins. Co.*, 2013 WL 4478697 (D.Ariz. Aug. 20, 2013).

31. The Two or More Auto Policies clause provides:

**TWO OR MORE AUTO POLICIES**

If this policy and any other auto insurance policy issued to you by us apply to the same accident, only one of the policies will apply to the accident. You will select the one policy that will apply.

*See* Exhibit A, Amica Policy at 039.

6

32.    The Two or More Auto Policies language does not preclude stacked Uninsured Motorist Coverage. *See State Farm Mut. Auto. Ins. Co. v. Lindsey*, 182 Ariz. 329, 331 (1995); *see also Heaton v. Metropolitan Group Prop. And Cas. Ins. Co.*, 2021 WL 6805629 (D.Ariz. Oct. 19, 2021).

33.    The Two or More Auto Policies language does not preclude an insured from stacking multiple coverages on the same policy. *See State Farm Mut. Auto. Ins. Co. v. Lindsey*, 182 Ariz. 329, 331 (1995); *see also Heaton v. Metropolitan Group Prop. And Cas. Ins. Co.*, 2021 WL 6805629 (D.Ariz. Oct. 19, 2021).

34.    Per the express language of the policy, the Two or More Auto Policies language only precludes insureds from stacking multiple policies, *i.e.*, inter-policy stacking.

35.    Chase, however, is not an insured on **multiple policies** issued by Defendant Amica.

36.    The Two or More Auto Policies language does not apply to Chase's claim for Stacked Uninsured Motorist Coverage.

37.    Upon information and belief, Defendant Amica failed to conduct a reasonable coverage investigation to determine whether additional coverage was available on Policy No. 90030221TD.

38.    Upon information and belief, Defendant Amica failed to conduct a reasonable coverage investigation to determine whether Stacked Uninsured Motorist Coverage was available on Policy No. 90030221TD.

7

39.   To date, Chase still has not been paid the Uninsured Motorist benefits he is entitled to receive under the terms and conditions of the Amica policy.

40.   Upon information and belief, Defendant Amica routinely sells Uninsured Motorist Coverage, as well as Underinsured Motorist Coverage, and benefits on multiple vehicles insured on the same policy, but refuses to pay Stacked Uninsured Motorist and Stacked Underinsured Motorist benefits in violation of the terms and conditions of Amica policies and in violation of Arizona law.

41.   Chase brings this declaratory judgment claim pursuant to the Arizona Uniform Declaratory Judgment Act (A.R.S. § 12-1831 to 12-1846) and Rule 57 of the Arizona Rules of Civil Procedure.

42.   Chase is an "insured" under the terms and conditions of the Uninsured Motorist Coverage and Underinsured Motorist Coverage of the Amica policy.

43.   Chase contends he is entitled to Stacked Uninsured Motorist Coverage under the terms and conditions of the Amica policy.

44.   Defendant Amica, however, contends Uninsured Motorist Coverage is limited to one vehicle on the Amica policy, and there is no additional Uninsured Motorist Coverage on the remaining vehicle on the Amica policy.

45.   A dispute now exists between Chase and Defendant Amica regarding the rights and obligations of the parties under the Amica policy.

8

46.    Due to the dispute between the parties, Chase is entitled to a declaration of rights and responsibilities regarding the terms and conditions of the Amica policy pursuant to the Arizona Declaratory Judgment Act.

47.    Chase seeks a declaration from this Court that he is entitled to Stacked Uninsured Motorist Coverage on the Amica policy.

48.    Defendant Amica's failure to make a good faith offer and refusal to consider payment for Chase's Uninsured Motorist claim constitutes a *de facto* denial of benefits owed on the Amica policy.

49.    Defendant Amica's failure to make a good faith offer and refusal to pay the contractual Uninsured Motorist benefits owed on the policy is a breach of contract.

50.    As a direct and proximate result of the breach, Chase suffered direct and consequential damages including, but not limited to, the contractual Stacked Uninsured Motorist benefits owed under the terms and conditions of the Amica policy.

51.    In every contract of insurance, there is inherent in it the covenant of good faith and fair dealing, which requires an insurer to, among other things, conduct a reasonable investigation, afford and makes its insured aware of all available coverages on the policy—even if they are not demanded—and treat all insureds with equal consideration.

52.    Upon information and belief, Defendant Amica failed to conduct a reasonable investigation into whether Stacked Uninsured Motorist Coverage is available on the Amica policy.

9

53.     In doing so, Defendant Amica put its own interests ahead of its insured, Chase, and failed to give equal consideration to his claim.

54.     Defendant Amica' failure to adequately investigate coverage is a breach of the covenant of good faith and fair dealing.

55.     Defendant Amica's failure to treat Chase with equal consideration is a breach of the covenant of good faith and fair dealing.

56.     Defendant Amica's failure to make a good faith offer is a breach of the covenant of good faith and fair dealing.

57.     Defendant Amica's failure to make reasonable efforts to alleviate the necessity of litigation is a breach of the covenant of good faith and fair dealing.

58.     Defendant Amica's failure to pay the contractual Stacked Uninsured Motorist benefits owed under the terms and conditions of the Amica Policy is a breach of the covenant of good faith and fair dealing.

59.     Defendant Amica's refusal to stack the available Uninsured Motorist Coverage is contrary to well-established Arizona law as well as the language of the Amica policy.  As such, Defendant Amica' coverage position is unreasonable, is not "fairly debatable," and instead places Defendant Amica' own interests ahead of its insured, Chase.

60.     Defendant Amica's refusal to provide Stacked Uninsured Motorist Coverage is a breach of the covenant of good faith and fair dealing.

61.     As a direct and proximate result of Defendant Amica's breach of the covenant of good faith and fair dealing, Chase suffered damages.

10

62. Upon information and belief, Defendant Amica acted with a consistent pattern to undermine the security of its own insurance policy to the detriment of its insureds, including Chase, to the extent that it constitutes a conscious disregard of the substantial likelihood that such conduct is likely to cause harm and constitutes conduct sufficient to incur a penalty of punitive damages.

63. Chase is, therefore, entitled to punitive damages in an amount sufficient to stop such conduct and deter such future conduct.

## III. JURSIDICTION AND VENUE

64. All acts alleged herein arose from occurrences within the State of Arizona.

65. The claims are subject to the jurisdiction of the Superior Court for the State of Arizona and they request compensation in amounts above the minimum jurisdictional limits for this Court.

66. Venue in this Court is proper pursuant to A.R.S. § 12-401.

67. This Court has personal jurisdiction over the parties.

68. This Court has subject matter jurisdiction under § 14(1) and § 14(3) of Article 6 of the Arizona Constitution and A.R.S. § 12-123.

## IV. CLASS ALLEGATIONS

69. Chase brings this action pursuant to Rule 23 of the Arizona Rules of Civil Procedure. He brings this action on his own behalf and on behalf of all class participants pursuant to Rules 23(a), 23(b)(2) and 23(b)(3) of the Arizona Rules of Civil Procedure.

70. Chase proposes the following classes of individuals:

**A.   Class One: Stacked Uninsured Motorist Coverage**

71. Class One shall consist of individuals:

A. Who are "insureds" on Amica insurance policies issued, and in force, in Arizona from October 18, 2016 through present;

B. Who were involved in a motor vehicle collision with an uninsured motor vehicle;

C. Where the insurance policy issued by Defendant Amica provided Uninsured Motorist Coverage on more than one vehicle;

D. Where Defendant Amica paid the policy limits of Uninsured Motorist Coverage on one vehicle on the policy, but either failed or refused to pay any Uninsured Motorist benefits on the remaining vehicles on the policy.

**B.   Class Two: Stacked Underinsured Motorist Coverage**

72. Class Two shall consist of individuals:

A. Who are "insureds" on Amica insurance policies issued, and in force, in Arizona from October 18, 2016 through present;

B. Who were involved in a motor vehicle collision with an underinsured motor vehicle;

C. Where the insurance policy issued by Defendant Amica provided Underinsured Motorist Coverage on more than one vehicle;

12

D. Where Defendant Amica paid the policy limits of Underinsured Motorist Coverage on one vehicle on the policy, but either failed or refused to pay any Underinsured Motorist benefits on the remaining vehicles on the policy.

73.    The requirements of Rules 23(a), 23(b)(2) and/or 23(b)(3) of the Arizona Rules of Civil Procedure are met as set forth below.

C.    **Numerosity**

74.    Arizona published cases on numerosity are few and give little guidance. For that reason, among others, Arizona courts look to Federal cases construing Rule 23 as illustrative. *See ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.*, 203 Ariz. 94, 98 n.2 (App. 2002). Under federal law, more than forty class members satisfies the numerosity requirement. 1 NEWBERG ON CLASS ACTIONS, §3.05 at 3-25 (3rd Ed. 1992); MOORE'S FEDERAL PRACTICE, § 23-22(3)(a) (Bender 3rd Ed. 1999); *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3rd Cir. 2001); *Perez v. First American Title Ins.*, 2009 WL 2486003 at *2 (D.Ariz. 2009) ("Generally, 40 or more members will satisfy the numerosity requirement.").

75.    With regard to the standard of proof necessary to satisfy class numerosity requirements, "[i]t is not necessary that the members of the class be so clearly identified that any member can be presently ascertained. The court may draw a reasonable inference of the size of the class from the facts before it." *Sherman v. Griepentrog*, 775 F.Supp. 1383, 1389 (D.Nev. 1991) (internal citations omitted).

13

76.    Upon information and belief, Defendant Amica routinely denies Stacked Uninsured Motorist Coverage to its insureds and the numerosity requirement is easily satisfied with respect to Class One.

77.    Upon information and belief, Defendant Amica routinely denies Stacked Underinsured Motorist Coverage to its insureds and the numerosity requirement is easily satisfied with respect to Class Two.

**D.    Commonality**

78.    The commonality element "requires simply that there exist questions of law or fact common to the class." *Lennon v. First National Bank of Arizona*, 21 Ariz.App. 306, 309 (1974). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Parra v. Bashas, Inc.*, 536 F.3d 975, 978 (9th Cir. 2008).

79.    The legal issues are not just shared, they are virtually identical. Specifically, the legal issue regarding whether Class One Members are entitled to Stacked Uninsured Motorist Coverage on Amica policies is identical. While there may be occasional changes to the policy language for each respective Class Member, the legal issue remains the same.

80.    The legal issue regarding whether Class Two Members are entitled to Stacked Underinsured Motorist Coverage on Amica policies is identical. While there may be occasional changes to the policy language for each respective Class Member, the legal issue remains the same.

81. Moreover, the policy language for the Limit of Liability clause and the Two or More Auto Policies clause are **identical for Uninsured and Underinsured Motorist coverage**. *Compare* Exhibit A at Amica Policy 038, 039 *with* Exhibit A at Amica Policy 042, 043. Thus, there is no difference, from a legal standpoint, regarding whether stacking is permitted on Uninsured Motorist coverage or Underinsured Motorist coverage, *i.e.*, either stacking is permitted on both coverages, or it is not permitted on either coverage.

**E.     Typicality**

82. There is little Arizona case law discussing specific criteria regarding typicality. Federal law provides: "[U]nder the rule's permissive standards, representative claims are 'typical' is they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

83. Chase is in a factual and legal posture identical to the Class One Members. He is an insured on an insurance policy with Defendant Amica insuring multiple vehicles with Uninsured Motorist Coverage. He was paid the available policy limits on one of the vehicles, but Defendant Amica either failed or refused to pay any remaining uninsured motorist benefits on the remaining vehicles of the policy.

84. Chase is also in a factual and legal posture identical to the Class Two Members. He is an insured on an insurance policy with Defendant Amica insuring multiple vehicles with Underinsured Motorist Coverage. Although his collision did not implicate Underinsured Motorist coverage, his claim is typical of an underinsured motorist

claim with regard to the legal issues that need to be decided. Chase was paid the available policy limits on one of the vehicles, but Defendant Amica either failed or refused to pay any remaining benefits on the remaining vehicles of the policy.

**F.    Adequacy**

85.    Under Arizona law, the Class Attorney must be qualified, experienced and reasonably capable. Lead Plaintiffs cannot collude with the defendants and must not have interests that are obviously antagonistic to the interests of the class they seek to represent. *See Lennon, supra*, at 309. The burden of proving inadequacy is on the defendant. *See Lewis v. Curtis*, 671 F.2d 779, 788 (3rd Cir. 1982).

86.    To determine whether obvious antagonism of interests exists, Federal courts look to whether (1) a lead plaintiff is a spouse, family member, or employee of counsel; (2) if any counsel if a class member; (3) if there are unusual bonus fees for lead plaintiffs which would create a conflict with class members; (4) whether lead plaintiffs will promptly move for certification. *See Lyon v. State of Arizona*, 80 F.R.D. 665, 667-68 (D.Ariz. 1978).

87.    None of the Class Attorneys are members of the Class.

88.    No Lead Plaintiff is a spouse, family member or employee of the Class Attorney.

89.    Lead Plaintiffs will promptly move for certification.

90.    No bonus fees or incentives have been promised to the Lead Plaintiffs.

16

91.    The Class Attorneys are also qualified, experienced and reasonably capable, having litigated successfully in this area of law, and having been counsel in prior class actions.

**G.    Rule 23(B)(2)**

92.    Rule 26(b)(2) certification is appropriate if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the class as a whole." Ariz.R.Civ.P. 23(b)(2).

93.    Federal law provides: "[I]n order to permit certification under this rule, the claim for monetary damages must be secondary to the primary claim for injunctive or declaratory relief." *Molski v. Gleich*, 318 F.3d 937, 647 (9th Cir. 2003). A Rule 23(b)(2) claim is not limited solely to declaratory and injunctive relief, but such relief must predominate. *See id.*

94.    Defendant Amica has acted on grounds with general application to the Class One Members: it has disclaimed Stacked Uninsured Motorist Coverage when its insureds have multiple vehicles with Uninsured Motorist Coverage on the same policy.

95.    Defendant Amica has acted on grounds with general application to the Class Two Members: it has disclaimed Stacked Underinsured Motorist Coverage when its insureds have multiple vehicles with Underinsured Motorist Coverage on the same policy.

17

96. Moreover, the declaratory relief claims predominate over the breach of contract claims, *i.e.*, there can be no relief on the breach of contract claims if the declaratory relief claims fail.

97. The proposed Classes, therefore, meets the requirements for certification under Rule 23(b)(2).

98. Accordingly, Chase requests this Court certify the declaratory judgment, breach of contract and bad faith claims as a class action pursuant to Rule 23(b)(2), ARCP.

**H.    Rule 26(B)(3)**

99. Rule 23(b)(3) certification is appropriate if "questions of law or fact common to the members of the class predominate over any questions affecting individual class members, and . . . a class action is superior to other available methods for fair and efficient adjudication of the controversy." Ariz.R.Civ.P. 23(b)(3).

100. With respect to predomination, the Court should certify a Class even in cases where there is a large factual variance between class members if "questions of law common to all class members" lie at the heart of the case. *See Godbey v. Roosevelt School District*, 131 Ariz. 13, 17-18 (App. 1981).

101. Common questions of law (*i.e.*, whether Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage are available) lie at the heart of this matter. Indeed, if Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage are not available, the remaining portions of the claims herein are moot.

102.    With respect to superiority, Rule 26(b)(3) directs the Court to consider (1) the desirability of concentrating claims in this forum; (2) difficulties of management; (3) current claims by class members; (4) class members' interest in controlling their individual claims. *See* Ariz.R.Civ.P. 23(b)(3).

103.    Arizona courts are the only desirable forum as all Class Members were insured under Amica policies issued in Arizona.

104.    The difficulty in managing the Class is minimal as all policies were issued to Class Members in Arizona, the facts related to the coverage dispute are remarkably uniform, and the case predominately turns on one legal issue.

105.    With respect to existing Class Members' claims, Arizona courts consider "whether there is so much pre-existing litigation that a class [action] would be unproductive." *ESI*, *supra*, at 98.

