Robert B. Carey (SBN 011186)
John M. DeStefano (SBN 025440)
Michella Kras (SBN 022324)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email: rob@hbsslaw.com
      johnd@hbsslaw.com
      michellak@hbsslaw.com

*Attorneys for Plaintiff*

*[Additional counsel on signature page]*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Chase Whitehead,<br><br>      Plaintiff,<br><br>v.<br><br>Amica Mutual Insurance Company,<br><br>      Defendant. | Case No. 2:22-cv-01978-PHX-DJH<br><br>**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF THE SETTLEMENT CLASS** |

1

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     PROCEDURAL HISTORY ................................................................................. 1

        A.      Related Case History ................................................................................ 1

        B.      Present Case History and Mediation ........................................................ 4

III.    SUMMARY OF SETTLEMENT TERMS ......................................................... 7

        A.      The Settlement Class ............................................................................... 7

        B.      The Settlement Consideration, Release of Claims, and
                Anticipated Class Recovery ..................................................................... 7

        C.      Attorneys' Fees and Costs, Incentive Award, and
                Administration Costs ................................................................................ 9

        D.      Notice and Implementation of Settlement.............................................. 11

        E.      Plan of Distribution ............................................................................... 12

IV.     ARGUMENT ................................................................................................... 13

        A.      The Class should be certified for the purposes of settlement. ................ 13

                1.      The Settlement Class is sufficiently numerous. ........................... 14

                2.      Questions of law and fact are common to the
                        settlement class.......................................................................... 14

                3.      Plaintiff's claim is typical of the Settlement Class's
                        claims. ....................................................................................... 15

                4.      Plaintiff and Class Counsel are adequate
                        representatives........................................................................... 16

                5.      Common questions of law and fact predominate under
                        Rule 23(b)................................................................................... 17

        B.      The proposed settlement should be preliminarily approved. .................. 20

                1.      The settlement is the result of arm's-length
                        negotiations. .............................................................................. 21

                2.      The settlement has no obvious deficiencies.................................. 22

                3.      The proposed settlement does not grant preferential
                        treatment to Plaintiff or segments of the Settlement
                        Class. ......................................................................................... 23

                4.      The settlement falls within the range of possible
                        approval....................................................................................... 24

5.   The experience and views of counsel weigh in favor of preliminary approval. ........................................................................ 25

C.   The Proposed Class Notice and Plan for Dissemination Comply with Rule 23(e) ................................................................. 26

D.   Proposed Schedule for Dissemination of Notice and Final Approval ................................................................................................... 28

V.   CONCLUSION ....................................................................................... 29

MOTION FOR PRELIMINARY APPROVAL

TABLE OF AUTHORITIES

Page(s)

Cases

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013)..................................................................................................... 18

*In re Anthem, Inc. Data Breach Litig.*,
    327 F.R.D. 299 (N.D. Cal. 2018)................................................................................ 24

*In re Bluetooth Headset Prods. Liability Litig.*
    654 F.3d 935 (9th Cir. 2011) ...................................................................................... 23

*Brian Dorazio v. Allstate Fire and Casualty Insurance Co.*,
    Case No. CV-23-00017-PHX-JJT (D. Ariz.)............................................................... 1

*Charles Creasman v. Farmers Casualty Insurance Co.*,
    Case No. CV-22-01820-PHX-DJH (D. Ariz.)............................................................. 2

*Charles Miller v. Trumbull Insurance Company*,
    Case No. CV-22-010505-PHX-JJT (D. Ariz.)............................................................. 2

*Churchill Vill., LLC v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ...................................................................................... 26

*Craig Hacker v. American Family Insurance Co.*,
    Case No. CV-22-01926-PHX-DLR (D. Ariz.) ............................................................ 2

*Crystal Lopez v. Liberty Mutual Personal Insurance Co.*,
    Case No. CV-23-00629-PHX-DLR (D. Ariz.) ............................................................ 2

*Franklin v. CSAA Gen. Ins. Co.*,
    255 Ariz. 409, 532 P.3d 1145 (2023) ........................................................ 3, 4, 14, 22

*Franklin v. CSAA Gen. Ins. Co.*,
    No. CV-22-00540-PHX-JJT, 2022 WL 16631090 (D. Ariz. Nov. 2,
    2022) ................................................................................................................. *passim*

*Head v. Citibank, N.A.*,
    340 F.R.D. 145 (D. Ariz. 2022) ................................................................................. 14

*Heaton v. Metro. Grp. Prop. & Cas. Ins. Co.*,
    No. CV-21-00442-PHX-SRB, 2021 WL 6805629 (D. Ariz. Oct. 19,
    2021) ............................................................................................................................. 1

MOTION FOR PRELIMINARY APPROVAL

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) ...................................................................... 19

*Jesus Caballero v. Economy Preferred Insurance Co.*,
   Case No. CV-22-02023-PHX-MTL (D. Ariz.) ............................................. 2

*Jodi Moshier v. Safeco Insurance Co. of America*,
   Case No. CV-23-00225-PHX-DLR (D. Ariz.) ............................................. 2

*Julian v. Swift Transportation Co. Inc.*,
   No. CV-16-00576-PHX-ROS, 2020 WL 6063293 (D. Ariz. Oct. 14,
   2020) ............................................................................................................. 11

*Just Film, Inc. v. Buono*,
   847 F.3d 1108 (9th Cir. 2017) .................................................................... 19

*Kleiner v. First Nat. Bank of Atlanta*,
   102 F.R.D. 754 (N.D. Ga. 1983) *aff'd in part, vacated in part on other
   grounds*, 751 F.2d 1193 (11th Cir. 1985) ........................................... 11, 27

*Knapper v. Cox Commc'ns, Inc.*,
   329 F.R.D. 238 (D. Ariz. 2019) ................................................................. 14

*McClure v. State Farm Life Ins. Co.*,
   341 F.R.D. 242 (D. Ariz. 2022) ............................................ 15, 18, 19, 20

*Morgan Muehlhausen, et al. v. Allstate Fire and Casualty Insurance Co.*,
   Case No. CV-22-01747-PHX-JAT (D. Ariz.) ............................................... 1

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ............................................................... 25

*In re Pharm. Indus.*,
   582 F.3d at 197–98 ..................................................................................... 19

*In re Pharm. Indus. Average Wholesale Price Litigation*,
   582 F.3d 156 (1st Cir. 2009) ...................................................................... 19

*Rannis v. Recchia*,
   380 F. App'x 646 (9th Cir. 2010) .............................................................. 14

*Reid v. I.C. Sys. Inc*.,
   No. CV-12-02661-PHX-ROS, 2018 WL 11352039 (D. Ariz. July 27,
   2018), *aff'd*, 795 F. App'x 509 (9th Cir. 2019) ....................................... 25

*Shirly Haenfler v. Safeco Insurance Co. of America*,
   Case No. 2:23-cv-00822-JJT ........................................................................ 1

MOTION FOR PRELIMINARY APPROVAL

*Sonoma Sol LLLP v. Truck Ins. Exch.*,
    No. CV-20-00069-PHX-DJH, 2021 WL 5238711 (D. Ariz. Nov. 9,
    2021) ................................................................................................ 10, 23

*Stacey Trent v. Hartford Insurance Co. of the Southeast*,
    Case No. CV-23-02105-PHX-JJT (D. Ariz.)................................................ 2

*Taylor Doyle v. Pekin Insurance Co.*,
    Case No. CV-22-00638-PHX-JJT (D. Ariz.)................................................ 2

*Tinsley v. Faust*,
    No. CV-15-00185-PHX-ROS, 2020 WL 6048315 (D. Ariz. Oct. 13,
    2020) ...................................................................................................... 24

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016)................................................................................. 18

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
    445 F. Supp. 3d 508 (N.D. Cal. 2020) .................................................. 9, 10

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ............................................................ 15, 20

*Zwicky v. Diamond Resorts Mgmt. Inc.*,
    343 F.R.D. 101 (D. Ariz. 2022) ......................................................*passim*

**Statutes**

A.R.S. § 20-259.01 ....................................................................................*passim*

28 U.S.C. § 1332 ................................................................................................. 5

28 U.S.C. § 1367 ................................................................................................. 5

28 U.S.C. § 1711 ............................................................................................... 12

**Other Authorities**

Arizona Rules of Professional Conduct Rule 4.2............................................. 28

Fed. R. Civ. P. 16 ............................................................................................... 5

Fed. R. Civ. P. 23 ......................................................................................*passim*

## I.    INTRODUCTION

Plaintiff Chase Whitehead respectfully moves the Court to: (1) certify of the Settlement Class; (2) appoint Plaintiff Chase Whitehead as the Class Representative for the Settlement Class; (3) appoint Robert Carey of Hagens Berman Sobol Shapiro, LLP as Lead Class Counsel for the Settlement Class; (4) preliminarily approve the class-action settlement between Plaintiff and Defendant Amica Mutual Insurance Company ("Amica"); and (5) direct notice to the Settlement Class.[1] This motion is based on Federal Rule of Civil Procedure 23, the supporting declarations, the evidence and arguments presented in the briefings and at any hearing on this motion to be set by the Court.