106.    While there may already be some pre-existing litigation involving Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage, those cases, upon information and belief, are few and insufficient to make a class action unproductive.

107.    With respect to Class Members' individual interests in controlling the claims, "there is no additional advantage in individual members controlling the prosecution of separate actions." *See Hanlon*, *supra*, at 1023. Indeed, "[t]here would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *See id.*

19

108.    The proposed Classes, therefore, meets the requirements for certification under Rule 23(b)(3).

109.    Accordingly, Chase requests this Court certify the declaratory judgment, breach of contract and bad faith claims as a class action pursuant to Rule 23(b)(3), ARCP.

## RULE 26.2 TIER DESIGNATION

Chase has reviewed the Criteria for Assigning Cases to Tiers pursuant to Rule 26.2(b) of the Arizona Rules of Civil Procedure, and hereby certifies this as a Tier 3 case.

WHEREFORE, Chase Whitehead prays for Judgment against Amica Mutual Insurance Company as follows:

1.    Certify this case as a class action pursuant to Rules 23(a), 23(b)(2) and/or 23(b)(3) of the Arizona Rules of Civil Procedure;

2.    For breach of contract;

3.    For bad faith;

4.    For direct and consequential damages, in an amount to be proved at trial;

5.    For special damages, in an amount to be proved at trial;

6.    For general damages in a fair, just and reasonable sum in excess of the jurisdictional limits of this Court;

7. For a declaration that Amica Mutual Insurance Company policies do not preclude stacking uninsured motorist coverage for multiples vehicles on the same policy;

8. For a declaration that Amica Mutual Insurance Company policies do not preclude stacking underinsured motorist coverage for multiple vehicles on the same policy;

9. For his costs incurred herein;

10. For attorney's fees and taxable costs pursuant to A.R.S. §§ 12-341 and 12-341.01;

11. For punitive damages in a fair, just and reasonable sum;

12. For pre- and post-judgment interest at the prevailing statutory rate per annum; and

13. For such other and further relief as this Court may deem just and proper.

DATED this 18th day of October, 2022.

**THE SLAVICEK LAW FIRM**

*/s/ Justin Henry*
Brett L. Slavicek
Justin Henry
5500 North 24th Street
Phoenix, Arizona 85016
*Attorneys for Plaintiffs*

**ID CARDS ENCLOSED**
**AFTER THIS LETTER**

KENNETH J. WHITEHEAD
7455 N 95TH AVE APT 122
GLENDALE AZ   85305-1329

Policy Number:  90030221TD
Effective Date:  MARCH 24, 2019

Dear Policyholder:

Thank you for choosing Amica!   Maintaining your trust and confidence is always our highest priority.

Your renewal policy, all related materials and necessary information are enclosed.  Please review the Information Digest for important coverage descriptions and options.

The following is either required by law or included in further explanation of your renewal policy.

Please note that a bill is not included with your policy package.  The bill will be delivered to you closer to your policy effective date and approximately 20 days before your payment due date.  If you are currently receiving paper bills, you have the option of signing up for electronic billing through our website at Amica.com.

Please review the Declarations page for a detailed description of your coverages.

If you'd like to make changes or need more information, please contact us at 1-888-892-6422.  Changes will be effective on the renewal date unless an earlier date is requested.

**Amica Mutual Insurance Company**
**Lincoln, Rhode Island**



**AUTO   HOME   LIFE**

Amica Policy 001

ARIZONA AUTOMOBILE INSURANCE IDENTIFICATION CARD

This certifies that the insured show n holds an automobile liability policy issued by Amica Mutual Insurance Company . The coverage provided by this policy meets the minimum liablity limits prescribed by law.                    NAIC # 19976

ADOT CODE 0074

| YEAR | MAKE | VEHICLE IDENTIFICATION NUMBER |
|------|------|-------------------------------|
| 2002 | FORD | 1FAFP40402F134559 |

| POLICY NUMBER | EFFECTIVE DATE | EXPIRATION DATE |
|---------------|----------------|-----------------|
| 90030221TD | 03/24/2019 | 03/24/2020 |

INSURED
KENNETH J. WHITEHEAD



You are required by law to possess evidence of financial responsibility within the motor vehicle you are operating. This card meets that requirement or an image of the card that is displayed on a wireless communication device meets the requirement. This card or an image of the card that is displayed on a wireless communication device will serve as satisfactory evidence if the Arizona Department of Transportation/Motor Vehicle Division asks you to verify financial responsibility on the motor vehicle.

Phoenix Regional Office
1-888-892-6422

**THE STATE REQUIRES WE PROVIDE YOU WITH TWO COPIES OF YOUR INSURANCE IDENTIFICATION CARD.**

ARIZONA AUTOMOBILE INSURANCE IDENTIFICATION CARD

This certifies that the insured show n holds an automobile liability policy issued by Amica Mutual Insurance Company . The coverage provided by this policy meets the minimum liability limits prescribed by law.                    NAIC # 19976

ADOT CODE 0074

| YEAR | MAKE | VEHICLE IDENTIFICATION NUMBER |
|------|------|-------------------------------|
| 2002 | FORD | 1FAFP40402F134559 |

| POLICY NUMBER | EFFECTIVE DATE | EXPIRATION DATE |
|---------------|----------------|-----------------|
| 90030221TD | 03/24/2019 | 03/24/2020 |

INSURED

KENNETH J. WHITEHEAD



You are required by law to possess evidence of financial responsibility within the motor vehicle you are operating. This card meets that requirement or an image of the card that is displayed on a wireless communication device meets the requirement. This card or an image of the card that is displayed on a wireless communication device will serve as satisfactory evidence if the Arizona Department of Transportation/Motor Vehicle Division asks you to verify financial responsibility on the motor vehicle.

Phoenix Regional Office
1-888-892-6422

Amica Policy 003

CORPORATE OFFICE: ONE HUNDRED AMICA WAY
LINCOLN, RI 02865-1166

MAIL: PO BOX 6008, PROVIDENCE, RI 02940-6008

Phoenix Regional Office

2075 W. Pinnacle Peak Road
Suite 110
Phoenix, AZ 85027-1219
1-888-892-6422



CORPORATE OFFICE: ONE HUNDRED AMICA WAY
LINCOLN, RI 02865-1166

MAIL: PO BOX 6008, PROVIDENCE, RI 02940-6008

Phoenix Regional Office

2075 W. Pinnacle Peak Road
Suite 110
Phoenix, AZ 85027-1219
1-888-892-6422



Amica Policy 004

ARIZONA AUTOMOBILE INSURANCE IDENTIFICATION CARD

This certifies that the insured show n holds an automobile liability policy issued by **Amica Mutual Insurance Company** . The coverage provided by this policy meets the minimum liablity limits prescribed by law.                 NAIC # 19976

ADOT CODE 0074

| YEAR | MAKE | VEHICLE IDENTIFICATION NUMBER |
|---|---|---|
| 2008 | INFIN | JNKBV61E18M228227 |

| POLICY NUMBER | EFFECTIVE DATE | EXPIRATION DATE |
|---|---|---|
| 90030221TD | 03/24/2019 | 03/24/2020 |

INSURED
KENNETH J. WHITEHEAD

You are required by law to possess evidence of financial responsibility within the motor vehicle you are operating. This card meets that requirement or an image of the card that is displayed on a wireless communication device meets the requirement. This card or an image of the card that is displayed on a wireless communication device will serve as satisfactory evidence if the Arizona Department of Transportation/Motor Vehicle Division asks you to verify financial responsibility on the motor vehicle.

Phoenix Regional Office
1-888-892-6422

**THE STATE REQUIRES WE PROVIDE YOU WITH TWO COPIES OF YOUR INSURANCE IDENTIFICATION CARD.**

ARIZONA AUTOMOBILE INSURANCE IDENTIFICATION CARD

This certifies that the insured show n holds an automobile liability policy issued by **Amica Mutual Insurance Company** . The coverage provided by this policy meets the minimum liability limits prescribed by law.                 NAIC # 19976

ADOT CODE 0074

| YEAR | MAKE | VEHICLE IDENTIFICATION NUMBER |
|---|---|---|
| 2008 | INFIN | JNKBV61E18M228227 |

| POLICY NUMBER | EFFECTIVE DATE | EXPIRATION DATE |
|---|---|---|
| 90030221TD | 03/24/2019 | 03/24/2020 |

INSURED
KENNETH J. WHITEHEAD

You are required by law to possess evidence of financial responsibility within the motor vehicle you are operating. This card meets that requirement or an image of the card that is displayed on a wireless communication device meets the requirement. This card or an image of the card that is displayed on a wireless communication device will serve as satisfactory evidence if the Arizona Department of Transportation/Motor Vehicle Division asks you to verify financial responsibility on the motor vehicle.

Phoenix Regional Office
1-888-892-6422

Amica Policy 005

CORPORATE OFFICE: ONE HUNDRED AMICA WAY
LINCOLN, RI 02865-1166

MAIL: PO BOX 6008, PROVIDENCE, RI 02940-6008

Phoenix Regional Office

2075 W. Pinnacle Peak Road
Suite 110
Phoenix, AZ 85027-1219
1-888-892-6422



CORPORATE OFFICE: ONE HUNDRED AMICA WAY
LINCOLN, RI 02865-1166

MAIL: PO BOX 6008, PROVIDENCE, RI 02940-6008

Phoenix Regional Office

2075 W. Pinnacle Peak Road
Suite 110
Phoenix, AZ 85027-1219
1-888-892-6422



90030221TD



# Personal
# Auto
# Policy

**A Non-Assessable Policy**

# Amica Mutual
# Insurance
# Company

| | |
|---|---|
| Corporate Office | One Hundred Amica Way<br>Lincoln, Rhode Island<br>Mail: PO Box 6008, Providence, RI 02940-6008 |
| Policyholder Service | Phoenix Regional Office<br>2075 W. Pinnacle Peak Road<br>Suite 110<br>Phoenix, AZ 85027-1219<br>1-888-892-6422 |

**READ YOUR POLICY CAREFULLY**

This policy is a legal contract between you and us.
The Personal Auto Policy has been:

- designed for your easy reference
- simplified to make it more understandable; and
- arranged to better display the available coverages.

**Ed. 01/05**

Amica Policy 007

# YOUR PERSONAL AUTO POLICY
# QUICK REFERENCE

**DECLARATIONS PAGE**
Your Name and Address
Your Auto or Trailer
Policy Period
Coverages and Amounts of Insurance                                    Beginning
                                                                      On Page

AGREEMENT                                                             1
DEFINITIONS                                                           1

**PART A**                  Insuring Agreement                        2
**LIABILITY**               Supplementary Payments
**COVERAGE**                Exclusions
                            Limit of Liability
                            Out of State Coverage
                            Financial Responsibility Required
                            Other Insurance

**PART B**                  Insuring Agreement                        5
**MEDICAL**                 Exclusions
**PAYMENTS**                Limit of Liability
**COVERAGE**                Other Insurance

**PART C**                  Insuring Agreement                        6
**UNINSURED**               Exclusions
**MOTORISTS**               Limit of Liability
**COVERAGE**                Other Insurance
                            Arbitration

**PART D**                  Insuring Agreement                        8
**COVERAGE FOR**            Transportation Expenses
**DAMAGE TO**               Exclusions
**YOUR AUTO**               Limit of Liability
                            Payment of Loss
                            No Benefit to Bailee
                            Other Sources of Recovery
                            Appraisal

**PART E**                  General Duties                            11
**DUTIES AFTER AN**         Additional Duties for Uninsured Motorists Coverage
**ACCIDENT OR LOSS**        Additional Duties for Coverage for Damage to Your Auto

**PART F**                  Bankruptcy                                12
**GENERAL**                 Changes
**PROVISIONS**              Fraud
                            Legal Action Against Us
                            Our Right to Recover Payment
                            Policy Period and Territory
                            Termination
                            Transfer of Your Interest in this Policy
                            Two or More Auto Policies
                            Mutual Provisions

**ENDORSEMENTS**            Additional benefits or restrictions       Following
                                                                      Page 14

AM 00 25 01 05



**AUTO    HOME    LIFE**

Amica Mutual Insurance Company
**Phoenix Regional Office**
2075 W. Pinnacle Peak Road
Suite 110
Phoenix, AZ 85027-1219
1-888-892-6422

## STATEMENT OF SAVINGS

**Name and Address:**
KENNETH J. WHITEHEAD
7455 N 95TH AVE APT 122
GLENDALE AZ 85305

Policy Number: 90030221TD

## Your policy contains the listed discounts and savings... reducing the premium you pay for your insurance!

ANTI-THEFT DISCOUNT
MULTI-CAR DISCOUNT
PASSIVE RESTRAINT DISCOUNT
ELECTRONIC STABILITY CONTROL DISCOUNT
SIDE RESTRAINT DISCOUNT
LOYALTY DISCOUNT
AUTOPAY DISCOUNT
MULTI-LINE DISCOUNT - HOME

## TOTAL SAVINGS $   1,180.00

### Call us 24 hours a day, seven days a week, to discuss your savings at 1-888-892-6422

Amica Policy 009

## RATE INCREASE NOTICE

The premium charge shown on your renewal policy reflects an increase in our Automobile Insurance rates.

Our rates are reviewed periodically and adjustments are made only when deemed necessary to meet future obligations. Rate adjustments are based on previous loss experience, anticipated future losses and expected increases in costs.

We remain committed to providing you with a high quality product at the most competitive price possible. Our product prices are directly reflective of the underlying costs we incur.

As always, you are invited to call any Amica office with insurance questions or requests. We appreciate your business and are committed to providing you with the best personal insurance protection and service at the lowest reasonable cost.

AUTOINCR

# CONSUMER REPORTS NOTICE

*Please read this carefully as it contains important information that you should know.*

Thank you for choosing Amica to meet your insurance needs! Our mission is to enhance the financial security of our customers by offering personal protection and related services at the lowest reasonable cost, consistent with sound financial management.

Your premium is based on a number of different factors including your driving record (tickets/accidents). In order to charge each policyholder the most appropriate premium, Amica considered information in your motor vehicle report and your premium was affected by the existence of the following violations and/or citations:

| Date | Incident Type | Driver |
|------|---------------|--------|
| 12/11/17 | ACCIDENT | CHASE WHITEHEAD |

The information in your consumer report was furnished by the reporting agency, LexisNexis. Although they provided Amica with the report, LexisNexis did not make the decision as to how the information in the report(s) would be used and is unable to provide you with any information concerning the development of your premium.

We encourage you to obtain a free copy of this report if you disagree with the accuracy or completeness of the above information. You can obtain a free copy of your report from LexisNexis Consumer Center within 60 days of receipt of this notice by:

● Visiting LexisNexis's website, www.consumerdisclosure.com;

● Writing to LexisNexis at P.O. Box 105108, Atlanta, Georgia, 30348-5108; or

● Calling LexisNexis's automated service center at (800)456-6004.

If you identify errors in your report, please contact LexisNexis to discuss how they may be corrected. If the erroneous information is corrected as a result of your conversation with the reporting agency, we will gladly re-rate your policy.

**AM 00 44 12 08**

Amica Policy 013

# Amica Mutual Insurance Company
### Lincoln, Rhode Island

Page 1 of 3

## DECLARATIONS

PERSONAL AUTO POLICY NO. 90030221TD

**NAMED INSURED AND ADDRESS**
KENNETH J. WHITEHEAD
7455 N 95TH AVE APT 122
GLENDALE AZ 85305

**POLICY PERIOD: 12:01 A.M., STANDARD TIME**
**From:** MARCH 24, 2019
**To:** MARCH 24, 2020

| Auto No. | DESCRIPTION OF AUTO(S) OR TRAILER(S) | LOSS PAYEE |
|---|---|---|
| 1 | 2002 FORD MUSTANG 2 DOOR COUPE<br><br>VIN 1FAFP40402F134559<br>USE: AVERAGE DAILY MILEAGE 15 MILES | |
| 2 | 2008 INFINITI G35 4 DOOR SEDAN<br><br>VIN JNKBV61E18M228227<br>USE: AVERAGE DAILY MILEAGE 40 MILES | HUGHES FEDERAL CREDIT UNION<br>PO BOX 80218<br>PORTLAND OR 97280 |
| | | |
| | | |
| | | |
| | | |

The Auto(s) or Trailer(s) described in this  policy is principally garaged at the above  address unless otherwise stated on the coverage pages.