## II.    PROCEDURAL HISTORY

### A.    Related Case History

In October 2021, Judge Susan Bolton ruled in favor of the insured plaintiff in *Heaton v. Metropolitan Group Property & Casualty Co.*, holding that Arizona law required stacking of uninsured motorist ("UM") or underinsured ("UIM") motorist coverages under a multi-vehicle policy under A.R.S. § 20-259.01(H), meaning the insured may collect the policy limits on each insured vehicle. *Heaton v. Metro. Grp. Prop. & Cas. Ins. Co.*, No. CV-21-00442-PHX-SRB, 2021 WL 6805629, at *8 (D. Ariz. Oct. 19, 2021). In April 2022, Class Counsel Hagens Berman filed *Franklin v. CSAA General Insurance Co.*, No. CV-22-00540-PHX-JJT, alleging the same theory against CSAA. *Franklin* was one of over twelve cases filed by Class Counsel Hagens Berman and the Slavicek Law Firm in the 2022–2023 timeframe alleging this theory of liability. Those parallel suits were filed against Allstate, Liberty Mutual, Safeco, Travelers, American Family, Pekin Insurance, and Farmers Insurance.[2]

---

[1] The Settlement Agreement is attached as Exhibit 1. Plaintiff adopts and uses the definitions in the Settlement Agreement in this Motion.

[2] *Morgan Muehlhausen, et al. v. Allstate Fire and Casualty Insurance Co.*, Case No. CV-22-01747-PHX-JAT (D. Ariz.); *Brian Dorazio v. Allstate Fire and Casualty Insurance Co.*, Case No. CV-23-00017-PHX-JJT (D. Ariz.); *Shirly Haenfler v. Safeco*

This case against Amica is one of those suits. Class Counsel spent significant time and resources investigating *Franklin* and these related cases, with the intention of coordinating litigation efforts across the cases. Declaration of Robert B. Carey ("Carey Decl.") ¶ 3 (Ex. 2).

*Franklin* became a standard-bearer for the parallel cases because it begat an Arizona Supreme Court ruling affecting all the others. Citing the multiplicity of pending suits that presented the same UM/UIM stacking question, Judge John Tuchi certified two questions to the Arizona Supreme Court in *Franklin*:

> (1) Does A.R.S. § 20-259.01 mandate that a single policy insuring multiple vehicles provides different underinsured motorist (UIM) coverages for each vehicle, or a single UIM coverage that applies to multiple vehicles?

> (2) Does A.R.S. § 20-259.01(B) bar an insured from receiving UIM coverage from the policy in an amount greater than the bodily injury liability limits of the policy?

*Franklin v. CSAA Gen. Ins. Co.*, No. CV-22-00540-PHX-JJT, 2022 WL 16631090, at *2–3 (D. Ariz. Nov. 2, 2022) ("This is the first-filed of eleven known, present actions—four in the District Court and seven in Maricopa County Superior Court—that turn on the resolution of the same question.").

On February 21, 2023, Class Counsel Hagens Berman filed Franklin's Supplemental Brief Regarding Certified Questions with the Arizona Supreme Court. Carey Decl. ¶ 4 (Ex. 2). The defendant in *Franklin* similarly filed a supplemental brief

---

*Insurance Co. of America*, Case No. 2:23-cv-00822-JJT; *Crystal Lopez v. Liberty Mutual Personal Insurance Co.*, Case No. CV-23-00629-PHX-DLR (D. Ariz.); *Jodi Moshier v. Safeco Insurance Co. of America*, Case No. CV-23-00225-PHX-DLR (D. Ariz.); *Charles Miller v. Trumbull Insurance Company*, Case No. CV-22-010505-PHX-JJT (D. Ariz.); *Stacey Trent v. Hartford Insurance Co. of the Southeast*, Case No. CV-23-02105-PHX-JJT (D. Ariz.); *Craig Hacker v. American Family Insurance Co.*, Case No. CV-22-01926-PHX-DLR (D. Ariz.); *Charles Creasman v. Farmers Casualty Insurance Co.*, Case No. CV-22-01820-PHX-DJH (D. Ariz.); *Jesus Caballero v. Economy Preferred Insurance Co.*, Case No. CV-22-02023-PHX-MTL (D. Ariz.); *Taylor Doyle v. Pekin Insurance Co.*, Case No. CV-22-00638-PHX-JJT (D. Ariz.).

MOTION FOR PRELIMINARY APPROVAL

that same day. *Id.* ¶ 5. In response to that briefing, four insurance companies and two

insurance groups filed a total of five amicus briefs in support of CSAA, totaling seventy-

four pages of briefing. *Id.* ¶ 6. Amica was one of the insurance companies that filed an

amicus brief in the *Franklin* matter. *Id.* ¶ 7. Class Counsel Hagens Berman filed a

combined response to all five amicus briefs, which consisted of thirty-eight pages of

additional briefing. *Id.* ¶ 8. Class Counsel at the Slavicek Law Firm, on behalf of separate

plaintiffs, filed a separate amicus brief. *Id.* ¶ 9. The Arizona Supreme Court held oral

argument on the certified questions on April 18, 2023. *Id.* ¶ 10. John DeStefano of

Hagens Berman argued those certified questions before the court. *Id.* ¶ 11.

On July 28, 2023, the Arizona Supreme Court answered the certified questions in

favor of plaintiff:

> We hold that § 20-259.01 mandates that a single policy
> insuring multiple vehicles provides different UIM coverages
> for each vehicle. Notwithstanding creative policy drafting
> intended to evade statutory requirements—including technical
> definitions of coverages and extensive limitation of liability
> clauses—insurers seeking to prevent insureds from stacking
> UIM coverages under a single, multi-vehicle policy must
> employ subsection (H)'s sole prescribed method for limiting
> stacking. We also hold that § 20-259.01(B), by its plain
> language and non-stacking function, does not bar an insured
> from receiving UIM coverage from the policy in an amount
> greater than the bodily injury or death liability limits of the
> policy.

*Franklin v. CSAA Gen. Ins. Co.*, 255 Ariz. 409, 532 P.3d 1145, 1146–47 (2023). The

court explained that although the text of A.R.S. § 20-259.01 is "ambiguous, . . . the

statute's history and purpose clearly indicate that multi-vehicle policies provide separate

UIM coverages for each vehicle." *Id.* at 1148. The court went even further than the

certified questions to find that subsection (H) provides "the sole means by which insurers

may limit UIM/UM stacking" and "to limit stacking under subsection (H), insurers must

(1) expressly and plainly limit stacking in the policy and (2) satisfy the notice

requirement informing the insured of their 'right to select one policy or coverage' either

in the policy itself or in writing to the insured within thirty days after the insurer is

notified of the accident." *Id.* at 1148, 1151 (quoting A.R.S. § 20-259.01(H)). The court

concluded:

> In answering the certified questions, we hold that (1) § 20-259.01's text, history, and purpose provide that an insured covered by a multi-vehicle policy has necessarily "purchased" multiple UIM coverages for each vehicle under subsection (H); thus, rather than employing singular definitions of "coverage" in their policies, insurers must comply with the statute's requirements in order to prevent insureds from intra-policy stacking; and (2) § 20-259.01(B) does not limit UIM coverage.