SAFE DRIVER PLAN CHARGEABLE POINTS - 1.0

### RATES ARE BASED ON THE FOLLOWING HOUSEHOLD DRIVERS

| Driver | NAME | DRIVER'S LICENSE NUMBER | Date of Birth Mo. | Day | Year | Male or Female | Married or Single | Date First Licensed Mo. | Year |
|---|---|---|---|---|---|---|---|---|---|
| 1 | KENNETH J. WHITEHEAD | D07202633 | 09 | 19 | 59 | M | S | 09 | 75 |
| 2 | CHASE WHITEHEAD | D10120457 | 07 | 06 | 01 | M | S | 07 | 17 |
| 3 | | | | | | | | | |
| 4 | | | | | | | | | |
| 5 | | | | | | | | | |
| 6 | | | | | | | | | |

# Amica Mutual Insurance Company

Lincoln, Rhode Island

Page 2 of 3

## CONTINUATION OF DECLARATIONS FOR PERSONAL AUTO POLICY NO. 90030221TD

**NAMED INSURED**
KENNETH J. WHITEHEAD

| COVERAGE IS PROVIDED WHERE A PREMIUM AND A LIMIT OF LIABILITY IS SHOWN FOR THE COVERAGE | | | | |
|---|---|---|---|---|
| **COVERAGES** | **LIMIT OF LIABILITY** | | **PREMIUMS** | |
| | | | AUTO 1 2002 FORD | AUTO 2 2008 INFI |
| **A. LIABILITY** Bodily Injury | $ 100,000 each person $ 300,000 each accident | | $ 1,114.00 | $ 379.00 |
| Property Damage | $ 100,000 each accident | | $ 935.00 | $ 318.00 |
| **B. MEDICAL PAYMENTS** | $ 2,000 each person | | $ 204.00 | $ 59.00 |
| **C. UNINSURED MOTORISTS** Bodily Injury | $ 100,000 each person $ 300,000 each accident | | $ 57.00 | $ 57.00 |
| **D. DAMAGE TO YOUR AUTO** (ACV means Actual Cash Value) | | | | |
| 1. Collision Loss ACV minus deductible of | AUTO 1    AUTO 2 ------    $ 500 | | NOT COVERED | $ 565.00 |
| 2. Other Than Collision Loss ACV minus deductible of | AUTO 1    AUTO 2 ------    $ 500 | | NOT COVERED | $ 205.00 |
| **TOWING AND LABOR COSTS** | $ 100 each disablement | | NOT COVERED | $ 16.00 |
| **OPTIONAL TRANSPORTATION EXPENSES** AUTO 1        AUTO 2 | | | | |

UNDERINSURED MOTORISTS COVERAGE
$100,000 EACH PERSON/$300,000 EACH ACCIDENT — $ 89.00 | $ 89.00

FULL SAFETY GLASS COVERAGE — NOT COVERED | $ 113.00

PART A LIABILITY LIMITS MAY BE REDUCED BY THE
AMENDMENT OF POLICY PROVISIONS - AZ ENDORSEMENT

**GARAGING LOCATION**
1- IN GARAGE   7455 N 95TH AVE APT 122 GLENDALE AZ 85305
2- IN GARAGE   7455 N 95TH AVE APT 122 GLENDALE AZ 85305

TOTAL PREMIUM FOR EACH AUTO       $ 2,399.00   $ 1,801.00
TOTAL PREMIUM  $ 4,200.00

Amica Policy 017

# Amica Mutual Insurance Company

Lincoln, Rhode Island

Page 3 of 3

### CONTINUATION OF DECLARATIONS FOR PERSONAL AUTO POLICY NO. 90030221TD

**NAMED INSURED**
KENNETH J. WHITEHEAD

| SPECIAL DISCOUNTS |
|---|
| PASSIVE RESTRAINT DISCOUNT AUTO 1 |
| ANTI-THEFT DEVICE DISCOUNT AUTO 2 |
| MULTI-LINE DISCOUNT-HOME |
| ELEC STABILITY CONTROL DISCOUNT AUTO 2 |
| SIDE RESTRAINT DISCOUNT AUTO 2 |
| MULTI-CAR DISCOUNT |
| LOYALTY DISCOUNT |
| AUTOPAY DISCOUNT |

**Form and Endorsements made part of this policy at time of issue:**

| | |
|---|---|
| PP 00 01 01 05 | PERSONAL AUTO POLICY |
| PP 03 03 04 86 | TOWING AND LABOR COSTS COVERAGE |
| AM 00 57 10 05 | LOSS PAYABLE CLAUSE |
| PP 04 89 03 16 | UNDERINSURED MOTORISTS COVERAGE - ARIZONA |
| PP 13 06 01 09 | CUSTOM EQUIPMENT EXCLUSION ENDORSEMENT |
| PP 23 16 01 19 | PERSONAL VEHICLE SHARING PROGRAM EXCLUSION ENDORSEMENT |
| PP 01 67 08 18 | AMENDMENT OF POLICY PROVISIONS - ARIZONA |
| AZ 00 28 11 18 | AMENDMENT OF PERSONAL AUTO POLICY PROVISIONS |
| PP 13 01 12 99 | COVERAGE FOR DAMAGE TO YOUR AUTO EXCLUSION ENDORSEMENT |
| PP 04 77 03 16 | UNINSURED MOTORISTS COVERAGE - ARIZONA |
| PP 03 48 02 89 | FULL SAFETY GLASS COVERAGE - ARIZONA |
| AM 00 18 02 01 | MUTUAL PROVISIONS - NON-DIVIDEND POLICY |

Countersigned by................................................................................................

**Authorized Representative**

Amica Policy 019

# PERSONAL AUTO POLICY

## AGREEMENT

In return for payment of the premium and subject to all the terms of this policy, we agree with you as follows:

## DEFINITIONS

A. Throughout this policy, "you" and "your" refer to:

1. The "named insured" shown in the Declarations; and

2. The spouse if a resident of the same household.

If the spouse ceases to be a resident of the same household during the policy period or prior to the inception of this policy, the spouse will be considered "you" and "your" under this policy but only until the earlier of:

1. The end of 90 days following the spouse's change of residency;

2. The effective date of another policy listing the spouse as a named insured; or

3. The end of the policy period.

B. "We", "us" and "our" refer to the Company providing this insurance.

C. For purposes of this policy, a private passenger type auto, pickup or van shall be deemed to be owned by a person if leased:

1. Under a written agreement to that person; and

2. For a continuous period of at least 6 months.

Other words and phrases are defined. They are bold faced when used.

D. "Bodily injury" means bodily harm, sickness or disease, including death that results.

E. "Business" includes trade, profession or occupation.

F. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

G. "Occupying" means:

1. In;

2. Upon; or

3. Getting in, on, out or off.

H. "Property damage" means physical injury to, destruction of or loss of use of tangible property.

I. "Trailer" means a vehicle designed to be pulled by a:

1. Private passenger auto; or

2. Pickup or van.

It also means a farm wagon or farm implement while towed by a vehicle listed in 1. or 2. above.

J. "Your covered auto" means:

1. Any vehicle shown in the Declarations.

2. A newly acquired auto.

3. Any trailer you own.

4. Any auto or trailer you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

a. Breakdown;

b. Repair;

c. Servicing;

d. Loss; or

e. Destruction.

This Provision (J.4.) does not apply to Coverage For Damage To Your Auto.

K. Newly acquired auto

1. "Newly acquired auto" means any of the following types of vehicles you become the owner of during the policy period:

a. A private passenger auto; or

b. A pickup or van, for which no other insurance policy provides coverage, that:

PP 00 01 01 05

Copyright, ISO Properties, Inc., 2003
Amica Policy 021

Page 1 of 14

(1) Has a Gross Vehicle Weight Rating of 10,000 lbs. or less; and

(2) Is not used for the delivery or transportation of goods and materials unless such use is:

    (a) Incidental to your **business** of installing, maintaining or repairing furnishings or equipment; or

    (b) For farming or ranching.

2. Coverage for a **newly acquired auto** is provided as described below. If you ask us to insure a **newly acquired auto** after a specified time period described below has elapsed, any coverage we provide for a **newly acquired auto** will begin at the time you request the coverage.

    a. For any coverage provided in this policy except Coverage For Damage To Your Auto, a **newly acquired auto** will have the broadest coverage we now provide for any vehicle shown in the Declarations. Coverage begins on the date you become the owner. However, for this coverage to apply to a **newly acquired auto** which is in addition to any vehicle shown in the Declarations, you must ask us to insure it within 14 days after you become the owner.

    If a **newly acquired auto** replaces a vehicle shown in the Declarations, coverage is provided for this vehicle without your having to ask us to insure it.

    b. Collision Coverage for a **newly acquired auto** begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

    (1) 14 days after you become the owner if the Declarations indicate that Collision Coverage applies to at least one auto. In this case, the **newly acquired auto** will have the broadest coverage we now provide for any auto shown in the Declarations.

    (2) Four days after you become the owner if the Declarations do not indicate that Collision Coverage applies to at least one auto. If you comply with the 4 day requirement and a loss occurred before you asked us to insure the **newly acquired auto**, a Collision deductible of $500 will apply.

c. Other Than Collision Coverage for a **newly acquired auto** begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

    (1) 14 days after you become the owner if the Declarations indicate that Other Than Collision Coverage applies to at least one auto. In this case, the **newly acquired auto** will have the broadest coverage we now provide for any auto shown in the Declarations.

    (2) Four days after you become the owner if the Declarations do not indicate that Other Than Collision Coverage applies to at least one auto. If you comply with the 4 day requirement and a loss occurred before you asked us to insure the **newly acquired auto**, an Other Than Collision deductible of $500 will apply.

# PART A - LIABILITY COVERAGE

**INSURING AGREEMENT**

A. We will pay damages for **bodily injury** or **property damage** for which any **insured** becomes legally responsible because of an auto accident. Damages include prejudgment interest awarded against the **insured**. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted by payment of judgments or settlements. We have no duty to defend any suit or settle any claim for **bodily injury** or **property damage** not covered under this policy.

B. "**Insured**" as used in this Part means:

1. You or any **family member** for the ownership, maintenance or use of any auto or **trailer**.

2. Any person using **your covered auto**.

3. For **your covered auto**, any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

Amica Policy 022

4. For any auto or **trailer**, other than **your covered auto**, any other person or organization but only with respect to legal responsibility for acts or omissions of you or any **family member** for whom coverage is afforded under this Part. This Provision (**B.4.**) applies only if the person or organization does not own or hire the auto or **trailer**.

## SUPPLEMENTARY PAYMENTS

We will pay on behalf of an **insured**:

1. Up to $250 for the cost of bail bonds required because of an accident, including related traffic law violations. The accident must result in **bodily injury** or **property damage** covered under this policy.

2. Premiums on appeal bonds and bonds to release attachments in any suit we defend.

3. Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.

4. Up to $200 a day for loss of earnings, but not other income, because of attendance at hearings or trials at our request.

5. Other reasonable expenses incurred at our request.

These payments will not reduce the limit of liability.

## EXCLUSIONS

A. We do not provide Liability Coverage for any **insured**:

1. Who intentionally causes **bodily injury** or **property damage**.

2. For **property damage** to property owned or being transported by that **insured**.

3. For **property damage** to property:

   a. Rented to;

   b. Used by; or

   c. In the care of;

   that **insured**.

   This Exclusion (**A.3.**) does not apply to **property damage** to a residence or private garage.

4. For **bodily injury** to an employee of that **insured** during the course of employment. This Exclusion (**A.4.**) does not apply to **bodily injury** to a domestic employee unless workers'

compensation benefits are required or available for that domestic employee.

5. For that **insured's** liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance. This Exclusion (**A.5.**) does not apply to a share-the-expense car pool.

6. While employed or otherwise engaged in the **business** of:

   a. Selling;

   b. Repairing;

   c. Servicing;

   d. Storing; or

   e. Parking;

   vehicles designed for use mainly on public highways. This includes road testing and delivery. This Exclusion (**A.6.**) does not apply to the ownership, maintenance or use of **your covered auto** by:

   a. You;

   b. Any **family member**; or

   c. Any partner, agent or employee of you or any **family member**.

7. Maintaining or using any vehicle while that **insured** is employed or otherwise engaged in any **business** (other than farming or ranching) not described in Exclusion **A.6.**

   This Exclusion (**A.7.**) does not apply to the maintenance or use of a:

   a. Private passenger auto;

   b. Pickup or van; or

   c. **Trailer** used with a vehicle described in **a.** or **b.** above.

8. Using a vehicle without a reasonable belief that that **insured** is entitled to do so. This Exclusion (**A.8.**) does not apply to a **family member** using **your covered auto** which is owned by you.

9. For **bodily injury** or **property damage** for which that **insured**:

   a. Is an insured under a nuclear energy liability policy; or

   b. Would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.

Copyright, ISO Properties, Inc., 2003
**Amica Policy 023**

A nuclear energy liability policy is a policy issued by any of the following or their successors:

a. Nuclear Energy Liability Insurance Association;

b. Mutual Atomic Energy Liability Underwriters; or

c. Nuclear Insurance Association of Canada.

B. We do not provide Liability Coverage for the ownership, maintenance or use of:

1. Any vehicle which:

   a. Has fewer than four wheels; or

   b. Is designed mainly for use off public roads.

   This Exclusion (**B.1.**) does not apply:

   a. While such vehicle is being used by an **insured** in a medical emergency;

   b. To any **trailer**; or

   c. To any non-owned golf cart.

2. Any vehicle, other than **your covered auto,** which is:

   a. Owned by you; or

   b. Furnished or available for your regular use.

3. Any vehicle, other than **your covered auto,** which is:

   a. Owned by any **family member**; or

   b. Furnished or available for the regular use of any **family member.**

   However, this Exclusion (**B.3.**) does not apply to you while you are maintaining or **occupying** any vehicle which is:

   a. Owned by a **family member**; or

   b. Furnished or available for the regular use of a **family member.**

4. Any vehicle, located inside a facility designed for racing, for the purpose of:

   a. Competing in; or

   b. Practicing or preparing for;

   any prearranged or organized racing or speed contest.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of **bodily injury** sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for **bodily injury** resulting from any one auto accident.

The limit of liability shown in the Declarations for each accident for Property Damage Liability is our maximum limit of liability for all **property damage** resulting from any one auto accident.

This is the most we will pay regardless of the number of:

1. **Insureds**;

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part **B** or Part **C** of this policy; or

2. Any Underinsured Motorists Coverage provided by this policy.

## OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which **your covered auto** is principally garaged, we will interpret your policy for that accident as follows:

A. If the state or province has:

1. A financial responsibility or similar law specifying limits of liability for **bodily injury** or **property damage** higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

B. No one will be entitled to duplicate payments for the same elements of loss.

## FINANCIAL RESPONSIBILITY

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

## OTHER INSURANCE

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own, including any vehicle while used as a temporary substitute for **your covered auto**, shall be excess over any other collectible insurance.

# PART B - MEDICAL PAYMENTS COVERAGE

## INSURING AGREEMENT

A. We will pay reasonable expenses incurred for necessary medical and funeral services because of **bodily injury**:

1. Caused by accident; and

2. Sustained by an **insured**.

We will pay only those expenses incurred for services rendered within 3 years from the date of the accident.

B. "Insured" as used in this Part means:

1. You or any **family member**:

   a. While **occupying**; or

   b. As a pedestrian when struck by;

   a motor vehicle designed for use mainly on public roads or a **trailer** of any type.