*Id.* at 1153.

**B.     Present Case History and Mediation**

On October 18, 2022—while *Franklin* was pending but before Judge Tuchi

certified questions to the Arizona Supreme Court—Plaintiff Chase Whitehead filed this

case in Maricopa County Superior Court. ECF No. 1-3. Like the plaintiff in *Franklin*,

Whitehead's claims relate to stacking UM and UIM coverage. More specifically,

Whitehead alleges that he was injured in a collision on March 6, 2020, he suffered

injuries in excess of $160,000, and the non-party at fault was uninsured. ECF No. 1-3 ¶¶

6–11. At the time of the collision, Whitehead was an insured under an Amica policy

insuring **two** vehicles, with UM coverage of $100,000 per person and an aggregate limit

of $300,000. *Id.* ¶¶ 12–15. On November 9, 2020, Whithead submitted a claim to Amica

for UM benefits for all vehicles insured on the Amica policy. *Id.* ¶ 20. Amica paid

Whitehead $100,000—the policy limits on **one** of the vehicles—but refused to pay any

claims for coverage on the second vehicle. *Id.* ¶¶ 22, 25. Whitehead alleges that Amica

failed to comply with the notice requirements of A.R.S. § 20-259.01(H). *Id.* ¶¶ 28–29.

Specifically, Whithead alleges that the limitation of liability policy language did not

inform him that coverage could not be stacked or of his right to select which coverage

would apply, citing the policy language. *Id.* ¶¶ 26–28. Whitehead also alleges within 30

days of receiving notice of the collision, Amica did not provide him written notice of his

MOTION FOR PRELIMINARY APPROVAL

1   right to select which coverage would apply. *Id.* ¶ 29. Whitehead alleges because Amica

2   did not inform him of his right to select which coverage would apply, he was entitled to

3   stack coverage for both vehicles. *Id.* ¶ 30.

4         Whitehead brought claims for breach of contract and breach of the implied

5   covenant of good faith and fair dealing seeking declaratory relief, direct and

6   consequential damages, and punitive damages. *Id.* ¶¶ 46–63. Whitehead also sought to

7   certify two classes of similarly situated individuals under Arizona Rule of Civil

8   Procedure 23(b)(2) and (b)(3): (1) Amica's insureds with UM claims under an Arizona

9   policy that insured more than one vehicle who were paid the UM policy limits on one

10  vehicle on the policy, but where Amica either failed or refused to pay UM benefits on

11  any other vehicles on the policy, and (2) Amica's insureds with UIM claims under an

12  Arizona policy that insured more than one vehicle who were paid the UIM policy limits

13  on one vehicle on the policy, but where Amica either failed or refused to pay UIM

14  benefits on any other vehicles on the policy. *Id.* ¶¶ 71–72.

15        On November 21, 2022, Amica removed the case to this Court under 28 U.S.C. §

16  1332(a) and 28 U.S.C. § 1367. ECF No. 1. After removal, Amica asked the Court to stay

17  the case pending a decision by the Arizona Supreme Court in *Franklin*, which the Court

18  granted on December 28, 2022. ECF Nos. 7, 20. On August 2, 2023, the parties jointly

19  notified the Court of the decision in *Franklin* and asked the Court to lift the stay. ECF

20  No. 22. The Court lifted the stay on August 2, 2023, and Amica answered the Complaint

21  on August 23, 2023. ECF No. 26.

22        In its Answer, Amica admitted that the Complaint accurately quoted Whitehead's

23  limitation of liability policy language and admitted it did not send Whitehead separate

24  notice of his right to select which insurance coverage applied. ECF No. 26 ¶¶ 26, 29. In

25  doing so, Amica denied it was required to provide separate written notice. *Id.* ¶ 29. On

26  September 14, 2023, the parties asked the Court to continue the Rule 16 Scheduling

27  Conference and related deadlines to engage in pre-certification settlement discussions.

28  ECF No. 27. The Court granted that motion. ECF No. 28.

The parties agreed to mediate with Michael Ungar, a veteran mediator with class action and insurance expertise, and informed the Court that a mediation was set for January 11, 2024. ECF No. 29; Carey Decl. ¶ 12 (Ex. 2). Before the mediation, Amica provided Plaintiff with certain data regarding the putative class. Carey Decl. ¶ 13 (Ex. 2). For each Amica insured that fit within the putative class definition (as detailed below), Amica provided: (1) the policy effective and expiration dates; (2) the number of vehicles on the policy; (3) the notice of loss date; (5) the type of coverage (UM/UIM); (6) the dates the claim was opened and closed; (7) the date the demand letter was received; (8) the amount paid; (9) the claim limit; (10) the incident limit; (11) the date Amica received written notice of the claim; (12) whether the insured was represented by counsel; (13) whether the insured signed a release; (14) claimed past medicals; (15) claimed lost wages; (16) claimed future medicals; (17) claimed future lost wages; and (18) the tortfeasor's policy limit. *Id.* ¶ 14. This information was provided without including any personal identifying information about the putative class members. *Id.* ¶ 14. In preparing for the mediation. Class Counsel drafted a nineteen-page mediation memo. *Id.* ¶ 16. Using the data provided by Amica, Plaintiff determined that the stacked UM/UIM policy limits for the putative class was $5.37 million but the total Amica had paid subject to the single, unstacked policy limit was only $2.265 million. *Id.* ¶ 17. If Plaintiff succeeded in showing that stacked limits were available, compensatory damages for the putative class could not exceed $3.105 million (the difference between amounts already paid and the stacked policy limits). *Id.* In other words, the putative class could seek insurance benefits according to proof, but in no event would those benefits exceed $3.105 million. Plaintiff further explained that if the parties went to trial, Plaintiff would seek interest under two separate (but cumulative) statutes and punitive damages, in addition to compensatory damages. *Id.*¶ 18. The parties proceeded with the mediation on January 11, 2024. *Id.* ¶ 19. After a full day of mediation that went late into the night, the parties agreed to settle the case for an all-in common fund of $2,875,000.00. *Id.*; Settlement Agreement ¶ 36 (Ex. 1). The parties informed the Court of the settlement on January 29, 2024. ECF No.

32. After extensive negotiations on final settlement terms, the parties entered into the Settlement Agreement on July 15, 2024, attached as Exhibit 1.

### III.    SUMMARY OF SETTLEMENT TERMS

**A.    The Settlement Class**

The settlement encompasses the proposed "Settlement Class," which the parties agree includes:

> All persons insured under an insurance policy issued by Defendant in Arizona that covered more than one vehicle for uninsured or underinsured motor vehicle insurance, and who received the limit of liability for the uninsured or underinsured benefits for only one unit of (or one vehicle's) UM or UIM coverage during the Class Period, as reflected in the agreed-upon list attached as Exhibit A to the Settlement Agreement.

Settlement Agreement at ¶ 22 & Ex. A, attached as Exhibit 1. "Settlement Class Member" means any person that falls within the definition of the Settlement Class, who does not timely and validly elect to be excluded from the Settlement Class. *Id.* ¶ 3. The Class period means October 18, 2016, through July 14, 2024, the date of the Settlement Agreement. *Id.* ¶ 4.

**B.    The Settlement Consideration, Release of Claims, and Anticipated Class Recovery**

The Settlement releases Amica from all claims based on the facts alleged in the Complaint in exchange for a common fund of $2,875,000.00, less any reduction for exclusions as described below (the "Settlement Fund").[3] *Id.* ¶¶ 34–36. Class Counsel have developed extensive statistical evidence and other proof confirming that this settlement amount is fair, reasonable, and adequate in relation to the projected value of the insurance claims themselves. Class Counsel will submit more detailed proof during the final approval process, but the projected value of the UM/UIM insurance benefits owed to the class is $1,773,697.67. Carey Decl. ¶ 20 (Ex. 2). Class Counsel, with the

---

[3] The claims released include breach of contract and breach of the implied covenant of good faith and fair dealing.