2. Any other person while **occupying your covered auto**.

## EXCLUSIONS

We do not provide Medical Payments Coverage for any **insured** for **bodily injury**:

1. Sustained while **occupying** any motorized vehicle having fewer than four wheels.

2. Sustained while **occupying your covered auto** when it is being used as a public or livery conveyance. This Exclusion (2.) does not apply to a share-the-expense car pool.

3. Sustained while **occupying** any vehicle located for use as a residence or premises.

4. Occurring during the course of employment if workers' compensation benefits are required or available for the **bodily injury**.

5. Sustained while **occupying**, or when struck by, any vehicle (other than **your covered auto**) which is:

   a. Owned by you; or

   b. Furnished or available for your regular use.

6. Sustained while **occupying**, or when struck by, any vehicle (other than **your covered auto**) which is:

   a. Owned by any **family member**; or

   b. Furnished or available for the regular use of any **family member**.

   However, this Exclusion (6.) does not apply to you.

7. Sustained while **occupying** a vehicle without a reasonable belief that that **insured** is entitled to do so. This Exclusion (7.) does not apply to a **family member** using **your covered auto** which is owned by you.

8. Sustained while **occupying** a vehicle when it is being used in the **business** of an **insured**. This Exclusion (8.) does not apply to **bodily injury** sustained while **occupying** a:

   a. Private passenger auto;

   b. Pickup or van; or

   c. **Trailer** used with a vehicle described in **a.** or **b.** above.

9. Caused by or as a consequence of:

   a. Discharge of a nuclear weapon (even if accidental);

   b. War (declared or undeclared);

   c. Civil war;

   d. Insurrection; or

   e. Rebellion or revolution.

10. From or as a consequence of the following, whether controlled or uncontrolled or however caused:

a. Nuclear reaction;

b. Radiation; or

c. Radioactive contamination.

11. Sustained while **occupying** any vehicle located inside a facility designed for racing, for the purpose of:

a. Competing in; or

b. Practicing or preparing for;

any prearranged or organized racing or speed contest.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of:

1. **Insureds**;

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part **A** or Part **C** of this policy; or

2. Any Underinsured Motorists Coverage provided by this policy.

## OTHER INSURANCE

If there is other applicable auto medical payments insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own, including any vehicle while used as a temporary substitute for **your covered auto**, shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

# PART C - UNINSURED MOTORISTS COVERAGE

## INSURING AGREEMENT

A. We will pay compensatory damages which an **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of **bodily injury**:

1. Sustained by an **insured**; and

2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the **uninsured motor vehicle**.

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

B. "**Insured**" as used in this Part means:

1. You or any **family member**.

2. Any other person **occupying your covered auto**.

3. Any person for damages that person is entitled to recover because of **bodily injury** to which this coverage applies sustained by a person described in **1**. or **2**. above.

C. "**Uninsured motor vehicle**" means a land motor vehicle or **trailer** of any type:

1. To which no bodily injury liability bond or policy applies at the time of the accident.

2. To which a bodily injury liability bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be less than the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which **your covered auto** is principally garaged.

3. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits:

a. You or any **family member**;

b. A vehicle which you or any **family member** are **occupying**; or

c. **Your covered auto**.

4. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:

a. Denies coverage; or

b. Is or becomes insolvent.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any **family member.**

2. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.

3. Owned by any governmental unit or agency.

4. Operated on rails or crawler treads.

5. Designed mainly for use off public roads while not on public roads.

6. While located for use as a residence or premises.

## EXCLUSIONS

A. We do not provide Uninsured Motorists Coverage for **bodily injury** sustained:

1. By an **insured** while **occupying,** or when struck by, any motor vehicle owned by that **insured** which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

2. By any **family member** while **occupying,** or when struck by, any motor vehicle you own which is insured for this coverage on a primary basis under any other policy.

B. We do not provide Uninsured Motorists Coverage for **bodily injury** sustained by any **insured:**

1. If that **insured** or the legal representative settles the **bodily injury** claim and such settlement prejudices our right to recover payment.

2. While **occupying your covered auto** when it is being used as a public or livery conveyance. This Exclusion (**B.2.**) does not apply to a share-the-expense car pool.

3. Using a vehicle without a reasonable belief that that **insured** is entitled to do so. This Exclusion (**B.3.**) does not apply to a **family member** using **your covered auto** which is owned by you.

C. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

D. We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of **bodily injury** sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for **bodily injury** resulting from any one accident.

This is the most we will pay regardless of the number of:

1. **Insureds;**

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part **A** or Part **B** of this policy; or

2. Any Underinsured Motorists Coverage provided by this policy.

C. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

D. We will not pay for any element of loss if a person entitled to receive payment for the same element of loss under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

## OTHER INSURANCE

If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided under this Part of the policy:

1. Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis.

2. Any insurance we provide with respect to a vehicle you do not own, including any vehicle while used as a temporary substitute for **your**

covered auto, shall be excess over any collectible insurance providing such coverage on a primary basis.

3. If the coverage under this policy is provided:

   a. On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.

   b. On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on an excess basis.

## ARBITRATION

A. If we and an insured do not agree:

   1. Whether that insured is legally entitled to recover damages; or

   2. As to the amount of damages which are recoverable by that insured;

   from the owner or operator of an uninsured motor vehicle, then the matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated.

Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

B. Each party will:

   1. Pay the expenses it incurs; and

   2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the insured lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by at least two of the arbitrators will be binding as to:

   1. Whether the insured is legally entitled to recover damages; and

   2. The amount of damages. This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which your covered auto is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

# PART D - COVERAGE FOR DAMAGE TO YOUR AUTO

## INSURING AGREEMENT

A. We will pay for direct and accidental loss to your covered auto or any non-owned auto, including their equipment, minus any applicable deductible shown in the Declarations. If loss to more than one your covered auto or non-owned auto results from the same collision, only the highest applicable deductible will apply. We will pay for loss to your covered auto caused by:

   1. Other than collision only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

   2. Collision only if the Declarations indicate that Collision Coverage is provided for that auto.

   If there is a loss to a non-owned auto, we will provide the broadest coverage applicable to any your covered auto shown in the Declarations.

B. "Collision" means the upset of your covered auto or a non-owned auto or their impact with another vehicle or object.

   Loss caused by the following is considered other than collision:

   1. Missiles or falling objects;

   2. Fire;

   3. Theft or larceny;

   4. Explosion or earthquake;

   5. Windstorm;

   6. Hail, water or flood;

   7. Malicious mischief or vandalism;

   8. Riot or civil commotion;

   9. Contact with bird or animal; or

   10. Breakage of glass.

PP 00 01 01 05    Copyright, ISO Properties, Inc., 2003    Page 8 of 14

If breakage of glass is caused by a **collision**, you may elect to have it considered a loss caused by **collision.**

C. "Non-owned auto" means:

1. Any private passenger auto, pickup, van or **trailer** not owned by or furnished or available for the regular use of you or any **family member** while in the custody of or being operated by you or any **family member**; or

2. Any auto or **trailer** you do not own while used as a temporary substitute for **your covered auto** which is out of normal use because of its:

   a. Breakdown;

   b. Repair;

   c. Servicing;

   d. Loss; or

   e. Destruction.

## TRANSPORTATION EXPENSES

A. In addition, we will pay, without application of a deductible, up to a maximum of $600 for:

1. Temporary transportation expenses not exceeding $20 per day incurred by you in the event of a loss to **your covered auto**. We will pay for such expenses if the loss is caused by:

   a. Other than **collision** only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

   b. **Collision** only if the Declarations indicate that Collision Coverage is provided for that auto.

2. Expenses for which you become legally responsible in the event of loss to a **non-owned auto**. We will pay for such expenses if the loss is caused by:

   a. Other than **collision** only if the Declarations indicate that Other Than Collision Coverage is provided for any **your covered auto.**

   b. **Collision** only if the Declarations indicate that Collision Coverage is provided for any **your covered auto.**

   However, the most we will pay for any expenses for loss of use is $20 per day.

B. Subject to the provisions of Paragraph **A.**, if the loss is caused by:

1. A total theft of **your covered auto** or a **non-owned auto**, we will pay only expenses incurred during the period:

   a. Beginning 48 hours after the theft; and

   b. Ending when **your covered auto** or the **non-owned auto** is returned to use or we pay for its loss.

2. Other than theft of a **your covered auto** or a **non-owned auto**, we will pay only expenses beginning when the auto is withdrawn from use for more than 24 hours.

Our payment will be limited to that period of time reasonably required to repair or replace the **your covered auto** or the **non-owned auto.**

## EXCLUSIONS

We will not pay for:

1. Loss to **your covered auto** or any **non-owned auto** which occurs while it is being used as a public or livery conveyance. This Exclusion (**1.**) does not apply to a share-the-expense car pool.

2. Damage due and confined to:

   a. Wear and tear;

   b. Freezing;

   c. Mechanical or electrical breakdown or failure; or

   d. Road damage to tires.

   This Exclusion (**2.**) does not apply if the damage results from the total theft of **your covered auto** or any **non-owned auto.**

3. Loss due to or as a consequence of:

   a. Radioactive contamination;

   b. Discharge of any nuclear weapon (even if accidental);

   c. War (declared or undeclared);

   d. Civil war;

   e. Insurrection; or

   f. Rebellion or revolution.

4. Loss to any electronic equipment that reproduces, receives or transmits audio, visual or data signals. This includes but is not limited to:

   a. Radios and stereos;

   b. Tape decks;

c.  Compact disk systems;

d.  Navigation systems;

e.  Internet access systems;

f.  Personal computers.

g.  Video entertainment systems;

h.  Telephones;

i.  Televisions;

j.  Two-way mobile radios;

k.  Scanners; or

l.  Citizens band radios.

This Exclusion (4.) does not apply to electronic equipment that is permanently installed in **your covered auto** or any **non-owned auto.**

5.  Loss to tapes, records, disks or other media used with equipment described in Exclusion 4.

6.  A total loss to **your covered auto** or any **non-owned auto** due to destruction or confiscation by governmental or civil authorities.

    This Exclusion (6.) does not apply to the interests of Loss Payees in **your covered auto.**

7.  Loss to:

    a.  A **trailer**, camper body, or motor home, which is not shown in the Declarations; or

    b.  Facilities or equipment used with such **trailer**, camper body or motor home. Facilities or equipment include but are not limited to:

        (1) Cooking, dining, plumbing or refriger-ation facilities;

        (2) Awnings or cabanas; or

        (3) Any other facilities or equipment used with a **trailer**, camper body, or motor home.

    This Exclusion (7.) does not apply to a:

    a.  **Trailer**, and its facilities or equipment, which you do not own; or

    b.  **Trailer**, camper body, or the facilities or equipment in or attached to the **trailer** or camper body, which you:

        (1) Acquire during the policy period; and

        (2) Ask us to insure within 14 days after you become the owner.

8.  Loss to any **non-owned auto** when used by you or any **family member** without a reasonable belief that you or that **family member** are entitled to do so.

9.  Loss to equipment designed or used for the detection or location of radar or laser.

10. Loss to any custom furnishings or equipment in or upon any pickup or van. Custom furnishings or equipment include but are not limited to:

    a.  Special carpeting or insulation;

    b.  Furniture or bars;

    c.  Height-extending roofs; or

    d.  Custom murals, paintings or other decals or graphics.

    This Exclusion (10.) does not apply to a cap, cover or bedliner in or upon any **your covered auto** which is a pickup.

11. Loss to any **non-owned auto** being maintained or used by any person while employed or otherwise engaged in the business of:

    a.  Selling;

    b.  Repairing;

    c.  Servicing;

    d.  Storing; or

    e.  Parking;

    vehicles designed for use on public highways. This includes road testing and delivery.

12. Loss to **your covered auto** or any **non-owned auto**, located inside a facility designed for racing, for the purpose of:

    a.  Competing in; or

    b.  Practicing or preparing for;

    any prearranged or organized racing or speed contest.

13. Loss to, or loss of use of, a **non-owned auto** rented by:

    a.  You; or

    b.  Any **family member**;

    if a rental vehicle company is precluded from recovering such loss or loss of use, from you or that **family member**, pursuant to the provisions of any applicable rental agreement or state law.

## LIMIT OF LIABILITY

A. Our limit of liability for loss will be the lesser of the:

1. Actual cash value of the stolen or damaged property; or

2. Amount necessary to repair or replace the property with other property of like kind and quality.

However, the most we will pay for loss to:

1. Any **non-owned auto** which is a trailer is $1,500.

2. Electronic equipment that reproduces, receives or transmits audio, visual or data signals, which is permanently installed in the auto in locations not used by the auto manufacturer for installation of such equipment, is $1,000.

B. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss.

C. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

## PAYMENT OF LOSS

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

1. You; or

2. The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

If we pay for loss in money, our payment will include the applicable sales tax for the damaged or stolen property.

## NO BENEFIT TO BAILEE

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a **non-owned auto** shall be excess over any other collectible source of recovery including, but not limited to:

1. Any coverage provided by the owner of the **non-owned auto**;

2. Any other applicable physical damage insurance;

3. Any other source of recovery applicable to the loss.

## APPRAISAL

A. If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and

2. Bear the expenses of the appraisal and umpire equally.

B. We do not waive any of our rights under this policy by agreeing to an appraisal.

# PART E - DUTIES AFTER AN ACCIDENT OR LOSS

We have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us:

A. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

B. A person seeking any coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit.

2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

3. Submit, as often as we reasonably require:

   a. To physical exams by physicians we select. We will pay for these exams.

   b. To examination under oath and subscribe the same.

4. Authorize us to obtain:

a.  Medical reports; and

b.  Other pertinent records.

5.  Submit a proof of loss when required by us.

C.  A person seeking Uninsured Motorists Coverage must also:

1.  Promptly notify the police if a hit-and-run driver is involved.

2.  Promptly send us copies of the legal papers if a suit is brought.

D.  A person seeking Coverage For Damage To Your Auto must also:

1.  Take reasonable steps after loss to protect **your covered auto** or any **non-owned auto** and their equipment from further loss. We will pay reasonable expenses incurred to do this.

2.  Promptly notify the police if **your covered auto** or any **non-owned auto** is stolen.

3.  Permit us to inspect and appraise the damaged property before its repair or disposal.

---

# PART F - GENERAL PROVISIONS

---

## BANKRUPTCY

Bankruptcy or insolvency of the **insured** shall not relieve us of any obligations under this policy.

## CHANGES

A.  This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

B.  If there is a change to the information used to develop the policy premium, we may adjust your premium. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:

1.  The number, type or use classification of insured vehicles;

2.  Operators using insured vehicles;

3.  The place of principal garaging of insured vehicles;

4.  Coverage, deductible or limits.

If a change resulting from **A.** or **B.** requires a premium adjustment, we will make the premium adjustment in accordance with our manual rules.

C.  If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will automatically apply to your policy as of the date we implement the change in your state. This Paragraph (**C.**) does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1.  A subsequent edition of your policy; or

2.  An Amendatory Endorsement.

## FRAUD

We do not provide coverage for any **insured** who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

## LEGAL ACTION AGAINST US

A.  No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Part **A**, no legal action may be brought against us until:

1.  We agree in writing that the **insured** has an obligation to pay; or

2.  The amount of that obligation has been finally determined by judgment after trial.

B.  No person or organization has any right under this policy to bring us into any action to determine the liability of an **insured**.

## OUR RIGHT TO RECOVER PAYMENT

A.  If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

1.  Whatever is necessary to enable us to exercise our rights; and

2.  Nothing after loss to prejudice them.

However, our rights in this Paragraph (**A.**) do not apply under Part **D**, against any person using **your covered auto** with a reasonable belief that that person is entitled to do so.