MOTION FOR PRELIMINARY APPROVAL

assistance of experts, previously estimated counterfactual settlement payments using statistical techniques such as Kaplan–Meier curve analysis and maximum likelihood estimation of censored claim data. *Id.* ¶ 21. This experience shows that there is a strong relationship between unpaid loss and the available insurance funds. *Id.* ¶ 22. Moreover, this relationship varies by claim time and individual insurance limit (with losses ranging between 40-80% of available incremental insurance limits). *Id.* ¶ 23. When this relationship is applied to class data, the estimated amount that would have been paid to class members, had the appropriate limits been applied, is approximately $1.77 million. *Id.* ¶ 20. This Settlement will therefore provide each Settlement Class Member approximately ***163%*** of the benefits they would have received had their claims been adjusted under the stacked policy limits at the time of their losses, instead of being capped by the single limit.

In making this settlement, Class Counsel considered the risks of going to trial including the possibility that a trial could result in a smaller or zero recovery for the Settlement Class, the time and resources that would be expended by both parties and the Court, and the possibility of delay caused by any appeal if Plaintiff did prevail. Putting aside the intrinsic value of the claims as described above, policy benefits for the class are capped at $3.105 million, meaning that compensatory damages for unpaid policy benefits awarded at trial could not exceed that amount. The common fund already totals almost 93% of those available benefits. And while Plaintiff may have recovered more at trial, there is always a risk of losing at trial (even with a meritorious case) for any number of reasons. There are also risks relating to admissibility of evidence and class certification. Awards of interest and punitive damages are at the jury's discretion, as is the amount of compensatory damages awarded, even if the proof is compelling. Even if Plaintiff prevails at trial, the delay and other financial risks of an appeal (even if meritless) are considerable, and appeals are commonplace in insurance cases. Finally, early resolution of this case avoids significant litigation costs and expert fees, greater attorneys' fees, and further loss of the time value of money on any recovery.

MOTION FOR PRELIMINARY APPROVAL

**C.     Attorneys' Fees and Costs, Incentive Award, and Administration Costs**

Because this is a common fund settlement, the costs of notice and distribution, attorneys' fees and costs, and the service award for the Class Representative will be paid out of the Settlement Fund.

The estimated costs of notice and distribution are $14,896, with a fixed cap of $15,300. Carey Decl. ¶ 24 (Ex. 2). The costs of administration will be taken out of the Settlement Fund. Settlement Agreement ¶ 38(a).

Through June 21, 2024, Class Counsel has advanced costs of $11,493.65 and will seek no more than $13,000 in costs. Carey Decl. ¶ 25 (Ex. 2). Class Counsel will request a fee award of up to 30% of the Settlement Fund. *Id.* ¶ 26.

When awarding fees under a common fund in the Ninth Circuit, courts generally start with the 25% benchmark and adjust upward or downward depending on:

(1)     The extent to which class counsel achieved exceptional results for the class;

(2)     Whether the case was risky for class counsel;

(3)     Whether counsel's performance generated benefits beyond the cash fund;

(4)     The market rate for the particular field of law (in some circumstances);

(5)     The burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work); and

(6)     Whether the case was handled on a contingency basis.

*In re Wells Fargo & Co. S'holder Derivative Litig.,* 445 F. Supp. 3d 508, 519 (N.D. Cal. 2020) (quoting *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015), *aff'd,* 845 F. App'x 563 (9th Cir. 2021). Class Counsel's work and success in this case merits an upward adjustment of up to 5%, for a total fee of 30%. Private counsel entering into a contingent fee agreement for these types of cases (breach of contract and insurance bad faith in the context of an automobile injury) routinely request and receive (as expert testimony will show) a fee of 40% of the gross recovery achieved. Class Counsel's skill and effort, not only in this novel and risky case but also in *Franklin* (which made this settlement possible), produced an extraordinary result. The *Franklin*

decision confirmed that multiple coverages existed and could be stacked under a single insurance policy insuring multiple vehicles—the threshold issue in this case. Beyond this, Class Counsel's skill and expertise in developing the law, evidence, and analysis to secure class certification made this settlement possible. The settlement permits every class member to receive not only 100% of the benefits that would have been paid, but also an additional sum, all ***after paying attorneys' fees*** and without even knowing about the harm to their interests or having to retain private counsel to engage in a one-sided battle with their own insurer. Class Members will pay less than the established rate for a recovery devoid of the friction and unpleasantness that can accompany litigation. Class Counsel will more fully support their request, including detailing the relevant circumstances of the *Wells Fargo* factors, in their motion for attorneys' fees.

In moving for attorneys' fees, Plaintiff requests that the Court not adopt the optional procedures set forth in LRCiv 54.2(j). There will be a single fee request made in this case by Proposed Class Counsel and its team that worked on the case—there will not be multiple or competing fee requests that would require the assistance of a fee committee or special master and the common fund payment is a discrete, negotiated cash benefit that is easily ascertained. Class Members will have more than sufficient information about the fee request. Plaintiff's proposed Notice includes the amount of fees and costs Proposed Class Counsel will seek. And under Plaintiff's proposed schedule, the fee motion will be filed thirty days before the objection deadline and be available upon request from Class Counsel. Moreover, there is a known market for these types of claims, providing easy insight into what a reasonable fee is in the circumstances.

For a service award, Class Counsel will also seek an award of $7,500 for Plaintiff Chase Whitehead, out of the settlement fund. "In the Ninth Circuit, an incentive award of $5,000 is 'presumptively reasonable,'" and may be adjusted up or down depending on effort. *Sonoma Sol LLLP v. Truck Ins. Exch.*, No. CV-20-00069-PHX-DJH, 2021 WL 5238711, at *6 (D. Ariz. Nov. 9, 2021) (citations omitted). Here, a slightly higher award is reasonable. Whitehead has been actively involved in this litigation and without his

willingness to come forward and prosecute the action, the Settlement Class Members would have received nothing for their injuries. Plaintiff spent significant time assisting Class Counsel in investigating and prosecuting this action. Plaintiff assisted with drafting his factual allegations in the Complaint and was involved in the settlement process— including attending the mediation in person—a process which lasted from the start of business until late in the evening. Carey Decl. ¶ 27 (Ex. 2). Given Whitehead's efforts and the significant amount the Class Members will receive, an award of $7,500 is reasonable. *See Julian v. Swift Transportation Co. Inc.*, No. CV-16-00576-PHX-ROS, 2020 WL 6063293, at *3 (D. Ariz. Oct. 14, 2020) (finding award of $15,000 reasonable where plaintiff traveled to Pheonix for his deposition and in light of amount other class members would receive). Class Counsel will more fully support this request in their motion for attorneys' fees.

**D.    Notice and Implementation of Settlement**

Plaintiff has attached hereto a proposed Settlement Class Notice and proposes the following plan for the dissemination of that Notice. Declaration of Cameron R. Azari, Esq. ("Azari Decl."), Attachment 3 (Ex. 3). Plaintiff proposes notifying the Settlement Class, which consists of twenty-two Settlement Class Members, via first class U.S. mail. Plaintiff also proposes using Epiq Class Action & Claims Solutions, Inc. ("Epiq") along with Epiq's Notice business unit, Hilsoft Notifications ("Hilsoft") as the Settlement Administrator. Settlement Agreement ¶¶ 20, 44(a) (Ex. 1).

Amica will provide to Epiq and Class Counsel the names, and last known addresses, and phone numbers for all members of the Settlement Class. *Id.* ¶ 43. Using that data, Epiq will mail the notice form to all Settlement Class Members. *Id.* ¶ 44(a). With the Court's approval, Class Counsel will also contact the Settlement Class Members to provide information or answer questions that will aid "prospective class members in deciding whether or not to join the class action." *Kleiner v. First Nat. Bank of Atlanta*, 102 F.R.D. 754, 769 (N.D. Ga. 1983) *aff'd in part, vacated in part on other grounds*, 751

F.2d 1193 (11th Cir. 1985). Additional details on the Notice Plan are set forth in Section IV.C below.