B.  If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

PP 00 01 01 05            Copyright, ISO Properties, Inc., 2003            **Page 12 of 14**

1. Hold in trust for us the proceeds of the recovery; and

2. Reimburse us to the extent of our payment.

**POLICY PERIOD AND TERRITORY**

A. This policy applies only to accidents and losses which occur:

1. During the policy period as shown in the Declarations; and

2. Within the policy territory.

B. The policy territory is:

1. The United States of America, its territories or possessions;

2. Puerto Rico; or

3. Canada.

This policy also applies to loss to, or accidents involving, **your covered auto** while being transported between their ports.

**TERMINATION**

A. Cancellation

This policy may be cancelled during the policy period as follows:

1. The named insured shown in the Declarations may cancel by:

   a. Returning this policy to us; or

   b. Giving us advance written notice of the date cancellation is to take effect.

2. We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:

   a. At least 10 days notice:

      (1) If cancellation is for nonpayment of premium; or

      (2) If notice is mailed during the first 60 days this policy is in effect and this is not a renewal or continuation policy; or

   b. At least 20 days notice in all other cases.

3. After this policy is in effect for 60 days, or if this is a renewal or continuation policy, we will cancel only:

   a. For nonpayment of premium; or

   b. If your driver's license or that of:

      (1) Any driver who lives with you; or

      (2) Any driver who customarily uses **your covered auto**;

      has been suspended or revoked. This must have occurred:

      (1) During the policy period; or

      (2) Since the last anniversary of the original effective date if the policy period is other than 1 year; or

   c. If the policy was obtained through material misrepresentation.

B. Nonrenewal

If we decide not to renew or continue this policy, we will mail notice to the named insured shown in the Declarations at the address shown in this policy. Notice will be mailed at least 20 days before the end of the policy period. Subject to this notice requirement, if the policy period is:

1. Less than 6 months, we will have the right not to renew or continue this policy every 6 months, beginning 6 months after its original effective date.

2. 6 months or longer, but less than one year, we will have the right not to renew or continue this policy at the end of the policy period.

3. 1 year or longer, we will have the right not to renew or continue this policy at each anniversary of its original effective date.

C. Automatic Termination

If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If you obtain other insurance on **your covered auto**, any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

D. Other Termination Provisions

1. We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

2. If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

Copyright, ISO Properties, Inc., 2003
Amica Policy 033

3. The effective date of cancellation stated in the notice shall become the end of the policy period.

## TRANSFER OF YOUR INTEREST IN THIS POLICY

A. Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations; and

2. The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use **your covered auto.**

B. Coverage will only be provided until the end of the policy period.

## TWO OR MORE AUTO POLICIES

If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

## MUTUAL PROVISIONS

This policy is non-assessable. This means your only financial obligation is the premium for your insurance. You shall be entitled to such dividends as may be declared by the board of directors.

By virtue of this policy you are a member of the Amica Mutual Insurance Company and entitled to vote either in person or by proxy at all meetings of the Company. The annual meetings are held at its home office on the second Thursday of February in each year at 9:00 A.M.

---

This policy is signed on behalf of Amica Mutual Insurance Company by our President and Secretary at Lincoln, Rhode Island, and countersigned on the Declarations by our authorized agent or representative.

*Suzanne E Casey*
Secretary

*Robert A. D. Nuccio*
President

## MUTUAL PROVISIONS - NON-DIVIDEND POLICY

**AM 00 18 02 01**

In consideration of a reduced premium for this policy,**MUTUAL PROVISIONS** is replaced by the following:

### MUTUAL PROVISIONS

This policy is non-assessable.  This means your only financial obligation is the premium for your insurance. You shall not be entitled to any dividends.

By virtue of this policy you are a member of the Amica Mutual Insurance Company and entitled to vote either in person or by proxy at all meetings of the Company. The annual meetings are held at its home office on the second Thursday of February in each year at 9:00 A.M.

**Amica Mutual Insurance Company**

**AM 00 18 02 01**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## UNINSURED MOTORISTS COVERAGE - ARIZONA

PP 04 77 03 16

The following notice is added:

Any reference to Part **C** - Uninsured Motorists Coverage in any attached endorsement is replaced with Uninsured Motorists Coverage - Arizona.

**I.   Part C - Uninsured Motorists Coverage**

Part **C** is replaced by the following:

**INSURING AGREEMENT**

**A.**  We will pay compensatory damages which an **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of **bodily injury**:

  **1.**  Sustained by an **insured**; and

  **2.**  Caused by an accident.

  The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the **uninsured motor vehicle.**

  Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

**B.**  "**Insured**" as used in this Part means:

  **1.**  You or any **family member.**

  **2.**  Any other person **occupying your covered auto.**

  **3.**  Any person for damages that person is entitled to recover because of **bodily injury** to which this coverage applies sustained by a person described in **1.** or **2.** above.

**C.**  "**Uninsured motor vehicle**" means a land motor vehicle or trailer of any type:

  **1.**  To which no bodily injury liability bond or policy applies at the time of the accident.

  **2.**  To which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the minimum limit for bodily injury liability specified by the financial responsibility law of Arizona.

  **3.**  Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits or which causes an accident resulting in **bodily injury** without hitting:

    **a.**  You or any **family member**;

    **b.**  A vehicle which you or any **family member** are occupying; or

    **c.**  **Your covered auto.**

    If there is no physical contact with the hit-and-run vehicle the facts of the accident must be proved.  The person making the claim shall provide corroboration that the unidentified motor vehicle caused the accident.  Corroboration means any additional and confirming testimony, fact or evidence that strengthens and adds weight or credibility to such person's representation of the accident.

  **4.**  To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:

    **a.**  Denies coverage; or

    **b.**  Is or becomes insolvent.

  However, "**uninsured motor vehicle**" does not include any vehicle or equipment:

  **1.**  Owned by or furnished or available for the regular use of you or any **family member** unless there is no Liability Coverage available under Part **A** of this policy to respond for damages sustained by an **insured.**

  **2.**  Operated on rails or crawler treads.

  **3.**  Designed mainly for use off public roads while not on public roads.

  **4.**  While located for use as a residence or premises.

**EXCLUSIONS**

**A.**  We do not provide Uninsured Motorists Coverage for **bodily injury** sustained by any **insured**:

  **1.**  If that **insured** or the legal representative settles the **bodily injury** claim and such settlement prejudices our right to recover payment.

  **2.**  While **occupying your covered auto** when it is being used as a public or livery conveyance.  This includes but is not limited to any period of time **your coverage auto** is being used by an **insured** who is logged into a **transportation network platform** as a driver, whether or not a passenger is **occupying** the vehicle.

  This Exclusion (**A.2.**) does not apply:

    **a.**  To a share-the-expense car pool; or

PP 04 77 03 16          Copyright, Insurance Services Office, Inc., 2015          **Page 1 of 3**

**Amica Policy 037**

## UNINSURED MOTORISTS COVERAGE - ARIZONA

PP 04 77 03 16

b. When **your covered auto** is being used in the course of volunteer work for a tax-exempt organization as described in ARIZ. REV. STAT. ANN. Section 43-1201(4).

3. Using a vehicle without a reasonable belief that that **insured** is entitled to do so. This Exclusion (**A.3.**) does not apply to a **family member** using **your covered auto** which is owned by you.

B. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

C. We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

### LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of **bodily injury** sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for **bodily injury** resulting from any one accident.

This is the most we will pay regardless of the number of:

1. **Insureds**;

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part **A** or Part **B** of this policy; or

2. Any Underinsured Motorists Coverage provided by this policy.

C. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

D. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

### OTHER INSURANCE

If there is other applicable similar insurance available under more than one policy or provision of coverage:

1. Any insurance we provide with respect to a vehicle:

a. You do not own, including any vehicle while used as a temporary substitute for **your covered auto**; or

b. Owned by you or any **family member** which is not insured for this coverage under this policy;

shall be excess over any collectible insurance providing such coverage on a primary basis.

2. We will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits.

### ARBITRATION

A. If we and an **insured** do not agree:

1. Whether that **insured** is legally entitled to recover damages; or

2. As to the amount of damages which are recoverable by that **insured**;

from the owner or operator of an **uninsured motor vehicle**, then the matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated.

Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

B. Each party will:

1. Pay the expenses it incurs; and

2. Bear the expenses of the third arbitrator equally.

Copyright, Insurance Services Office, Inc., 2015

Amica Policy 038

## UNINSURED MOTORISTS COVERAGE - ARIZONA

C. Unless both parties agree otherwise, arbitration will take place in the county in which the **insured** lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by at least two of the arbitrators will be binding as to:

1. Whether the **insured** is legally entitled to recover damages; and

2. The amount of damages. This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of Arizona. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

II. **Part F - General Provisions**

Part **F** is amended as follows with respect to Uninsured Motorists Coverage:

A. The **Our Right To Recover Payment** Provision is replaced by the following:

If we make a payment and the person to or for whom payment was made has a right to recover damages from the owner or operator of an **uninsured motor vehicle** we shall be subrogated to that right. That person shall do:

a. Whatever is necessary to enable us to exercise our rights; and

b. Nothing after loss to prejudice them.

B. The **Two Or More Auto Policies** Provision is replaced by the following:

**TWO OR MORE AUTO POLICIES**

If this policy and any other auto insurance policy issued to you by us apply to the same accident, only one of the policies will apply to the accident. You will select the one policy that will apply.

 Copyright, Insurance Services Office, Inc., 2015

Amica Policy 039

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# UNDERINSURED MOTORISTS COVERAGE - ARIZONA

PP 04 89 03 16

### SCHEDULE

| Limit Of Liability | | Premium | | |
|---|---|---|---|---|
| | | Auto 1 | Auto 2 | Auto 3 |
| $ | each person | $ | $ | $ |
| $ | each accident | | | |

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

## INSURING AGREEMENT

We will pay compensatory damages which an **insured** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle** because of **bodily injury**:

1. Sustained by an **insured**; and

2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the **underinsured motor vehicle.**

"**Insured**" as used in this endorsement means:

1. You or any **family member.**

2. Any other person **occupying your covered auto.**

3. Any person for damages that person is entitled to recover because of **bodily injury** to which this coverage applies sustained by a person described in 1. or 2. above.

"**Underinsured motor vehicle**" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but the amount paid for **bodily injury** under that bond or policy to an **insured** is not enough to pay the full amount the **insured** is legally entitled to recover as damages.

However, "**underinsured motor vehicle**" does not include any vehicle or equipment:

1. To which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the minimum limit for bodily injury liability specified by the financial responsibility law of Arizona.

2. Operated on rails or crawler treads.

3. Designed mainly for use off public roads while not upon public roads.

4. While located for use as a residence or premises.

5. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:

a. Denies coverage; or

b. Is or becomes insolvent.

## EXCLUSIONS

A. We do not provide Underinsured Motorists Coverage for **bodily injury** sustained by any **insured**:

1. While **occupying your covered auto** when it is being used as a public or livery conveyance. This includes but is not limited to any period of time **your covered auto** is being used by any **insured** who is logged into a **transportation network platform** as a driver, whether or not a passenger is **occupying** the vehicle.

This Exclusion (**A.1.**) does not apply:

a. To a share-the-expense car pool; or

b. When **your covered auto** is being used in the course of volunteer work for a tax-exempt organization as described in ARIZ. REV. STAT. ANN. Section 43-1201(4).

2. Using a vehicle without a reasonable belief that that **insured** is entitled to do so. This Exclusion (**A.2.**) does not apply to a **family member** using **your covered auto** which is owned by you.

B. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

C. We do not provide Underinsured Motorists Coverage for punitive or exemplary damages.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Schedule or in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of **bodily injury** sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Schedule or in the

Amica Policy 041

## UNDERINSURED MOTORISTS COVERAGE - ARIZONA

Declarations for each accident for Underinsured Motorists Coverage is our maximum limit of liability for all damages for **bodily injury** resulting from any one accident.

This is the most we will pay regardless of the number of:

1. **Insureds**;

2. Claims made;

3. Vehicles or premiums shown in the Schedule or in the Declarations; or

4. Vehicles involved in the accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part **A**, Part **B** or Part **C** of this policy.

C. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

D. We will reduce the **insured's** total damages by any amount available to that **insured**, under any bodily injury liability bonds or policies applicable to the **underinsured motor vehicle**, that such **insured** did not recover as a result of a settlement between that **insured** and the insurer of an **underinsured motor vehicle**. However, any reduction of the **insured's** total damages will not reduce the limit of liability for this coverage.

**OTHER INSURANCE**

If there is other applicable insurance similar to the insurance provided by this endorsement, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle:

1. You do not own, including any vehicle while used as a temporary substitute for **your covered auto**; or

2. Owned by you or any **family member** which is not insured for this coverage under this policy;

shall be excess over any other collectible insurance similar to the insurance provided by this endorsement.

**ARBITRATION**

If we and an insured do not agree:

1. Whether that **insured** is legally entitled to recover damages; or

2. As to the amount of damages which are recoverable by that **insured**;

from the owner or operator of an **underinsured motor vehicle**, then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated.

Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will:

1. Pay the expenses it incurs; and

2. Bear the expenses of the third arbitrator equally.

Unless both parties agree otherwise, arbitration will take place in the county in which the **insured** lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by at least two of the arbitrators will be binding as to:

1. Whether the **insured** is legally entitled to recover damages; and

2. The amount of damages. This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of Arizona. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

**ADDITIONAL DUTY**

Any person seeking coverage under this endorsement must also promptly send us copies of the legal papers if a suit is brought.

**Part F - General Provisions**

Part **F** is amended as follows with respect to Underinsured Motorists Coverage:

A. The **Our Right To Recover Payment** Provision does not apply.

B. The **Two Or More Auto Policies** Provision is replaced by the following:

**TWO OR MORE AUTO POLICIES**

If this policy and any other auto insurance policy issued to you by us apply to the same accident, only one of the policies will apply to the accident. You will select the one policy that will apply.

   Copyright, Insurance Services Office, Inc., 2015

Amica Policy 042

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CUSTOM EQUIPMENT EXCLUSION ENDORSEMENT

PP 13 06 01 09

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

Part D - Coverage For Damage To Your Auto is amended as follows:

**A. Insuring Agreement**

The following definition is added to Part D:

"**Custom equipment**" means equipment, furnishings and parts in or upon any auto, other than:

1. Original manufacturer equipment, furnishings or parts; or

2. Any replacement of original manufacturer equipment, furnishings or parts with other equipment, furnishings or parts of like kind and quality.

**Custom equipment** includes but is not limited to:

1. Special carpeting or insulation;

2. Furniture or bars;

3. Height-extending roofs;

4. Body, engine, exhaust or suspension enhancers;

5. Winches, or anti-roll or anti-sway bars;

6. Custom grilles, louvers, side pipes, hood scoops or spoilers;

7. Custom wheels, tires or spinners;

8. Custom chrome, murals, paintwork, decals or other graphics; or

9. Caps, covers or bedliners.

**Custom equipment** does not include electronic equipment that reproduces, receives or transmits audio, visual or data signals.

**B. Exclusions**

Exclusion 10. is replaced by the following:

We will not pay for:

10. Loss to any **custom equipment** in or upon **your covered auto** or any **non-owned auto**.

This Exclusion (10.) does not apply to the first $1,500 of **custom equipment** in or upon **your covered auto** or any **non-owned auto**.

**C. Limit of Liability**

Paragraph **A.** of the **Limit Of Liability** Provision is replaced by the following:

Our limit of liability for loss will be the lesser of the:

1. Actual cash value of the stolen or damaged property; or

2. Amount necessary to repair or replace the property with other property of like kind and quality.

However, the most we will pay for loss to:

1. Any **non-owned auto** which is a trailer is $1,500.

2. Electronic equipment that reproduces, receives or transmits audio, visual or data signals, which is permanently installed in the auto in locations not used by the auto manufacturer for installation of such equipment, is $1,000.

3. **Custom equipment** in or upon **your covered auto** or any **non-owned auto** is $1,500.