Notice is also required under the Class Action Fairness Act, 28 U.S.C. § 1711 *et seq.* The proposed form of notice under the statute is attached as Attachment 3 to the Azari Declaration (Ex. 3). That notice will be provided to the appropriate state and federal officials no later than ten days after the filing of this Motion. Azari Declaration ¶ 17 (Ex. 3). The cost of notice will be paid out of the settlement fund, which amount is included in the estimated costs of administration above.

**E.     Plan of Distribution**

Plaintiff proposes sending checks to every member of the Settlement Class, with the "Net Settlement Fund" (the Settlement Fund less attorneys' fees, costs, and any incentive award) being distributed among the Settlement Class in accordance with the allocated percentages as described in the Settlement Agreement. Class Counsel, in consultation with experts, has calculated an "Initial Allocation" for each of the twenty-two Settlement Class Members, which is attached as Exhibit A to the Settlement Agreement. Settlement Agreement, Exhibit A (Ex. 1). The Initial Allocation is based on the proportional valuation of each Settlement Class Member's damages, the submitted medical bills and other economic damages, the proportion of such damages relative to policy limits, as well as payments already received by the Settlement Class Members. Settlement Agreement ¶ 39 (Ex. 1); Carey Decl. ¶ 28 (Ex. 2). After the deadline for Class Members to request exclusion has passed and the exclusions are known, the Settlement Fund will be reduced for each Class Member who has requested exclusion by the percentages set forth in Exhibit B to the Settlement Agreement. Settlement Agreement ¶ 39 (Ex. 1). Those percentages represent the relative risk to Amica if that excluded Class Member separately brings a suit against Amica. Class Counsel will proportionally recalculate the percentage allocation of the Net Settlement Fund for the remaining Settlement Class Members, to reflect the reduction in the number of Settlement Class Members and reduced Settlement Fund. *Id.* Class Counsel will attach that "Final

MOTION FOR PRELIMINARY APPROVAL

Allocation" to the Motion for Final Approval, which will represent each Settlement Class Member's share of the Net Settlement Fund. *Id.*

After the Settlement receives Final Approval, Epiq will mail checks via U.S. Mail to each of the Settlement Class Members, in the proportions set forth in the Final Allocation. *Id.* ¶ 40. If there are unclaimed funds, the parties agree to meet and confer on what to do with the remaining funds, which will then be submitted to the Court for approval. The Parties agreed in the Settlement Agreement that there will be no reversion of unclaimed funds to Amica. *Id.* ¶ 41.

## IV.    ARGUMENT

"The Ninth Circuit has declared a strong judicial policy that favors settlement of class actions." *Zwicky v. Diamond Resorts Mgmt. Inc.*, 343 F.R.D. 101, 112 (D. Ariz. 2022) (citing cases). Where parties reach settlement before class certification, courts must approve both "the propriety of certification" and "the fairness of the settlement." *Id.* at 113. Here, the Settlement Class should be certified under Federal Rule of Civil Procedure 23(b)(3) and the settlement is "fair, reasonable, and adequate" under Rule 23(e).

**A.    The Class should be certified for the purposes of settlement.**

"A class action will only be certified if it meets the four prerequisites identified in Federal Rule of Civil Procedure ('Rule') 23(a) and additionally fits within one of the three subdivisions of Rule 23(b)." *Zwicky*, 343 F.R.D. at 113. Rule 23(a) requires the Court to examine whether: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law and fact common to the class, (3) the claims and defenses of the representative parties are typical of the claims and defenses of the class, and (4) the representative parties will fairly and adequately protect the class. Fed. R. Civ. P. 23(a)(1)–(4). Rule 23(b)(3) requires the Court to determine whether "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods." Fed. R. Civ. P. 23(b)(3). Plaintiff can show that the Settlement Class meets the requirements of Rules 23(a) and (b)(3) and should be certified for the purpose of settlement.

### 1.    The Settlement Class is sufficiently numerous.

While this class only has twenty-two members, it meets the numerosity standard. Numerosity is not "tied to any fixed numerical threshold." *Zwicky*, 343 F.R.D. at 114. Rather, numerosity "requires examination of the specific facts of each case and imposes no absolute limitations." *Head v. Citibank, N.A.*, 340 F.R.D. 145, 149 (D. Ariz. 2022) (citations omitted). "[N]umerosity is met when general knowledge and common sense indicate that joinder would be impracticable." *Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238, 241 (D. Ariz. 2019). While twenty-two class members is on the small side of a proposed class, the facts of this case establish that numerosity should be found here. Each of the Settlement Class Members make identical claims—they each had more than one vehicle insured by Amica, they allege that they were not informed of their right to select coverage under A.R.S. § 20-259.01(H), and they allege that Amica did not provide them with stacked coverage. Central legal issues were decided by the Arizona Supreme Court. The court held that "insurers seeking to prevent insureds from stacking UIM coverages under a single, multi-vehicle policy must employ subsection (H)'s sole prescribed method for limiting stacking." *Franklin*, 532 P.3d at 1147. It also held that when the required statutory notice is not given, insurers cannot "prevent insureds from intra-policy stacking." *Id.* at 1153. Because the only issues to be decided for all Settlement Class Members is whether they received the required notice, whether they received stacked coverage, and the amount of damages, common sense indicates that joinder is both impracticable and a waste of judicial resources. The Court should find numerosity is met. *See Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010) ("The district court likewise did not abuse its discretion in determining that the class of 20 satisfies the numerosity requirement.").

### 2.    Questions of law and fact are common to the settlement class.

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality exists where class members' 'situations share a common issue of law or fact, and are sufficiently parallel to insure a vigorous and

full presentation of all claims for relief.'" *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (citation omitted). "Because the Ninth Circuit construes commonality liberally, it is not necessary that all questions of law and fact be common. The commonality requirement is met when the common questions it has raised are apt to drive the resolution of the litigation." *Zwicky*, 343 F.R.D. at 114 (internal quotation, alteration, and citations omitted).

Commonality is satisfied here. The same factual allegations apply to each of the proposed Settlement Class Members. Plaintiff alleges that all Settlement Class Members purchased an Amica policy in Arizona that included multi-vehicle UM/UIM coverage and the same or substantially same limitation of liability policy language. Plaintiff further alleges that each Settlement Class Member requested UM/UIM coverage from Amica but only received the policy limit for one covered vehicle. Plaintiff also alleges that Amica did not provide the required notice under A.R.S. § 20-259.01(H) to the Settlement Class Members, either through the policy language or by separate written notice.

Plaintiff's causes of action are also identical for the Settlement Class. Plaintiff's claims for breach of contract and breach of the covenant of good faith and fair dealing ask the same question: Whether Amica breached its contracts with the Settlement Class when it failed to provide the Settlement Class Members with stacked coverage, after not providing the notice required by A.R.S. § 20-259(H) either in the policy or by separate letter. *See McClure v. State Farm Life Ins. Co.*, 341 F.R.D. 242, 250 (D. Ariz. 2022) ("Plaintiff has satisfied the commonality requirement because each claim is based on a form contract and a uniform course of conduct towards each policyholder by State Farm.") And, as the insurance policies were all issued in Arizona, Arizona law controls and applies to each member of the Settlement Class. Commonality is met in this case.