PP 13 06 01 09      Copyright, ISO Properties, Inc., 2008

## TOWING AND LABOR COSTS COVERAGE

**PP 03 03 04 86**

We will pay towing and labor costs incurred each time **your covered auto** or any **non-owned auto** is disabled, up to the amount shown in the Declarations as applicable to that vehicle. If a **non-owned auto** is disabled, we will provide the broadest towing and labor costs coverage applicable to any **your covered auto** shown in the Declarations. We will only pay for labor performed at the place of disablement.

**PP 03 03 04 86**                     Copyright, Insurance Services Office, Inc., 1985

Amica Policy 045

## LOSS PAYABLE CLAUSE

**AM 00 57 10 05**

Loss or damage under this policy shall be paid, as interest may appear, to you and the loss payee shown in the Declarations. The interests of the loss payee or lessor will be protected, except when:

1. you or any person acting at your direction engages in the conversion, secretion or embezzlement of **your covered auto**;

2. you or any insured fails to cooperate in the settlement of the claim, or makes fraudulent statement(s) or engages in fraudulent conduct or misrepresentation in connection with any loss for which coverage is sought;

3. you or any person acting at your direction intentionally damage, destroy or conceal **your covered auto.**

We reserve the right to cancel the policy as permitted by policy terms and the cancellation shall terminate this agreement as to the loss payee's or lessor's interest. We will give the same advance notice of cancellation to the loss payee or lessor as we give to the named insured shown in the Declarations.

When we pay the loss payee or lessor we shall, to the extent of payment, be subrogated to the loss payee's rights of recovery.

The loss payee or lessor has no greater rights under the provisions of the policy than the insured.

AM 00 57 10 05

Includes copyrighted material of Insurance Services Office, Inc. With Its Permission Copyright, Insurance Services Office, Inc., 1986

Amica Policy 047

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMENDMENT OF POLICY PROVISIONS - ARIZONA

PP 01 67 08 18

The following notice is added:

Paragraph **B.2.** Cancellation and the Offer To Renew Provision contained in the Termination Provisions of Part **F** - General Provisions of this Policy include a grace period of at least seven days for the payment of any premium due, during which grace period this Policy shall continue in full force subject to the Termination Provisions of Part **F** - General Provisions of this Policy.

**I.  Definitions**

The following is added to the **Definitions** section:

**A.** Throughout the Policy, "minimum limits" refers to the following limits of liability as required by Arizona law, to be provided under a policy of automobile liability insurance:

**1.** $15,000 for each person, subject to $30,000 for each accident, with respect to **bodily injury**; and

**2.** $10,000 for each accident with respect to **property damage.**

**B.** **"Transportation network platform"** means an online-enabled application or digital network used to connect passengers with drivers using vehicles for the purpose of providing prearranged transportation services for compensation.

**C.** Definition **K.** is replaced by the following:

**K.** **"Newly acquired auto":**

**1.** **"Newly acquired auto"** means any of the following types of vehicles you become the owner of during the policy period:

**a.** A private passenger auto; or

**b.** A pickup or van, for which no other insurance policy provides coverage, that:

**(1)** Has a Gross Vehicle Weight Rating of 10,000 lbs. or less; and

**(2)** Is not used for the delivery or transportation of goods and materials unless such use is:

**(a)** Incidental to your **business** of installing, maintaining or repairing furnishings or equipment; or

**(b)** For farming or ranching.

**2.** Coverage for a **newly acquired auto** is provided as described below. If you ask us to insure a **newly acquired auto** after a specified time period described below has elapsed, any coverage we provide for a **newly acquired auto** will begin at the time you request the coverage.

**a.** For any coverage provided in this Policy except Coverage For Damage To Your Auto, a **newly acquired auto** will have the broadest coverage we now provide for any vehicle shown in the Declarations. Coverage begins on the date you become the owner. However, for this coverage to apply to a **newly acquired auto** which is in addition to any vehicle shown in the Declarations, you must ask us to insure it within 14 days after you become the owner.

If a **newly acquired auto** replaces a vehicle shown in the Declarations coverage is provided for this vehicle without your having to ask us to insure it.

**b.** Collision coverage for a **newly acquired auto** begins on the date you become the owner. However, you must ask us to insure it within:

**(1)** 14 days after you become the owner if the Declarations indicate that Collision Coverage applies to at least one auto. In this case, the **newly acquired auto** will have the broadest coverage we now provide for any auto shown in the Declarations.

However, after such 14-day period this coverage will apply without a coverage request if the **newly acquired auto** replaces a vehicle shown in the Declarations. In this case, such vehicle will have the same Collision Coverage as the vehicle it replaced until you ask us to insure it.

**(2)** Four days after you become the owner if the Declarations do not indicate that Collision Coverage applies to at least one auto.

Includes copyrighted material of Insurance Services Office, Inc. With Its Permission Copyright, Insurance Services Office, Inc., 2017

PP 01 67 08 18

Amica Policy 049

Page 1 of 5

# AMENDMENT OF POLICY PROVISIONS - ARIZONA

**PP 01 67 08 18**

If you comply with the four-day requirement and a loss occurred before you ask us to insure the **newly acquired auto**, a Collision deductible of $500 will apply.

c. Other Than Collision Coverage for a **newly acquired auto** begins on the date you become the owner. However, you must ask us to insure it within:

(1) 14 days after you become the owner if the Declarations indicate that Other Than Collision Coverage applies to at least one auto. In this case, the **newly acquired auto** will have the broadest coverage we now provide for any auto shown in the Declarations.

However, after such 14-day period this coverage will apply without a coverage request if the **newly acquired auto** replaces a vehicle shown in the Declarations. In this case, such vehicle will have the same Other Than Collision Coverage as the vehicle it replaced until you ask us to insure it.

(2) Four days after you become the owner if the Declarations do not indicate that Other Than Collision Coverage applies to at least one auto. If you comply with the four-day requirement and a loss occurred before you asked us to insure the **newly acquired auto**, an Other Than Collision deductible of $500 will apply.

## II. Part A - Liability Coverage

A. Exclusion A.5. is replaced by the following:

We do not provide Liability Coverage for any **insured**:

5. For that **insured's** liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance. This includes but is not limited to any period of time a vehicle is being used by any **insured** who is logged into a **transportation network platform** as a driver, whether or not a passenger is **occupying** the vehicle.

This exclusion (**A.5.**) does not apply to:

a. A share-the-expense car pool; or

b. The ownership or operation of a vehicle while it is being used in the course of volunteer work for a tax-exempt organization as described in ARIZ. REV. STAT. ANN. Section 43-1201(4).

B. The following exclusion is added:

We do not provide Liability Coverage for any **insured** for **bodily injury** to you or any **family member** to the extent that the limits of liability for this coverage exceed the minimum limits of liability required by the Arizona Financial Responsibility Law.

C. The **Other Insurance** Provision is replaced by the following:

**Other Insurance**

If there is other applicable liability insurance:

1. Any insurance we provide for a vehicle you do not own, including any vehicle while used as a temporary substitute for **your covered auto**, shall be excess over any other collectible insurance. However, any insurance we provide for a vehicle you do not own will be primary insurance if the vehicle is insured under a policy affording coverage to a named insured engaged in the business of:

a. Selling;

b. Repairing;

c. Servicing;

d. Delivering;

e. Testing;

f. Road testing;

g. Parking; or

h. Storing;

motor vehicles. This applies only if an **insured**:

a. Is operating the vehicle; and

b. Is neither the person engaged in such business nor that person's employee or agent.

2. Any insurance we provide for a vehicle you own shall be excess to that of a person engaged in the business of:

a. Selling;

b. Repairing;

c. Servicing;

Includes copyrighted material of Insurance Services Office, Inc. With Its Permission Copyright, Insurance Services Office, Inc., 2017

Amica Policy 050

## AMENDMENT OF POLICY PROVISIONS - ARIZONA

**PP 01 67 08 18**

d. Delivering;

e. Testing;

f. Road testing;

g. Parking; or

h. Storing;

motor vehicles, if the accident occurs while the vehicle is being operated by that person or that person's employee or agent.

3. We will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits.

### III. Part B - Medical Payments Coverage

Exclusion 2. is replaced by the following:

We do not provide Medical Payments Coverage for any **insured** for **bodily injury**:

2. Sustained while **occupying your covered auto** when it is being used as a public or livery conveyance. This includes but is not limited to any period of time **your covered auto** is being used by any **insured** who is logged into a **transportation network platform** as a driver, whether or not a passenger is **occupying** the vehicle.

This exclusion (2.) does not apply:

a. To a share-the-expense car pool; or

b. When **your covered auto** is being used in the course of volunteer work for a tax-exempt organization as described in ARIZ. REV. STAT. ANN. Section 43-1201(4).

### IV. Part D - Coverage For Damage To Your Auto

Exclusion 1. is replaced by the following:

We will not pay for:

1. Loss to **your covered auto** or any **non-owned auto** which occurs while it is being used as a public or livery conveyance. This includes but is not limited to any period of time **your covered auto** or any **non-owned auto** is being used by any person who is logged into a **transportation network platform** as a driver, whether or not a passenger is **occupying** the vehicle.

This exclusion (1.) does not apply:

a. To a share-the-expense car pool; or

b. While **your covered auto** or any **non-owned auto** is being used in the course of volunteer work for a tax-exempt organization as described in ARIZ. REV. STAT. ANN. Section 43-1201(4).

### V. Part F - General Provisions

A. The **Our Right To Recover Payment** Provision is replaced by the following with respect to **Part B - Medical Payments Coverage**:

**Our Right To Recover Payment**

If we make a payment under this coverage and the person to or for whom payment is made recovers damages from another we:

a. Shall be entitled to the proceeds of the recovery; and

b. May have a lien against such recovery;

to the extent of our payment in excess of $5,000. Notice of the lien shall be given in writing to:

a. A court having jurisdiction;

b. The **insured**;

c. Each person, firm and corporation that the **insured** or the **insured's** legal representative alleges are liable for damages arising from the accident; and

d. That person's, firm's and corporation's insurer.

B. The **Termination** Provision is replaced by the following:

**Termination**

**Cancellation**

This Policy may be cancelled during the policy period as follows:

1. The named insured shown in the Declarations may cancel by:

a. Returning this Policy to us; or

b. Giving us advance written notice of the date cancellation is to take effect.

2. We may cancel by mailing notice of cancellation to the named insured at the address shown in the Policy. Notice shall be mailed:

a. At least eight days after the premium due date if cancellation is for non-payment of premium. Cancellation is to take effect as of the date of the mailing of the notice.

Includes copyrighted material of Insurance Services Office, Inc. With Its Permission Copyright, Insurance Services Office, Inc., 2017

Amica Policy 051

## AMENDMENT OF POLICY PROVISIONS - ARIZONA

PP 01 67 08 18

b. At least 10 days prior to the date cancellation is to take effect in all other cases. In these cases, notice will be mailed by certified mail, United States Post Office certificate of mailing or by first class mail using Intelligent Mail barcode or another similar tracking method used or approved by the United States Postal Service.

3. After this Policy is in effect for 60 days or if this is a renewal or continuation policy, we will cancel only if:

a. The named insured shown in the Declarations fails to pay the premium for this Policy or any installment thereof;

b. The insurance was obtained through fraudulent misrepresentation;

c. You, any other driver who lives with you and who customarily operates **your covered auto**, or any other driver who regularly and frequently operates **your covered auto**:

(1) Has had their driver's license suspended or revoked during the policy period;

(2) Becomes permanently disabled either physically or mentally and that individual does not produce a certificate from a physician or a registered nurse practitioner testifying to that individual's ability to operate a motor vehicle;

(3) Is or has been convicted during the 36 months immediately preceding the effective date of the Policy or during the policy period for:

(a) Criminal negligence resulting in death, homicide or assault, and arising out of the operation of a motor vehicle;

(b) Operating a motor vehicle while in an intoxicated condition or while under the influence of drugs;

(c) Leaving the scene of an accident;

(d) Making false statements in an application for a driver's license; or

(e) Reckless driving;

unless you agree in writing to exclude as insured such person by name when operating a motor vehicle and also agree to exclude coverage to the named insured for any negligence which may be imputed by law to the named insured arising out of the maintenance, operation or use of a motor vehicle by such excluded person; or

(4) Uses **your covered auto** while logged into a **transportation network platform** as a driver, whether or not a passenger is **occupying** the vehicle, unless you either:

(a) Have procured an endorsement to this Policy that expressly provides such coverage; or

(b) Are covered by a motor vehicle liability insurance policy issued by another insurer expressly providing such coverage.

d. We are placed in rehabilitation or receivership by the insurance supervisory official in our state of domicile or by a court of competent jurisdiction or the Director of Insurance has suspended our Certificate of Authority based on our financially hazardous condition.

e. **Your covered auto** is used regularly and frequently for commercial purposes by:

(1) You;

(2) Any other driver who lives with you and who customarily operates **your covered auto**; or

(3) Any other driver who regularly and frequently operates **your covered auto**.

f. The Director of Insurance determines that the continuation of this Policy would place us in violation of the laws of Arizona or would jeopardize our solvency.

**Nonrenewal**

If we decide not to renew or continue this Policy, we will mail notice to the named insured shown in the Declarations at the address shown in this Policy. Notice will be mailed at least 45 days before the end of the policy period except for nonpayment of premium as provided in the Offer To Renew Provision.

Includes copyrighted material of Insurance Services Office, Inc. With Its Permission Copyright, Insurance Services Office, Inc., 2017

Amica Policy 052

## AMENDMENT OF POLICY PROVISIONS - ARIZONA

**PP 01 67 08 18**

Notice will be mailed by certified mail, United States Post Office certificate of mailing or by first class mail using Intelligent Mail barcode or another similar tracking method used or approved by the United States Postal Service except if the reason we decide not to renew or continue this Policy is that the named insured shown in the Declarations fails to pay the premium for this Policy or any installment thereof.

We will nonrenew or refuse to continue this Policy if the named insured shown in the Declarations:

1. Establishes a primary residence in a state other than Arizona.

2. Fails to maintain a membership in a bona fide association, subject to all of the conditions described in ARIZ. REV. STAT. ANN. Section 20-1631(M).

**Offer To Renew**

If we offer to renew or continue this Policy and you or your representative does not pay the required renewal or continuation premium within seven days after the due date, thereby not accepting our offer, we may terminate this Policy on or after the eighth day following the due date, by mailing notice of termination to the named insured at the address shown in the Policy. Termination is to take effect on the earlier of the following dates:

1. The date of the mailing of the notice; or

2. The effective date of any other insurance you have obtained on **your covered auto.**

However, if you or your representative notifies us in writing that you:

1. Have obtained other insurance on **your covered auto**; or

2. Do not wish to renew or continue this Policy;

the above provision does not apply and any insurance provided by this Policy will terminate in accordance with the Automatic Termination Provision below.

**Automatic Termination**

If you notify us in writing that you do not wish to renew or continue, any insurance provided by this Policy will automatically terminate at the end of the current policy period. We will mail you a notice of termination.

**Other Termination Provisions**

1. If this Policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. If we cancel, we will refund you the pro rata unearned premium. If you cancel, we will refund you 90% of the pro rata unearned premium.

2. The effective date of cancellation stated in the notice shall become the end of the policy period.

C. The **Transfer Of Your Interest In This Policy** Provision is replaced by the following:

**Transfer Of Your Interest In This Policy**

Your rights and duties under this Policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided under this Policy for:

1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations; and

2. The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use **your covered auto.**

**VI. Limited Mexico Coverage Endorsement**

If the Limited Mexico Coverage endorsement is attached to this Policy, Section **II.** of the Limited Mexico Coverage endorsement is replaced by the following:

**II. Coverage**

If afforded under this Policy, all Liability, Medical Payments, Uninsured Motorists, Damage To Your Auto, Underinsured Motorists and No-Fault Coverage are extended to apply to accidents and losses which occur in Mexico within 25 miles of the United States border. This extension of coverage only applies while an **insured** seeking coverage under this endorsement is in Mexico on a trip of 10 days or less.