**3.    Plaintiff's claim is typical of the Settlement Class's claims.**

"Typicality requires that the named plaintiff have claims 'reasonably coextensive with those of absent class members,' but the claims do not have to be 'substantially identical.'" *Zwicky*, 343 F.R.D. at 115 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

1020 (9th Cir. 1998)). "The test for typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id.* (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

Plaintiff has no individual claims that differ from the Settlement Class's claims. Plaintiff had an Amica policy that provided UM/UIM coverage on more than one vehicle, he requested UM coverage from Amica that exceeded the limit of UM coverage on one vehicle, he alleges Amica did not provide him the required statutory notice to prevent stacking and allow him to choose UM coverage, and Plaintiff only received payment in the amount of the single (one-vehicle) UM limit. Like Plaintiff, all Settlement Class Members had an Amica policy that provided UM/UIM coverage for more than one vehicle, they requested UM/UIM coverage from Amica, Amica allegedly did not provide them the required statutory notice to prevent stacking and allow them to choose their UM/UIM coverage, and they only received UM/UIM coverage for one vehicle. Plaintiff's claims all sound in contract, alleging that Amica breached its contractual obligations by not paying for additional UM/UIM coverage. Like Plaintiff, the Settlement Class Members have the identical breach of contract claims. Plaintiff meets the typicality requirement.

### 4.    Plaintiff and Class Counsel are adequate representatives.

"To resolve the question of legal adequacy, the Court must answer two questions: (1) do the named plaintiff and her counsel have any conflicts of interest with other class members and (2) has the named plaintiff and her counsel vigorously prosecuted the action on behalf of the class?" *Zwicky*, 343 F.R.D. at 116 (citing *Hanlon*, 150 F.3d at 1020). "This adequacy inquiry considers a number of factors, including 'the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive.'" *Id.* (citing *Brown v. Ticor Title Ins.*, 982 F.2d 386, 390 (9th Cir. 1992)). "The

1   adequacy-of-representation requirement tend[s] to merge with the commonality and

2   typicality criteria of Rule 23(a)." *Id.* (quoting *Amchem Prods. Inc. v. Windsor*, 521 U.S.

3   591, 626 n.20 (1997)).

4       There are no conflicts of interest between Plaintiff and Class Counsel and the

5   Settlement Class. As shown above, commonality and typicality are met, showing there

6   are no conflicts between Plaintiff and the Settlement Class. *See Zwicky*, 343 F.R.D. at

7   116 (finding no conflict where commonality and typicality are met). And Class Counsel

8   has no conflict with the Settlement Class, having litigated this case and related cases,

9   including *Franklin*, which yielded a favorable decision for Arizona insureds.

10      "The second prong of the adequacy inquiry examines the vigor with which

11  Plaintiffs and their counsel have pursued the common claims*." Zwicky*, 343 F.R.D. at

12  116. Here, Plaintiff has fulfilled his duties as a class representative, assisting with the

13  litigation when asked. Hagens Berman Sobol Shapiro LLP is adequate counsel. Hagens

14  Berman has extensive experience in complex and class-action litigation, including

15  insurance litigation. Hagens Berman Firm Resume (Ex. 4). And it has adequately

16  litigated this case, getting a favorable decision in *Franklin*, which has benefited the

17  Settlement Class Members here. Adequacy is met.

18      **5.    Common questions of law and fact predominate under Rule 23(b).**

19      A class action may be maintained under Rule 23(b)(3) if (1) "the court finds that

20  questions of law or fact common to class members predominate over any questions

21  affecting only individual members," and (2) "that a class action is superior to other

22  available methods for fairly and efficiently adjudicating the controversy." *Zwicky*, 343

23  F.R.D. at 117 (quoting Fed. R. Civ. P. 23(b)(3)). This case meets both the predominance

24  and superiority requirements needed for class certification.

25          **a.    Common questions predominate in this case.**

26      "Because Rule 23(a)(3) already considers commonality, the focus of the Rule

27  23(b)(3) predominance inquiry is on the balance between individual and common issues."

28  *Zwicky*, 343 F.R.D. at 117. "An individual question is one where 'members of a proposed

class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–197 (5th ed. 2012)); *see also Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 467 (2013) (when an issue in the case can be proven through evidence common to the class, it is a "'common questio[n]' for purposes of Rule 23(b)(3)"). Here, individual issues do not outweigh common issues. As established above, the facts and legal issues are common to the class. Liability is established by the policy forms, standardized letters, and uniform practices of the insurer, and where there is a form insurance contract with common treatment of the class members, predominance is met. *See McClure*, 341 F.R.D. at 252 (finding predominance in breach-of-contract claim against insurance company, noting a "claim for breach of a standard form contract or company policy often may be suitable for class-wide treatment" (quoting *Garza v. Gama*, 379 P.3d 1004, 1007 (Ariz. Ct. App. 2016))). Thus, the only question is whether there any individual issues that outweigh these common issues. And as *Amgen* correctly notes, when the proof is common, individualized issues do not predominate because the result is simply that, if the class fails in its proof, its claim will fail and "there will be no remaining individual questions to adjudicate." *Amgen*, 568 U.S. at 469. Here, liability and causation would be established by each class member using the same evidence, rendering it suitable for class treatment and leaving the merits determination for the factfinder.

Moreover, "[w]hen 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Tyson Foods,* 577 U.S. at 453 (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123–124 (3d ed. 2005)). In settlement classes whether

1    a class is sufficiently cohesive to satisfy predominance "is informed by whether

2    certification is for litigation or settlement." *In re Hyundai & Kia Fuel Econ. Litig.*, 926

3    F.3d 539, 558 (9th Cir. 2019). The result is that, in settlements such as this, "the district

4    court need not consider trial manageability issues." *Id.* at 563.

5         While each Settlement Class Member has varying damages, those issues do not

6    create a predominance problem. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1121 (9th

7    Cir. 2017) ("That some individualed calculations may be necessary does not defeat

8    finding predominance."). Damages can still be calculated on a classwide basis using a set

9    formula or statistical estimations, as was done here. *In re Pharm. Indus. Average*

10   *Wholesale Price Litigation*, 582 F.3d 156, 197–98 (1st Cir. 2009). Indeed, "the use of

11   aggregate damages calculations is well established in federal court and implied by the

12   very existence of the class action mechanism itself." *Id.* at 197. With the assistance of a

13   damages' expert, Class Counsel applied a reasonable formula to determine each

14   Settlement Class Member's portion of damages. Using data provided by Amica, that

15   formula accounted for the date of the claim, the amount of UM/UIM coverage available,

16   the amount of damages, whether the Class Member had a statute of limitations issue on

17   the contract claim, severity of injury, and whether the Settlement Class Member signed a

18   release. As a general rule, affirmative defenses do not create a predominance issue, *see*

19   *McClure*, 341 F.R.D. at 253–54 (rejecting statute of limitations defense created

20   predominance issue and citing cases), and Class Counsel accounted for those defenses by

21   discounting Class Members with a statute of limitations issue on the contract claim

22   and/or who signed a release. After the damages were calculated for each Settlement Class

23   Member, the damages were totaled, and each Class Member's percentage of the total

24   damages was determined. This method of calculating damages does not defeat

25   predominance. *See Just Film*, 847 F.3d at 1121 ("That some individualed calculations

26   may be necessary does not defeat finding predominance."); *In re Pharm. Indus.*, 582 F.3d

27   at 197–98 (allowing the use of aggregate damages); *McClure*, 341 F.R.D. at 254 (finding

28

1    predominance where damages model was "applied on a class-wide basis to calculate

2    damages for each individual policyholder in the class"). Predominance is met in this case.

3            **b.      A class action is the superior in this case.**

4            "[T]he purpose of the superiority requirement is to assure that the class action is

5    the most efficient and effective means of resolving the controversy." *Wolin*, 617 F.3d at

6    1175 (citation omitted). "Where classwide litigation of common issues will reduce

7    litigation costs and promote greater efficiency, a class action may be superior to other

8    methods of litigation." *Zwicky*, 343 F.R.D. at 118 (quoting *Valentino v. Carter-Wallace,*

9    *Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)). Here a class action will reduce litigation costs

10   and promote greater efficiency. Having twenty-two plaintiffs file individual cases—

11   particularly where the causes of action and facts are basically identical—would increase

12   litigation costs, waste party resources, and waste the Court's resources. *See McClure*, 341

13   F.R.D. at 254 (finding superiority where "case involves the interpretation of a form

14   contract, the interpretation of which will apply to all class members making class action

15   an efficient form of adjudication"). Additionally, while the damages vary among

16   Settlement Class Members, many of their claims are too small to make individual

17   litigation possible. *See id.* ("Furthermore, because the recoveries of each individual class

18   member will be relatively small, a class action is superior to other methods of

19   adjudication.") A class action is superior in this case.