Our duty to defend under Liability Coverage will apply only if:

1. The original suit for damages is brought in the United States; and

2. The suit does not involve a Mexican citizen or resident.

Includes copyrighted material of Insurance Services Office, Inc. With Its Permission Copyright, Insurance Services Office, Inc., 2017

**PP 01 67 08 18**

Amica Policy 053

**Page 5 of 5**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## COVERAGE FOR DAMAGE TO YOUR AUTO EXCLUSION ENDORSEMENT
### PP 13 01 12 99

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

**I. Definitions**

The following definition is added:

**"Diminution in value"** means the actual or perceived loss in market or resale value which results from a direct and accidental loss.

**II. Part D - Coverage For Damage To Your Auto**

The following exclusion is added:

We will not pay for:

Loss to **your covered auto** or any **non-owned auto** due to **diminution in value.**

PP 13 01 12 99                    Copyright, Insurance Services Office, Inc., 1999

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## PERSONAL VEHICLE SHARING PROGRAM EXCLUSION ENDORSEMENT

PP 23 16 01 19

With respect to coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

### I.  Part A - Liability Coverage

Part **A** is amended as follows:

The following exclusion is added:

We do not provide Liability Coverage for the ownership, maintenance or use of:

**Your covered auto** while:

a.  Enrolled in a personal vehicle sharing program under the terms of a written agreement; and

b.  Being used in connection with such personal vehicle sharing program by anyone other than you or any **family member**.

However, this exclusion applies only to the extent that the limits of liability for this coverage exceed the minimum limits of liability required by the Arizona Financial Responsibility Law.

### II.  Part B - Medical Payments Coverage

Part **B** is amended as follows:

The following exclusion is added:

We do not provide Medical Payments Coverage for any **insured** for **bodily injury**:

Sustained while **occupying**, or when struck by, **your covered auto** while:

a.  Enrolled in a personal vehicle sharing program under the terms of a written agreement; and

b.  Being used in connection with such personal vehicle sharing program by anyone other than you or any **family member**.

### III.  Part C - Uninsured Motorists Coverage

Part **C** is amended as follows:

The following exclusion is added:

We do not provide Uninsured Motorists Coverage for **bodily injury** sustained:

By any **insured** while **occupying**, or when struck by, **your covered auto** while:

a.  Enrolled in a personal vehicle sharing program under the terms of a written agreement; and

b.  Being used in connection with such personal vehicle sharing program by anyone other than you or any **family member**.

### IV.  Part D - Coverage For Damage To Your Auto

Part **D** is amended as follows:

The following exclusions are added:

We will not pay for:

Loss to **your covered auto** which occurs while:

a.  Enrolled in a personal vehicle sharing program under the terms of a written agreement; and

b.  Being used in connection with such personal vehicle sharing program by anyone other than you or any **family member**.

Loss to, or loss of use of, a **non-owned auto** used by:

a.  You; or

b.  Any **family member**;

in connection with a personal vehicle sharing program if the provisions of such a personal vehicle sharing program preclude the recovery of such loss or loss of use, from you or that **family member**, or if otherwise precluded by any state law.

### V.  Underinsured Motorist Coverage Endorsement

If the Underinsured Motorists Coverage Endorsement is attached to the policy, the following exclusion is added:

We do not provide Underinsured Motorists Coverage for **bodily injury** sustained:

By any **insured** while **occupying**, or when struck by, **your covered auto** while:

a.  Enrolled in a personal vehicle sharing program under the terms of a written agreement; and

b.  Being used in connection with such personal vehicle sharing program by anyone other than you or any **family member**.

Includes copyrighted material of Insurance Services Office, Inc. With Its Permission
Copyright, Insurance Services Office, Inc., 2018

PP 23 16 01 19

# AMENDMENT OF PERSONAL AUTO POLICY PROVISIONS

**AZ 00 28 11 18**

With respect to the coverage provided by this endorsement, the provisions of the policy apply in conjunction with the AMENDMENT OF POLICY PROVISIONS - ARIZONA, PP 01 67 09 12 unless modified by this endorsement.

## DEFINITIONS

The following is added to the **Definitions** Section as follows:

**"Personal Vehicle Sharing Program"** means a system or process, operated by a business, organization, network, group, or individual, that facilitates the sharing of private passenger motor vehicles for use by individuals or other entities for non-commercial use. **Personal Vehicle Sharing Program** does not include a **transportation network platform**.

## PART A - LIABILITY COVERAGE

### SUPPLEMENTARY PAYMENTS

Paragraphs **1.** and **4.** are replaced by the following:

In addition to our limit of liability, we will pay on behalf of an **insured**:

1. Up to $1,000 for the cost of bail bonds required because of an accident, including related traffic law violations. The accident must result in **bodily injury** or **property damage** covered under this policy.

4. Loss of earnings, but not other income, because of attendance at hearings or trials at our request.

### EXCLUSIONS

The following exclusion is added to **PART A - LIABILITY COVERAGE**

We do not provide coverage for:

fines, penalties, double or treble damages; punitive, exemplary or vindictive damages; or any other type of added damages intended to punish or deter wrongful conduct rather than as compensation for actual damages.

## PART C - UNINSURED MOTORISTS COVERAGE

With respect to any form of Uninsured Motorists Coverage, Underinsured Motorists Coverage, Uninsured/Underinsured Motorists Coverage and/or Property Damage Uninsured Motorists Coverage afforded under this policy, the following exclusion replaces any exclusion that pertains to punitive or exemplary damages, wherever found in the policy or its endorsements:

We do not provide coverage for:

fines, penalties, double or treble damages; punitive, exemplary or vindictive damages; or any other type of added damages intended to punish or deter wrongful conduct rather than as compensation for actual damages.

## PART D - COVERAGE FOR DAMAGE TO YOUR AUTO

The following is added to the **INSURING AGREEMENT**:

We will pay under Other Than Collision Coverage for the cost of repairing the damaged windshield on **your covered auto** without a deductible. We will pay only if the damage is repairable without completely replacing the windshield and if the Declarations indicates that Other Than Collision Coverage applies.

We will pay under Other Than Collision Coverage for the cost of repairing or replacing a deployed airbag on **your covered auto** without a deductible. We will pay only if the Declarations indicates that Other Than Collision Coverage applies.

We will pay for lock replacement on **your covered auto** without a deductible if your keys are lost or stolen. We will pay only if the Declarations indicates that Other Than Collision Coverage applies.

The following replaces Paragraph **B.** under the **LIMIT OF LIABILITY**:

AZ 00 28 11 18                                                                     **Page 1 of 2**

## AMENDMENT OF PERSONAL AUTO POLICY PROVISIONS

**AZ 00 28 11 18**

B. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss. However, if **your covered auto**:

1. Is a new vehicle, not previously titled under the motor vehicle laws of any state; and

2. A total loss occurs within 365 days of your original purchase;

we will not adjust the total loss for depreciation or normal wear and tear in determining actual cash value.

The following coverage is added:

**PET PROTECTION**

**A. Insuring Agreement**

In addition, we will pay, without application of a deductible, a maximum of $500 for reasonable veterinary services and funeral incurred for any one **pet** because of injury or death:

2. Caused as a result of an **auto loss**; and

3. Sustained when the **pet** is occupying **your covered auto**.

**B. Definitions**

"**Pet**" as used in this Pet Protection coverage means:

A dog or cat owned by you or a **family member**.

"**Auto Loss**" as used in this Pet Protection coverage means:

An accidental loss involving **your covered auto** caused by:

1. Other than **collision** only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

2. **Collision** only if the Declarations indicate that Collision Coverage is provided for that auto.

**C. Limit of Liability**

Our total liability under this coverage for injury and death resulting from any one **auto loss** shall not exceed $1,000 regardless of the number of **pets** involved in the loss.

**D. Business Exclusion**

We will not pay for veterinary services and/or funeral expenses for a **pet** that is used in or is part of a **business**. A **pet** that is used in or is part of a **business** is a **pet** that earns money or other compensation for its owner.

All other provisions of this policy apply.

## FULL SAFETY GLASS COVERAGE - ARIZONA

PP 03 48 02 89

The provisions and exclusions that apply to Part D. - COVERAGE FOR DAMAGE TO YOUR AUTO also apply to this endorsement except as modified by this endorsement.

The following is added to the first paragraph of the Insuring Agreement in Part D:

### INSURING AGREEMENT

We will pay under Other Than Collision Coverage for the cost of repairing or replacing damaged **safety equipment** on **your covered auto** without a deductible. We will pay only if:

1. The Declarations indicate that Other Than Collision Coverage applies; and

2. A specific premium charge for Full Safety Glass Coverage is shown in the Declarations for **your covered auto.**

### ADDITIONAL DEFINITION

"**Safety equipment**" as used in this endorsement means the:

1. Glass used in the windshield, doors and windows of **your covered auto**; and

2. Glass, plastic or other material used in the lights of **your covered auto.**

PP 03 48 02 89          Copyright, Insurance Services Office, Inc., 1988

Amica Policy 061



Lincoln, Rhode Island

# INFORMATION DIGEST
# FOR OUR
# ARIZONA POLICYHOLDERS

## BRIEF DESCRIPTION OF COVERAGES

The following descriptions of auto insurance coverages are intended to provide a brief explanation only. Exclusions, conditions, limitations and extent of benefits are not explained. You must see the policy for full details of each coverage.

We will gladly send you additional information or a quotation of rates upon request.

### LIABILITY

Liability coverage pays for damages to others when you are legally responsible as a result of an accident involving your auto. It pays for loss resulting from bodily injury or property damage up to the limit you select.

In Arizona you may choose either a Combined Single Liability Limit or Split Liability Limits.

If you choose a Combined Single Limit, this coverage is required at a minimum limit of $40,000 in Arizona.

We recommend a higher limit for better financial protection. A limit of at least $500,000 is suggested to meet today's high medical and hospital costs, court judgments and constantly rising auto and property repair costs.

Liability limits available:

| | | |
|---|---|---|
| $ 50,000 | $ 200,000 | $ 500,000 |
| 75,000 | 250,000 | 1,000,000 |
| 100,000 | 300,000 | 2,000,000 |
| 150,000 | 400,000 | |

If you choose Split limits, this coverage is required at minimum limits of $15,000 Each Person/$30,000 Each Accident Bodily Injury and $10,000 Property Damage.

At least $250,000/$500,000 Bodily Injury and $100,000 Property Damage limits are suggested to meet today's high medical and hospital costs, court judgments and constantly rising auto and property repair costs.

Increased Liability limits available:

| Bodily Injury Each Person/Each Accident | Property Damage Each Accident |
|---|---|
| $ 20,000 / $ 40,000 | $ 10,000 |
| 25,000 / 50,000 | 15,000 |
| 50,000 / 100,000 | 20,000 |
| 100,000 / 200,000 | 25,000 |
| 100,000 / 300,000 | 35,000 |
| 150,000 / 300,000 | 50,000 |
| 250,000 / 500,000 | 75,000 |
| 300,000 / 300,000 | 100,000 |
| 500,000 / 500,000 | 150,000 |
| 500,000 / 1,000,000 | 200,000 |
| 1,000,000 / 1,000,000 | 250,000 |
| | 300,000 |
| | 400,000 |
| | 500,000 |
| | 750,000 |
| | 1,000,000 |

## MEDICAL PAYMENTS

Medical Payments coverage pays medical expenses for services rendered within 3 years from the date of the accident for you, members of your family and other persons injured by accident while occupying your auto. You and members of your family are also covered as pedestrians should you be struck and injured by an auto.

You will be paid regardless of who is at fault for the accident up to the limits of coverage you select.

Limits of coverage available are $1,000 each person up to $100,000 each person.

## UNINSURED MOTORISTS

Uninsured Motorists coverage pays you for damages you are legally entitled to recover if injured in an accident caused by an uninsured motorist. An uninsured motorist is one who does not carry Liability insurance to pay for injury to others.

You and members of your family are covered either riding in your auto or as pedestrians. Guests riding in your auto are also covered.

In Arizona this coverage is available on all policies providing Liability insurance. The minimum limit is $30,000 single limit (or $15,000/$30,000 split limits). Higher limits are available in the same amounts as shown for Liability coverage.

Payment for damage to your auto or other property is **not** included.

## UNDERINSURED MOTORISTS

Underinsured Motorists coverage pays you for damages you are legally entitled to recover if injured in an accident caused by an underinsured motorist. An underinsured motorist is one who does carry Liability insurance but the amount of insurance available under that motorist's policy is not enough to pay the damages you are legally entitled to recover.

You and members of your family are covered either riding in your auto or as pedestrians. Guests riding in your auto are also covered.

In Arizona, this coverage is available on all policies providing Liability insurance. The minimum limit is $30,000 single limit (or $15,000/$30,000 split limits). Higher limits are available in the same amounts as shown for Liability coverage.

Payment for damage to your auto or other property is **not** included.

## DAMAGE TO YOUR AUTO

This coverage pays for accidental loss or damage to your auto minus any deductible you may select. The deductible is the amount you must pay in the event of damage or loss to your auto.

This coverage is divided into 2 parts. You may purchase either or both:

Part 1. Collision Loss pays for damage to your auto caused by upset or collision with another vehicle or object.

This part is written with a deductible and several deductible amounts are available. The higher the deductible amount the lower the cost. Deductible amounts start at $100 and may be as high as $5,000. $200, $500, $1,000 and $2,500 are some of the additional deductible amounts available.

Part 2. Other Than Collision Loss (formerly called Comprehensive coverage) pays for loss or damage to your auto except by collision. This includes theft of the auto or its equipment, fire, vandalism, breakage of glass, explosion, falling objects and damage from contact with birds or animals.

This part is written with or without a deductible. The higher the deductible amount the lower the cost. Deductible amounts start at Full (no deductible) and may be as high as $5,000. $100, $250, $500, $1,000 and $2,500 are some of the additional deductible amounts available.

We believe the use of deductibles provides the best arrangement of your insurance protection. A deductible tends to keep down the cost of insurance and still provides adequate protection for the major investment you have in your auto.

## OPTIONAL FULL SAFETY GLASS COVERAGE

You may choose full safety glass coverage which means no deductible will apply to losses to safety glass.

## AUTO LOAN/LEASE COVERAGE

This coverage pays when there is a total loss to your auto and the actual cash value of the auto is less than the amount due under the terms of a lease or loan agreement.

Payment under this coverage would not include such things as overdue payments, financial penalties for excessive use or high mileage, costs for extended warranties, security deposits or carry-over balances from previous loans or leases.

This coverage is available only if you have purchased Collision and Other Than Collision coverages for your auto. You must request Auto Loan/Lease coverage within 30 days of leasing or financing an auto.

## TOWING AND LABOR COSTS

This coverage pays for towing and labor costs when your auto is disabled. Labor includes only work done at the place of disablement. With Amica's Roadside Assistance service, you may call our special toll-free number and a tow truck will be sent to your location. In most cases, you may then sign for the services provided and payment to the driver of the tow truck will not be necessary.

As an alternative, you may call your own towing company and pay for the service provided. You will be reimbursed up to $100 per disablement for covered services when you send the bill to us.

Limits of $150, $200, $250, $300, $400 and $500 per disablement are available for motor homes.

## OPTIONAL LIMITS TRANSPORTATION EXPENSES COVERAGE

If you have a loss under Damage To Your Auto coverage, you will be reimbursed for charges to rent a replacement while your auto is out of service. Payment is made up to $20 per day to a maximum of $600 per loss.

Optional Limits Transportation Expenses Coverage is an available option. Limits available: $30 per day to a maximum of $900 per loss, $40 per day to a maximum of $1,200 per loss, $50 per day to a maximum of $1,500 per loss, $75 per day to a maximum of $2,250 per loss, $100 per day to a maximum of $3,000 per loss or Prestige Rental option with no per day limit to a maximum of $5,000 per loss.