20   **B.      The proposed settlement should be preliminarily approved.**

21           Federal Rule of Civil Procedure 23(e) requires judicial approval of any settlement

22   of class-action claims. Preliminary approval is appropriate "where the proposed

23   settlement does not disclose grounds to doubt its fairness and lacks 'obvious

24   deficiencies.'" *Zwicky*, 343 F.R.D. at 119–20 (citations omitted). In determining whether

25   a settlement is fair, reasonable, and adequate at the preliminary approval phase, "courts

26   need only evaluate whether the proposed settlement (1) appears to be the product of

27   serious, informed, non-collusive negotiations, (2) has no obvious deficiency, (3) does not

28   improperly grant preferential treatment to class representatives or segments of the class

and (4) falls within the range of possible approval." *Id.* at 119 (cleaned up). Each of these factors weighs in favor of approving the settlement.

### 1. The settlement is the result of arm's-length negotiations.

Weighing in favor of preliminary approval, the settlement arises out of informed, arm's length negotiations among counsel for the parties. The parties reached agreement after Class Counsel obtained a ruling from the Arizona Supreme Court in *Franklin* that established that insurance companies must stack UM/UIM coverage where an insurer did not provide the required notice to select coverage. Amica opposed Class Counsel's efforts in *Franklin* by filing an amicus brief, making it well versed with the court's ruling that insurers were required to stack coverage if they did not give the required notice under A.R.S. § 20-259.01(H). As the Arizona Supreme Court has decided some of the key legal issues in the case, the only outstanding factual issues in this case are whether Amica provided the required notice under A.R.S. § 20-259.01(H) and, if not, whether Amica's insureds were paid for stacked coverage. Rather than litigate further, Amica and Whitehead reached a settlement that benefits both sides.

"Particularly with settlements reached prior to class certification, enough information must exist for the Court to assess 'the strengths and weaknesses of the parties' claims and defenses ... and consider how class members will benefit from settlement' to determine if it is fair and adequate." *Zwicky*, 343 F.R.D. at 120 (citations omitted). "In considering a proposed settlement, a court therefore bears an obligation to first evaluate the scope and effectiveness of the investigation plaintiff's counsel conducted prior to reaching an agreement." *Id.* Even though this case was settled before class certification and before any formal discovery took place, the Court can assess the strengths and weaknesses of Plaintiff's claims and Amica's defenses because those same claims and defenses were at issue in *Franklin*.

Relying on the ruling in *Franklin*, Plaintiff has a strong case for breach of contract by establishing that Amica did not provide the required notice under A.R.S. § 20-259.01(H) and that Amica did not stack coverage. Amica has admitted that the limitation

of liability language in Whitehead's policy quoted in the Complaint is accurate and that it did not send him a separate notice informing him of his right to select coverage. ECF No. 26 ¶¶ 26, 29. Nothing in Whitehead's policy advises him of his of his right to select coverage. While Amica "denies A.R.S. § 20-259.01(H) required Amica to provide such separate written notice, or that Amica failed to comply with the statute by not providing such separate written notice," the Arizona Supreme Court held that insurers "seeking to prevent insureds from stacking UIM coverages under a single, multi-vehicle policy must employ subsection (H)'s sole prescribed method for limiting stacking." *Franklin*, 532 P.3d at 1146. The court went on to describe what is required: "[I]nsurers must (1) expressly and plainly limit stacking in the policy and (2) satisfy the notice requirement informing the insured of their right to select one policy or coverage either in the policy itself or in writing to the insured within thirty days after the insurer is notified of the accident." *Id.* at 1148 (citations omitted). Here, Plaintiff will seek to show based on Amica's standardized policy language, claim records, and standardized claims handling procedures that the form policies did not inform Whitehead or the Settlement Class Members of their right to select coverage. Amica admits it did not send Whitehead notice. Whitehead can show that Amica did not stack his coverage. And while Amica denies liability, it did, in the course of settlement negotiations, identify all Settlement Class Members who did not receive stacked coverage.

Based on this information, the Court should find that the settlement is based on an informed, arm's-length negotiation.

### 2. The settlement has no obvious deficiencies.

There are no obvious deficiencies in the proposed settlement. The Ninth Circuit has pointed to three factors as troubling signs of a potential disregard for the class's interests during the course of negotiating and pre-certification settlement: (1) when class "counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;" (2) "when the parties negotiate a 'clear sailing' arrangement that provides for the payment of attorneys'

fees separate and apart from class funds;" and (3) when the parties arrange for fees not awarded to class counsel to revert to the defendants rather than the class. *In re Bluetooth Headset Prods. Liability Litig.*654 F.3d 935, 947 (9th Cir. 2011) (citations omitted); *see also Zwicky*, 343 F.R.D. at 121 (same). None of those deficiencies are present here.

Here, the Settlement Class will receive a majority of the Settlement Fund. In fact, each of the Settlement Class Members will receive a significant recovery. There is no clear sailing provision. Rather, reasonable attorneys' fees will be awarded out of the Settlement Fund as determined by the Court. Last, there is no reversion to Amica. If a Class Member does not claim his or her funds—which is unlikely given the number of Settlement Class Members and the size of the recoveries—the Settlement Agreement requires the parties to meet and confer about what to do with those remaining funds. And any such decision must be approved by the Court. None of the *Bluetooth* deficiencies are present in this case.

### 3. The proposed settlement does not grant preferential treatment to Plaintiff or segments of the Settlement Class.

There is no preferential treatment for Plaintiff in the proposed settlement. Plaintiff will request a modest incentive fee of $7,500, which is slightly above the standard incentive fee award. *Sonoma Sol LLLP*, 2021 WL 5238711, at *6. Additionally, all but one of the Settlement Class Members are getting significantly more than the requested incentive fee. "To assess whether an incentive payment is excessive, district courts balance 'the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment.'" *Zwicky*, 343 F.R.D. at 123 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003)). Here, there is only one incentive award, the proposed incentive award constitutes less than 0.27% of the Settlement Fund, and the recovery for all but one of the Settlement

Class Members will be more than the requested incentive award.[4] The settlement does not give Plaintiff preferential treatment; in fact, Plaintiff sacrificed what he could have recovered in individual litigation to ensure the entire class was compensated.

There also is not any preferential treatment for segments of the Settlement Class. Each Settlement Class Member's damages are based entirely on what their actual damages were, the amount of available UM/UIM coverage they had, and whether they have a statute of limitations issue or signed a release. While the damages among Settlement Class Members varies, that variation is due the varying UM/UIM coverage and damages, as well as available affirmative defenses. The proposed settlement is fair to the Settlement Class.

**4.    The settlement falls within the range of possible approval.**

To determine whether a settlement 'falls within the range of possible approval,' courts focus on 'substantive fairness and adequacy' and 'consider plaintiffs' expected recovery balanced against the value of the settlement offer.'" *Zwicky*, 343 F.R.D. at 124 (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)). "The Ninth Circuit in particular 'puts a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution, and has never prescribed a particular formula by which that outcome must be tested." *B.K. by next friend Tinsley v. Faust*, No. CV-15-00185-PHX-ROS, 2020 WL 6048315, at *2 (D. Ariz. Oct. 13, 2020) (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)). "Estimates of what constitutes a fair settlement figure are tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)." *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 322 (N.D. Cal. 2018) (citation omitted).

---

[4] One Settlement Class Member is entitled to 0.08% of the Settlement Fund (after costs and fees are deducted). That Settlement Class Member had damages that were slightly over the limit of liability for one vehicle, and they were paid the full limit of liability for the first vehicle.