## GOOD DRIVING REWARDS

Amica's accident forgiveness program lets you earn Amica Advantage points to lower or eliminate your costs if you are in an accident. Good Driving Rewards allows you to waive an auto accident surcharge. It also allows you to eliminate or reduce deductibles.

AZINFOD

**2 of 4**

## LIMITED TRANSPORTATION NETWORK DRIVER COVERAGE

The personal auto policy does not provide coverage while a vehicle is being used as a public or livery conveyance. This includes operating a vehicle for a Transportation Network Company (TNC), such as Uber or Lyft.

Amica now provides an option for our policyholders who drive for a TNC to purchase limited coverage for this activity. Coverage is provided during the period of time a driver is logged into a TNC platform up until the time the driver accepts a request to transport a passenger.

## MISCELLANEOUS SERVICE

### IDENTITY FRAUD PROTECTION

Your credit files and personal information are watched 24/7 at all three major credit bureaus: Equifax, Experian and TransUnion. You're alerted within 24 hours if questionable activity is detected. If you notice unusual activity on your credit file, you have unlimited access to a fraud specialist for help with resolving any problems quickly and efficiently.

## HOW RATES ARE DETERMINED

Rates for private passenger auto insurance are determined from the cost of settling claims that result from past auto accidents and losses and operating expenses. The rates are grouped at different levels according to household risk characteristics which are indicative of future loss potential, and include but are not limited to, operator age, gender, marital status, driving experience, vehicle information, credit history, premium payment record, traffic convictions, claims history and number of years you have insured your automobiles with Amica.

**Additional Rating Factors**

1. **Principal Place of Garaging of Your Auto** - This location is usually your home address shown on your policy. Each city, town, township, borough or other locality is part of a Rating Territory which has its own basic rates for each coverage.

2. **Use of Your Auto** - There are three categories:

   A. **Average Daily Mileage** - Means the average number of miles the auto is driven daily for any purpose other than farm or business use.

   B. **Farm** - Means your auto is garaged on a farm or ranch and is used for farming or ranching only. The auto may not be used in any occupation other than farming or ranching.

   C. **Business** - Means your auto is used in your occupation or profession. Also may be used for pleasure and driving to and from work.

**Other Rating Factors**

**Approved Driver Training** - Lower rates apply for drivers under 21 who have successfully completed a driver training course. The course must be sponsored and approved by recognized educational authorities and conducted by a certified instructor.

The course must consist of 1) at least 30 hours of classroom study and 6 hours of actual driving experience; or 2) at least 30 hours of classroom study, 3 hours of actual driving experience and 12 hours in an approved device which simulates practice driving.

**Good Students** - Lower rates apply for a driver under 25 who qualifies as a "good student". To qualify, the licensed driver must be a full time student in high school or college or a graduate of a college or university degree program. A statement from a school official must be presented indicating that during the immediately preceding semester the driver has met one of the following scholastic requirements:

1. Ranked in top 20% of class.

2. A "B" grade average.

3. A 3 point average on a 4 point scale for the immediately preceding semester or for the average of the two preceding semesters' GPA's.

4. On "Dean's List" or "Honor Roll".

**Students Away at School** - Lower rates may apply for youthful drivers, if they are full time students at a school or college and the auto is not at school.

**Legacy Program** - Lower rates apply if you own an Amica Auto policy, you are the child of an existing Amica auto policyholder who has had a Amica auto policy continuously for the previous five years; and you are under the age of 30.

## DISCOUNTS

**Platinum Choice Auto** - Rates are reduced when at least one auto on the policy has Liability, Collision and Other Than Collision coverage. Also, the insured must purchase three of the following coverages:

1. Good Driving Rewards.

2. Full Glass Coverage.

3. Prestige Rental Coverage.

4. Identity Fraud Protection.

**Homeownership Discount** - Rates are reduced if your homeowners policy is with another carrier.

**Claims Free Discount** - included if you have had no claims, other than glass or towing, with Amica or any other insurer in the last three years and at least one driver on the policy must have a minimum of thirty-nine months of driving experience.

**AutoPay Discount** - included if your premiums are automatically deducted from a designated bank account or credit card.

AZINFOD

**All Electronic Discount** - included if you are enrolled in both electronic policy delivery and electronic billing.

**Loyalty Discount** - included if you have been insured for two or more years with Amica or you have been consecutively insured with your present carrier for a period of not less than two years.

**Paid in Full Discount** - included if your Auto policy premium is paid in full on or before the first installment due date.

**Multi-Line Discount** - included if Amica provides your homeowners insurance. Additional discounts are included if you have a personal umbrella and/or qualifying Amica Life insurance policies.

**Two or More Autos** - Rates are reduced when you own and insure two or more autos with us.

**Special Equipment**

Anti-Theft Devices

Other Than Collision rates are reduced if your auto has a hood lock which can be released only from the inside and has one of the following devices installed:

**Alarm only.** An alarm emits a siren, horn or other loud signal when set off.

**Active disabling device.** A device you activate which may cut off the auto's fuel, ignition or starting system. (The customary ignition-steering wheel lock does not qualify.)

**Passive disabling device.** A device which automatically activates itself each time you park your auto which makes the fuel, ignition or starting system inoperative.

Vehicle Recovery System

Other Than Collision rates are reduced if your auto is equipped with a Vehicle Recovery System. This system consists of an electronic unit installed in an auto that is activated after the auto is stolen. When activated, the device provides information to law enforcement officials regarding the auto's location.

Vehicle Tracking System

Other Than Collision rates are reduced if your auto is equipped with a global positioning system (GPS) tracking device which will locate an auto automatically upon notification that the auto is stolen. If your auto is equipped with this type of device, you must maintain your contract with the tracking services provider. Annual verification of continued service is required.

Airbag or Passive Belting System

Medical Payments and/or No-Fault premiums are reduced if your auto is equipped with a factory installed automatic occupant restraint conforming to federal crash protection requirements.

Electronic Stability Control System

Collision premiums are reduced if your auto is equipped with a factory installed four-wheel electronic stability control system.

Forward Collision Warning System

Bodily Injury, Property Damage, Medical Payments and Collision premiums are reduced if your auto is equipped with a forward collision warning system.

Adaptive Headlights

Bodily Injury, Property Damage, Medical Payments and Collision premiums are reduced if your auto is equipped with adaptive headlights.

## SAFE DRIVER INSURANCE PLAN

Lower rates apply when you and other drivers in your household have a driving record free of chargeable accidents or motor vehicle convictions.

Rates are increased under a point system for each chargeable accident or motor vehicle conviction that occurs within the experience period.

## OTHER IMPORTANT FACTS

**Electronic Equipment**

If you have purchased Collision or Other Than Collision:

1. Electronic equipment which reproduces, receives or transmits audio, visual or data signals, is covered when the equipment is permanently installed in a location used by the auto manufacturer for installation of such equipment.

2. Such equipment is covered, up to $1,000 when the equipment is permanently installed in a location **not** normally used by the manufacturer. Increased limits are available for an additional premium charge.

There is no coverage for such electronic equipment that is not permanently installed in your vehicle.

Tapes, records or discs used with any sound reproducing equipment are **not** insured under your policy. Coverage can be purchased for an additional premium charge.

**Custom Equipment Exclusion**

Custom features include such items as any additional equipment, furnishings, fixtures, parts such as bedliners, caps or covers, finishing, including special paint, murals or graphics.

The loss or damages to custom features in or upon your auto is covered by physical damage insurance up to a limit of $1,500.

Additional coverage can be provided for an additional premium charge.

**Please Note:** Not all discounts, limits, or coverages are available for all policyholders.

AZINFOD

**4 of 4**

# Liddy Legal Support Services

PO Box 2007, Phoenix, AZ 85001
63 E. Pennington St., #102, Tucson, AZ 85702
2700 Woodlands Village Blvd., #300-420, Flagstaff, AZ 86001
Phoenix 602-297-0676, Tucson 520-628-2824, Flagstaff 928-225-7737

Client Matter   Whitehead, Chase
Account       # 0730
Invoice       # 50963
Liddy         # 415557-1

CLERK OF THE
SUPERIOR COURT
FILED
T. BLAND, DEP

2022 OCT 21  PM 12: 04

### IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
### IN AND FOR THE COUNTY OF MARICOPA

CHASE WHITEHEAD,

Plaintiff(s) / Petitioner(s),

vs

AMICA MUTUAL INSURANCE COMPANY,

Defendant(s) / Respondent(s).

**CERTIFICATE OF SERVICE
BY PRIVATE PROCESS SERVER**
Case No. CV2022-013851

**ENTITY/PERSON TO BE SERVED:** Amica Mutual Insurance Company c/o Arizona Director of Insurance, Statutory Agent

**PLACE OF SERVICE:**        100 N. 15th Avenue, Suite 261, Phoenix, AZ, 85007

**DATE OF SERVICE:** On the __19th__ day of __October__, 2022 at __3:20__ PM    County __Maricopa__

☐ PERSONAL SERVICE    ☒ Left a copy with a person authorized to accept service.    ☐ At this usual place of abode, I left a copy with a person of suitable age and discretion residing therein.

**Name of Person Served and Relationship/Title**    Served 2 sets on Arizona Director of Insurance, Statutory Agent, by serving

Desiree Vega, Account Specialist.

on __10/19/2022__ we received the following documents for service:

2 sets of a: Summons | and Complaint
Tendering a service of process fee of $15.00

**Received from THE SLAVICEK LAW FIRM, ( BRETT SLAVICEK #019306 )**
PROCESS SERVER: Floyd R. Brown, #8388

**The undersigned states: That I am a certified private process server in the county of Maricopa and am an Officer of the Court.**

SIGNATURE OF PROCESS SERVER: _Floyd R. Brown_    Date: 10/20/2022

| Item | Amount |
|---|---|
| Service of Process | $20.00 |
| Minimum Mileage | $36.00 |
| Rush Charge Service | $30.00 |
| Copies | $21.75 |
| Doc. Prep Fee | $10.00 |

Tax ID# 90-0533870
I declare under penalty of perjury that the foregoing is true and correct and was executed on this date.

Total    $117.75

# EXHIBIT B

**Jaburg & Wilk, P.C.**
3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012
602.248.1000

Micalann C. Pepe (029053)
mcp@jaburgwilk.com
Ian M. Fischer (026239)
imf@jaburgwilk.com

Attorneys for Defendant Amica Mutual Insurance Company



# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Chase Whitehead, a single man,<br><br>        Plaintiff,<br><br>v.<br><br>Amica Mutual Insurance Company, a<br>Rhode Island corporation,<br><br>        Defendant. | Case No.<br><br>**SUPPLEMENTAL CIVIL<br>COVER SHEET** |

## SUPPLEMENTAL CIVIL COVER SHEET
## FOR CASES REMOVED FROM ANOTHER JURISDICTION

This form must be attached to the Civil Cover Sheet at the time the case is filed in the United States District Clerk's Office.

Additional sheets may be used as necessary.

**1.    Style of the Case**:
Please include all Plaintiff(s), Defendant(s), Intervenor(s), Counterclaimant(s), Crossclaimant(s) and Third Party Claimant(s) still remaining in the case and indicate their party type. Also, please list the attorney(s) of record for each party named and include their bar number, firm name, correct mailing address, and phone number (including area code).

| Party | Party Type | Attorney(s) |
|---|---|---|
| Chase Whitehead | Plaintiff | Brett L. Slavicek (019306)<br>James Fucetola (029332)<br>Justin Henry (027711) |

23134-23134-00001\\MCP\\SLD\\5313946.1



THE SLAVICEK LAW FIRM
5500 North 24th Street
Phoenix, Arizona 85016
602-287-9184

Amica Mutual
Insurance Company        Defendant        Micalann C. Pepe (#029053)
Ian M. Fischer (#026239)
JABURG WILK
3200 N. Central Ave.
Suite 2000
Phoenix, AZ 85012
Phone: 602-248-1000

**2.     Jury Demand**:

Was a Jury Demand made in another jurisdiction?  No

    If "Yes," by which party and on what date?

    Party:
    Date:

**3.     Answer**:

Was an Answer made in another jurisdiction?  No

    If "Yes," by which party and on what date?

    Party:
    Date:

**4.     Served Parties**:

The following parties have been served at the time this case was removed:

| Party | Date Served | Method of Service |
|---|---|---|
| Amica Mutual Insurance Company | October 19, 2022 | Arizona Department of Insurance |

**5.     Unserved Parties**:

The following parties have not been served at the time this case was removed:

| Party | Reason for Change |
|---|---|

2

Amica is not aware of any unserved parties.

**6.      Nonsuited, Dismissed or Terminated Parties**:

Please indicate changes from the style of the papers from another jurisdiction and the reason for the change:

| **Party** | **Reason for Change** |
|-----------|------------------------|

Amica is not aware of any style changes.

**7.      Claims of the Parties**:

The filing party submits the following summary of the remaining claims of each party in this litigation:

| **Party** | **Claim(s)** |
|-----------|--------------|
| Plaintiff | Breach of Contract |
| Plaintiff | Declaratory Judgment |
| Plaintiff | Bad Faith |

Pursuant to 28 USC § 1446(a) a copy of all process, pleadings, and orders served in Superior Court, Maricopa County has been filed with the Notice of Removal.

DATED this 18th day of November, 2022.

**Jaburg & Wilk, P.C.**

*/s/ Micalann C. Pepe*
Micalann C. Pepe
Ian M. Fischer
3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012
Attorneys for Defendant Amica Mutual Insurance Company

3

*Certificate of Service*

I hereby certify that on 18th day of November, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Brett L. Slavicek
James Fucetola
Justin Henry
THE SLAVICEK LAW FIRM
5500 North 24th Street
Phoenix, Arizona 85016
brett@slaviceklaw.com
james@slaviceklaw.com
justin@slaviceklaw.com
Attorneys for Plaintiffs


*/s/ Stephanie Dolfini*

JABURG WILK
LAW FIRM

4

# EXHIBIT C

**Jaburg & Wilk, P.C.**
3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012
602.248.1000

Micalann C. Pepe (029053)
mcp@jaburgwilk.com
Ian M. Fischer (026239)
imf@jaburgwilk.com

Attorneys for Defendant Amica Mutual Insurance Company

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| Chase Whitehead, a single man, | Case No. |
|---|---|
| Plaintiff, | **DECLARATION OF MICALANN C. PEPE** |
| v. | |
| Amica Mutual Insurance Company, a Rhode Island corporation, | |
| Defendant. | |

I, Micalann C. Pepe, declare as follows pursuant to 28 U.S.C. §1746:

1.      I am a duly licensed attorney in the bar of the State of Arizona and am admitted to practice law before this Court. I represent Defendant Amica Mutual Insurance Company ("Amica") in the above-referenced action. The statements made in this Declaration are based upon my own personal knowledge and, if sworn as a witness, I could testify competently to them.

2.      I have prepared and filed the Notice of Removal on behalf of Defendant, Amica Mutual Insurance Company ("Amica"), in the above-referenced action. **Exhibit A** to that Notice of Removal contains true and complete copies of all pleadings and other documents filed in the underlying state court action in the Superior Court of the State of Arizona, In and For the County of Maricopa, styled

**JABURG WILK**
LAW FIRM

23134-23134-00001\\MCP\\SLD\\5313925.1

*Chase Whitehead v. Amica Mutual Insurance Company, a Rhode Island corporation,* Case No. CV2022-013851.

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 18th day of November, 2022.

**Jaburg & Wilk, P.C.**

*/s/ Micalann C. Pepe*
Micalann C. Pepe
Ian M. Fischer
3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012
Attorneys for Defendant Amica Mutual Insurance
Company

*Certificate of Service*

I hereby certify that on 18th day of November, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Brett L. Slavicek
James Fucetola
Justin Henry
THE SLAVICEK LAW FIRM
5500 North 24th Street
Phoenix, Arizona 85016
brett@slaviceklaw.com
james@slaviceklaw.com
justin@slaviceklaw.com
Attorneys for Plaintiffs

*/s/ Stephanie Dolfini*

2