MOTION FOR PRELIMINARY APPROVAL

Class Counsel ran several models to predict the settlement value, including models for other cases, and used those models to cross-check the value of this settlement. Carey Decl. ¶ 29 (Ex. 2). The settlement amount of $2.85 million compares favorably with the projected value of Class members' UM/UIM claims, as calculated under the stacked limit instead of the single limit. In fact, the settlement is 63% higher than the projected $1.77 million value of the classwide insurance claims. Additionally, Plaintiff has also shown above that the settlement was the product of an arm's-length, non-collusive negotiation. *Supra* section VI.B.1. And given the risks and time associated with continued litigation, the possibility that the Settlement Class could recover less at trial, and the possibility of an appeal if they do prevail, $2.85 million represents a fair, reasonable, and adequate settlement.

### 5. The experience and views of counsel weigh in favor of preliminary approval.

Class Counsel's judgment that this settlement is fair and reasonable is entitled to significant weight. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.") (citation omitted). This is particularly true here where Class Counsel are not only experienced class attorneys, they have decades of experience in insurance cases and insurance class actions. *See Reid v. I.C. Sys. Inc.*, No. CV-12-02661-PHX-ROS, 2018 WL 11352039, at *3 (D. Ariz. July 27, 2018) (giving counsel's recommendations a "presumption of reasonableness," where class counsel had sufficient expertise in class actions and consumer protection cases), *aff'd*, 795 F. App'x 509 (9th Cir. 2019); *see also* Hagens Berman Firm Resume (Ex. 4) (showing class and insurance experience). Class Counsel's experience and recommendation supports a finding that the settlement is fair, reasonable, and adequate.

**C.    The Proposed Class Notice and Plan for Dissemination Comply with Rule 23(e)**

Rule 23(e)(1) requires that a court approving a class-action settlement must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). In addition, for a Rule 23(b)(3) class, the court must "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). A class-action settlement notice "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., LLC v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir. 2004) (citations omitted); *see also* Fed. R. Civ. P. 23(c)(2)(B) (describing specific information to be included in the notice).

The proposed notice plan is supported by an experienced notice and claims administrator, Epiq, which has worked cooperatively with counsel to develop the proposed plan of notice. The proposed Notice form provides all the information required by Rule 23(c)(2)(B) to the Settlement Class, in language that is plain and easy to understand. With this motion, Plaintiff provides the proposed from for the Notice. Azari Decl., Attachment 3.

The Notice will be sent via USPS first-class mail. Settlement Agreement ¶ 44 (Ex. 1); Azari Decl. ¶ 22 (Ex. 3). Before mailing, all mailing addresses will be checked against the National Change of Address ("NCOA") database maintained by the USPS. Azari Decl. ¶ 23 (Ex. 3). Any addresses returned by the NCOA database as invalid will be updated through a third-party address search service. *Id.* In addition, the addresses will be certified via the Coding Accuracy Support System ("CASS") to ensure the quality of the zip code and verified through Delivery Point Validation ("DPV") to verify the accuracy of the addresses. *Id.* This address updating process is standard for the industry and for most promotional mailings that occur today. *Id.*

26

Notices returned as undeliverable will be re-mailed to any new address available through USPS information, for example, to the address provided by USPS on returned pieces for which the automatic forwarding order has expired, or to other addresses that may be found using a third-party lookup service that uses public lookup information. *Id.* ¶ 24. Upon successfully locating such addresses, Notices will be promptly re-mailed. *Id.*

The proposed Notice features a prominent headline and is identified as a Notice from the District Court. *Id.*, Attachment 2. The Notice includes information about the lawsuit and settlement, including Plaintiff's claims, the definition of the Settlement Class, the amount of the Settlement, how much each Settlement Class Member will receive from the settlement, the right to object, the right to request exclusion, contact information for Class Counsel, and how to attend the fairness hearing. *Id.* The Notice alerts recipients that the Notice is an important document authorized by a court and that the content may affect them, thereby supplying reasons to read the Notice and contact Class Counsel for additional information. *Id.* Epiq opines the Notice Plan described above provides for the best notice practicable under the circumstances, conforms to all aspects of the Rule 23, and comports with the guidance for effective notice set out in the Manual for Complex Litigation, Fourth edition. *Id.* ¶ 28.

To assist potential Class members in understanding the information concerning the lawsuit and their rights, Class Counsel requests approval from the Court to contact all the Settlement Class Members directly. Once notice is sent to a prospective class member an "attorney-client relationship exist[s] for the purpose of aiding prospective class members in deciding whether or not to join in the class action*." Kleiner*, 102 F.R.D. at 769. Class Counsel fulfills their responsibility "by providing neutral, objective information and advice" about whether to join or exclude themselves from the class action. *Id.* at 769 n.20. Because this is a small Settlement Class and most of the recoveries are large, Class Counsel will contact Settlement Class Members to answer any questions about the settlement, to provide neutral information about whether to stay in the Settlement Class, and to provide Settlement Class Members with any requested documents (such as the Complaint, Answer,

MOTION FOR PRELIMINARY APPROVAL

Motion for Preliminary Approval, or Motion for Attorneys' fees). In contacting the Settlement Class Members, Class Counsel have consulted with ethics counsel about their ethical duties and to ensure compliance with all ethical rules, including Rule 4.2 of the Arizona Rules of Professional Conduct, Communications with Person Represented by Counsel, as some of the Settlement Class Members were previously represented by counsel in relation to their individual claims.

Finally, Class Counsel proposes that the deadline for Settlement Class Members to request exclusion from the Settlement Class or object to the settlement be set 60 days after the start of the direct Notice Campaign ("Notice Start Date"), which Epiq opines affords sufficient time to provide full and proper notice to the Settlement Class Members before the exclusion deadline, and which also follows the recommendations of the Federal Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide. Azari Decl. ¶ 29 (Ex. 3).

These notice provisions meet the requirements of Rule 23. They will allow the Settlement Class a full and fair opportunity to review and respond to the proposed settlement.

**D.      Proposed Schedule for Dissemination of Notice and Final Approval**

Plaintiff proposes the following schedule for the dissemination of class notice and final approval:

| Event | Proposed Deadline |
|---|---|
| Settlement Class Data provided to Epiq | No later than 15 days after entry of preliminary approval order |
| Notice Start Date | No later than 30 days after entry of preliminary approval order |
| Last day for motion for attorneys' fees, costs, expenses, and service awards | 60 days after entry of preliminary approval order |
| Last day for objections to settlement | 60 days after Notice Start Date |

| Last day for requests for exclusion from the Settlement Class | 60 days after Notice Start Date |
|---|---|
| Last day to file motion in support of final approval of settlement | 14 days after objection/exclusion deadline |
| Fairness Hearing | 30 days after motion for final approval is filed, unless otherwise ordered by the Court |

## V.    CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court preliminarily approve the Settlement with Amica, certify the Settlement Class, appoint Plaintiff Whitehead as Settlement Class Representative, appoint Robert Carey of Hagens Berman as Class Counsel, and direct notice in the form and manner, and on the schedule, proposed here.

MOTION FOR PRELIMINARY APPROVAL

1    Dated: July 17, 2024                   Respectfully submitted by,

2
                                            HAGENS BERMAN SOBOL SHAPIRO LLP
3
4                                           By: *s/ Robert B. Carey*
                                                Robert B. Carey
5                                               John M. DeStefano
                                                Michella Kras
6                                               11 West Jefferson Street, Suite 1000
7                                               Phoenix, Arizona 85003
                                                Telephone: (602) 840-5900
8                                               Facsimile: (602) 840-3012
9                                               Email: rob@hbsslaw.com
                                                       johnd@hbsslaw.com
10                                                     michellak@hbsslaw.com

11                                          THE SLAVICEK LAW FIRM
12                                              Brett L. Slavicek
                                                James Fucetola
13                                              Justin Henry
                                                5500 North 24th Street
14                                              Phoenix, Arizona 85016
                                                Telephone: (602) 285-4420
15                                              Fax: (602) 287-9184
16                                              Email: brett@slaviceklaw.com
                                                       james@slaviceklaw.com
17                                                     justin@slaviceklaw.com

18
19                                          *Attorneys for Plaintiff*

20

21

22

23

24

25

26

27

28