**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Chase Whitehead,

          Plaintiff,

v.

Amica Mutual Insurance Company,

          Defendant.

No. CV-22-01978-PHX-DJH

**ORDER**

Now pending before the Court is Plaintiff Chase Whitehead's ("Plaintiff") Unopposed Motion for Preliminary Approval of Class Action Settlement and Certification of the Settlement Class ("Motion"). (Doc. 36). Plaintiff and Defendant Amica Mutual Insurance Company ("Defendant") have agreed to settle this matter on the terms and conditions set forth in their Settlement Agreement (Doc. 36-1).

For the following reasons, the Court **DENIES** Plaintiff's Motion without prejudice.

## I.    BACKGROUND

This case alleges a theory of liability concerning the stacking of multi-vehicle insurance coverage under A.R.S. § 20-259.01. In or around October 2022, Plaintiff sought class certification in Maricopa County Superior Court on behalf of himself and those individuals with stacked uninsured motorist ("UM") or underinsured motorist ("UIM") policies with Defendant alleging claims of breach of insurance contract and bad faith under A.R.S. § 20-259.01. (*See* Doc. 1-3 at ¶¶ 71–72). Plaintiff alleged that he was injured in an automotive collision that resulted in over $160,000 in damages, and the non-party at

fault was uninsured. (*Id.* at ¶ 9). Plaintiff had a policy with Defendant that insured two vehicles at $100,000 per person and an aggregate limit of $300,000 per collision. (*Id.* at ¶¶ 12–15). Plaintiff alleged that Defendant would not allow him to stack the two vehicles' coverages despite not complying with A.R.S. § 20-259.01(H). (*Id.* at ¶¶ 22–29).

After removing this case to federal court (Doc. 1), on November 21, 2022, Defendant filed a Motion to Stay Proceedings pending the decision from the Arizona Supreme Court on two certified questions in *Franklin v. CSAA General Insurance Co.*, No. CV-22-00540-PHX-JJT, contending these related to Plaintiff's claims. (Doc. 7 at 6, 24). The Court granted Defendant's Motion to Stay. (Doc. 20).

In July 2023, the Arizona Supreme Court answered these questions and held that:

(1) § 20-259.01's text, history, and purpose provide that an insured covered by a multi-vehicle policy has necessarily "purchased" multiple UIM coverages for each vehicle under subsection (H); thus, rather than employing singular definitions of "coverage" in their policies, insurers must comply with the statute's requirements in order to prevent insureds from intra-policy stacking; and (2) § 20-259.01(B) does not limit UIM coverage.

*Franklin v. CSAA Gen. Ins. Co.*, 532 P.3d 1145, 1153 (Ariz. 2023). The Court lifted the stay in this case on August 2, 2023. (Doc. 23). Thereafter, Plaintiff and Defendant engaged in pre-certification discovery and settlement negotiations. (Doc. 36 at 11–12). The Parties participated in an all-day mediation to negotiate the claims related to UM/UIM coverage for policies sold in Arizona by Defendant. (*Id.* at 12). On January 29, 2024, the Parties informed the Court of a settlement resolving all claims in this case on a class wide basis. (Doc. 32). The Parties entered into a Settlement Agreement on July 15, 2024. (Doc. 36 at 13). Plaintiff then filed this Unopposed Motion on July 17, 2024. (Doc. 36).

## II.    SETTLEMENT AGREEMENT

Under the Settlement Agreement, Defendant would pay a maximum settlement amount of $2,8750,000.00 ("Settlement Fund"). (Doc. 36 at 13). The Settlement Agreement provides for the following allocation of the Settlement Fund: (1) up to $15,300 to the Settlement Administrator, Epiq Class Action & Claims Solutions, Inc.; (2) $7,500 to the Class Representative; (3) 30% to be paid to Class Counsel for attorneys' fees; and (4)

1    estimated litigation costs of up to $13,000.00. (*Id.* at 13–17). After these deductions from

2    the Settlement Fund, each of the 22 members of this Settlement Class will receive an

3    amount based on the proportional valuation of each member's overall damages.

4    (Docs. 36 at 18; 36-1 at 17). Unclaimed funds will be discussed between the parties and

5    subject to Court approval. (Doc. 36 at 19).

6    **III.    LEGAL STANDARD**

7        "The class action is an exception to the usual rule that litigation is conducted by and

8    on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S.

9    338, 348 (2011) (internal quotation marks omitted). Rule 23 provides a procedural

10   mechanism for a court to "adjudicate claims of multiple parties at once, instead of in

11   separate suits," *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393,

12   408 (2010), thereby promoting "efficiency and economy of litigation." *Am. Pipe & Constr.*

13   *Co. v. Utah*, 414 U.S. 538, 553 (1974).

14       **A.    Proprietary of Class Certification for Settlement Purposes Only**

15       While the Ninth Circuit has declared a strong judicial policy for settlement of class

16   actions, *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992), this does

17   not relieve the moving party of its burden of showing they have satisfied each of Rule 23's

18   requirements, *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979), nor the court of its duty

19   pursuant to Rule 23(e) to conduct "a rigorous inquiry before certifying a class." *See Gen.*

20   *Tel. Co. Sw. v. Falcon*, 457 U.S. 147, 161 (1982). The court has broad discretion to grant

21   or deny a motion for class certification. *See Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d

22   708, 712 (9th Cir. 2010).

23       When parties seek class certification for settlement purposes only, the court "must

24   pay undiluted, even heightened, attention to class certification requirements" because,

25   unlike in a fully litigated class action suit, the court will not have future opportunities "to

26   adjust the class, informed by the proceedings as they unfold." *Amchem Prods. Inc. v.*

27   *Windsor*, 521 U.S. 591, 620 (1997) (citations omitted). The parties cannot "agree to certify

28   a class that clearly leaves any one requirement unfulfilled," and consequently the court

cannot blindly rely on the fact that the parties have stipulated that a class exists for purposes of settlement. *Berry v. Baca*, 2005 WL 1030248, at *7 (C.D. Cal. May 2, 2005) (granting plaintiffs' renewed motions for class certification after plaintiffs presented evidence satisfying numerosity); *see also Amchem*, 521 U.S. at 622 (observing that nowhere does Rule 23 state certification is proper simply because the settlement appears fair). Regardless of whether the defendant "agrees that class treatment is appropriate for settlement purposes only," the court must still determine whether class certification is appropriate. *Garrett v. Advantage Plus Credit Reporting Inc.*, 2023 WL 5806408, at *3 (D. Ariz. Sept. 6, 2023). The moving party must demonstrate by a preponderance of evidence compliance with the requirements of both Rule 23(a) and (b). *See Miles v. Kirkland's Stores Inc.*, 89 F.4th 1217, 1222 (9th Cir. 2024).

When presented with a class-wide settlement before a class has been certified, "courts must peruse the proposed compromise to ratify both [1] the propriety of the certification and [2] the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003); *see also In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 949 (9th Cir. 2011) (holding that when parties seek approval of a settlement negotiated prior to formal class certification, "there is an even greater potential for a breach of fiduciary duty owed the class during settlement"). When determining whether to certify the proposed class, the court looks at whether the moving party has satisfied the requirements of Rule 23, not whether the plaintiff has "stated a cause of action or will prevail on the merits." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78 (1974) (quotation marks and citation omitted); *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 808 (9th Cir. 2010) (same). This analysis "may 'entail some overlap with the merits of the plaintiff's underlying claim.'" *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 568 U.S. 455, 465–66 (2013) (quoting *Dukes*, 564 U.S. at 351). However, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.*

1  at 466.

2      **B.**    **Rule 23 Class Certification**

3         The moving party seeking class certification must show they have satisfied all the

4  prerequisites of Rule 23(a) and at least one subsection of Rule 23(b). *Ellis v. Costco*

5  *Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011) (citing *Zinser v. Accufix Rsch.*

6  *Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001) *opinion amended on denial of reh'g*, 273

7  F.3d 1266 (9th Cir. 2001)). Under Rule 23(a), a proposed class may proceed only if the

8  each of the following prerequisites are met:

9        (1)    the class is so numerous that joinder of all members is
10                impracticable;
11        (2)    there are questions of law or fact common to the class;
      (3)    the claims or defenses of the representative parties are
12                typical of the claims or defenses of the class; and
      (4)    the representative parties will fairly and adequately
13                protect the interests of the class.

14  Rule 23(a). Rule 23 is not a mere pleading standard. *Dukes*, 564 U.S. at 350. The court

15  must conduct a "rigorous analysis" that the moving party has ***affirmatively*** demonstrated

16  that all of Rule 23(a)'s prerequisites have been satisfied. *Id.* at 350–51 (emphasis added)

17  (quoting *Falcon*, 457 U.S. at 161). If the moving party fails to satisfy any one of these

18  requirements, the court cannot certify the class.

19         If all the prerequisites of Rule 23(a) are satisfied, then for a Rule 23(b)(3) proposed

20  damages class to proceed, the moving party must demonstrate that "questions of law or

21  fact common to class members [1] predominate over any questions affecting only

22  individual members, and [2] that a class action is superior to other available methods for

23  fairly and efficiently adjudicating the controversy." [1] Rule 23(b)(3).

24  **IV.**    **DISCUSSION**

25         Plaintiff's Unopposed Motion asks this Court to (1) certify the Settlement Class, (2)

26  certify Plaintiff as the Class Representative, (3) appoint Robert Carey of Hagens Berman

27
28  [1] Because Plaintiff seeks certification only under Rule 23(b)(3) (Doc. 36 at 23–26), the Court omits the requirements for proposed classes seeking certification pursuant to Rule 23(b)(1) and (2).

Sobol Shapiro, LLP as Lead Class Counsel, (4) preliminarily approve the class-action settlement agreement between Plaintiff and Defendant, and (5) approve the proposed direct class notice. (Doc. 36 at 7). Under the terms of the Settlement Agreement, the proposed Settlement Class is composed of:

> All persons insured under an insurance policy issued by Defendant in Arizona that covered more than one vehicle for uninsured or underinsured motor vehicle insurance, and who received the limit of liability for the uninsured or underinsured benefits for only one unit of (or one vehicle's) UM or UIM coverage during the Class Period . . .

(Doc. 36 at 13) (citing Doc. 36-1).

The Court will consider whether Plaintiff has affirmatively shown that the proposed Settlement Class meets all class certification requirements of Rule 23(a) and (b). Only then will the Court examine the fairness and adequacy of the Parties' Proposed Settlement Agreement, and the proposed notice program set forth in the Settlement Agreement.

### A.    Preliminary Certification of Proposed Settlement Class

#### 1.    Rule 23(a)(1)–Numerosity

The first perquisite is numerosity, which requires the moving party to prove the "class is so numerous that joinder of all members is impracticable." Rule 23(a)(1). Impractical does not mean impossible, but "the difficulty or inconvenience of joining all members of the class." *E.g.*, *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964) (citations omitted).

Numerosity is not a fixed numerical threshold, but a fact-specific inquiry. *E.g.*, *Rannis v. Recchia*, 380 F. App'x 646, 650–51 (9th Cir. 2010).[2] Courts generally presume numerosity is satisfied when there are 40 or more members in the proposed class. *Id.* Conversely, the Supreme Court noted that a class of 15 "would be too small to meet the numerosity requirement." *Gen. Tel. Co. of the Nw. v. Equal Emp. Opportunity Comm'n*,

---

[2] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

446 U.S. 318, 330 (1980) (explaining numerosity imposes "no absolute limitations").  A proposed class size of 20 is permissible but should be rare.  *Rannis*, 380 F. App'x at 651 (citing *Estate of Felts v. Genworth Life Ins. Co.*, 250 F.R.D. 512, 520 (W.D. Wash. 2008)).

In this case, the proposed Settlement Class is composed of 22 members (Doc. 36 at 20), which does not warrant finding that joinder is presumptively impracticable.  Plaintiff cites *Rannis v. Recchia*, 380 F. App'x 646 (9th Cir. 2010) to argue that the proposed Settlement Class of 22 members satisfies numerosity.  (Doc. 36 at 20).  However, in *Rannis* the Ninth Circuit did not consider whether a class of 20 was suitable for certification in the first instance.  *Id.* at 650–51.  Instead, the *Rannis* court affirmed the district court did not abuse its discretion to refuse to decertify a 20-member class based on the circumstances of the case, including the financial burden of pursuing separate actions for $600.00 in damages and where decertification would confuse class members who had already been notified of a settlement award.  *Id.* at 651.  The Ninth Circuit affirming a district court's refusal to decertify a class does little to support Plaintiff's argument that the proposed Settlement Class is too numerous to practicably join the class members.

Plaintiff nevertheless contends that because central issues to the class members' individual claims are identical, "common sense" indicates joinder "impracticable and a waste of judicial resources."  (Doc. 36 at 20).  Plaintiff is correct that courts have found numerosity is satisfied because class treatment furthered "the interests of judicial economy and avoids duplicative suits. . . demanding the same relief."  *Koch v. Desert States Emps. & UFCW Unions Pension Plan*, 2021 WL 4318477, at *3 (D. Ariz. Sept. 23, 2021) (finding numerosity satisfied where putative class was composed of 288 members).  However, the cases cited by Plaintiff were in the context of putative classes that were already so numerous such that joinder was presumptively impracticable.  *See Zwicky v. Diamond Resorts Mgmt. Inc.*, 343 F.R.D. 101, 114 (D. Ariz. 2022) (finding numerosity satisfied where parties agreed putative class composed of 26,500 members); *Head v. Citibank, N.A.*, 340 F.R.D. 145, 149 (D. Ariz. 2022) (accepting plaintiff's estimate of at least one million class members based on 2.5 billion calls per year made by defendant); *Knapper v. Cox*

*Commc'ns, Inc.*, 329 F.R.D. 238, 241 (D. Ariz. 2019) (concluding "general knowledge and common sense indicate" joinder impracticable with putative class of 8,344 members).

Furthermore, Plaintiff's focus on the judicial economy of class treatment as opposed to adjudicating individual suits (*see* Doc. 36 at 20) overlooks the purpose of Rule 23(a)(1). Consideration of judicial economy under Rule 23(a)(1) looks at "whether judicial economy favors *either* a class action *or* joinder." *In re Zetia (Ezetimibe) Antitrust Litig.*, 7 F.4th 227, 235 (4th Cir. 2021) (emphasis in original) (citing *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 253 (3d Cir. 2016)). As recognized by the Fourth Circuit, when comparing adjudicating a class as opposed to joinder—or even individual suits—judicial economy would *always* favor class certification. *Id.* (emphasis added). Rule 23(a)(1) requires joinder impracticable, not uneconomical.[3] Impracticability as understood in this Rule means joinder is "not reasonably capable of being accomplished because it would impose very substantial logistical burdens for little, if any, benefit." *A. B. v. Hawaii State Dep't of Educ.*, 30 F.4th 828, 837 (9th Cir. 2022). Plaintiff has not established how joinder is not "reasonably capable of being accomplished," let alone that joinder imposes "very substantial logistical burdens for little, if any, benefit." *Id.* Plaintiff has not presented any evidence that joining or coordinating with the 22 members would present any logistical difficulties. Rather, Plaintiff has only asserted how class treatment is more convenient. (Doc. 36 at 20). Plaintiff cannot merely assert interests of judicial economy are better served by class treatment to allow the Court to presume joinder impracticable.

When the class size is not so numerous that joinder is presumptively impracticable, courts must consider other indicia of impracticality such as "the geographical diversity of class members, the ability of individual claimants to institute separate suits, and whether injunctive or declaratory relief is sought." *Jordan v. Los Angeles Cty.*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, *Cty. of Los Angeles v. Jordan*, 459 U.S. 810 (1982), *modified*, 726 F.2d 1366 (9th Cir. 1984); *see also A. B.*, 30 F.4th at 836

---

[3] As discussed *infra*, Rule 23(b)(3)'s superiority requirement assesses whether class treatment "is superior to other available methods for fairly and efficiently adjudicating" claims, which includes as individual actions. Rule 23(b)(3).

1    (affirming there is "no basis for declining to follow our elaboration of the numerosity
2    requirement in our initial decision in *Jordan*").  Again, the critical inquiry for numerosity
3    is not the absolute size of the class, but whether joinder of all members would be
4    impractical.  Absent in Plaintiff's Motion is any evaluation of those factors outlined in
5    *Jordan* or any other indicia that joinder is impracticable.  *See Jordan*, 669 F.2d at 1319.
6    Because the proposed Settlement Class is not presumptively numerous, the Court must
7    assess whether joinder is impracticable based on the factors identified in *Jordan*.

8                    **a.      Geographical Diversity of Class Members**

9           Even with a presumptively numerous class, courts in this Circuit consider
10   geographic diversity to determine whether joinder is impracticable.  *Compare Hum v.*
11   *Dericks*, 162 F.R.D. 628, 634 (D. Haw. 1995) (holding plaintiff failed to show joinder
12   impracticable with 200-member class because putative class members resided in same state
13   and could be identified through defendant's records) *with Brink v. First Credit Res.*, 185
14   F.R.D. 567, 570 (D. Ariz. 1999) (finding putative class size of 395 impracticable where
15   class members resided in different counties throughout the same state).  As one treatise
16   provides, "geographic dispersion of class members cuts in favor of certification as joinder
17   of all members of a dispersed class is likely less practicable than joinder of all members of
18   a similarly sized class residing in one neighborhood or working in one workplace."  1
19   William B. Rubenstein, Newberg on Class Actions § 3:12 (5th ed. 2014).

20          There is "no per se rule on the number of widely dispersed plaintiffs necessary to
21   support a finding of numerosity." *McCluskey v. Trustees of Red Dot Corp. Employee Stock*
22   *Ownership Plan & Trust*, 268 F.R.D. 670, 675 (W.D. Wash. 2010).  Here, however,
23   Plaintiff presents no evidence showing there is any geographical diversity among the
24   proposed Settlement Class members that would make joinder impracticable.  The insurance
25   policies in this case were all issued in Arizona.  (Doc. 36 at 13, 21).  There is no evidence
26   of whether the putative members, as the owners of these policies, reside across different
27   cities, counties, or states such that joinder is impracticable.  *See Mast, LLC v. Go 2*
28   *Transportation LLC*, 2018 WL 10419666, at *3 (D. Ariz. Apr. 2, 2018) (acknowledging

1    that because the 30–45 putative class members were "scattered across the country and

2    spend substantial periods of time away from home" joinder was impracticable); *see also*

3    *Tietz v. Bowen*, 695 F. Supp. 441, 445 (N.D. Cal. 1987), *aff'd*, 892 F.2d 1046 (9th Cir.

4    1990) (numerosity requirement met where 27 class members were "geographically

5    diverse"). Because Plaintiff has failed to affirmatively show geographic dispersion that

6    would make joinder impracticable, this factor does not provide any indicia that joinder is

7    impracticable.

8                    **b.    Ability of Individual Claimants to Institute Separate Suits**

9            When assessing the ability of individual members to file separate suits in the context

10   of assessing numerosity, courts have considered the putative class members' financial

11   resources to hire counsel and the financial incentive to bring individual suits. *See*

12   *McCluskey v. Trustees of Red Dot Corp. Emp. Stock Ownership Plan & Tr.*, 268 F.R.D.

13   670, 675–76 (W.D. Wash. 2010). Here, Plaintiff provides no information about whether

14   the putative class members lack the financial resources to hire counsel. The Court,

15   therefore, cannot find that joinder is impracticable based on this consideration.

16           In the class certification context generally, the size of the individual claims matters

17   because "small recoveries do not provide the incentive for any individual to bring a solo

18   action prosecuting his or her rights." *Amchem*, 521 U.S. at 617. In dicta, the Ninth Circuit

19   suggests that joinder may be impracticable where each class member would receive no

20   more than $600 in damages. *Rannis*, 380 F. App'x at 651 (affirming lower court's finding

21   the "unnecessary financial burdens on class members whose damages likely would not

22   exceed $600" weighed in favor of certification).

23           Here, Plaintiff asserts that based on the "amount of damages" to individual

24   members, the class is sufficiently numerous. (Doc. 36 at 20). It is unclear if Plaintiff's

25   assertion is because individual damages are too small to reasonably justify individual

26   actions—like in *Rannis*—or if it is merely relative to the costs of pursuing individual

27   actions. In any event, at least one court has recognized in the context of assessing

28   numerosity, where the average recovery was $75,000 per putative class member but

1    plaintiff presented evidence no other putative class member filed suit, this weighed "only

2    *slightly* in plaintiff's favor." *McCluskey*, 268 F.R.D. at 675–76 (emphasis added). Despite

3    Plaintiff's failure to make this affirmative showing, the Court is unaware of any concurrent

4    litigation regarding the issues of the instant case against Defendant. Accordingly, for the

5    purposes of this Motion only, the Court will presume that no other putative class members

6    have filed suit against the Defendant. Similar to *McCluskey*, even if recovery is great,

7    because the Court is unaware of any concurrent litigation, this provides minimal indicia

8    that joinder is impracticable.[4]

9        Because Plaintiff has failed to affirmatively demonstrate by presenting evidence of

10    the inability of the individual class members to institute separate suits, this factor does not

11    demonstrate that joinder is impracticable.

12        ### c.    Whether injunctive or declaratory relief is sought

13        Lastly, when class treatment is for injunctive and declaratory relief only, the court

14    may relax the numerosity requirement. *Sueoka v. United States*, 101 F. App'x 649, 653

15    (9th Cir. 2004) (citing 5 Moore's Federal Practice § 23.22[3][b] (3d ed.2003)); *see also A.

16    B.*, 30 F.4th at 837 (the "practical value" of joinder is diminished where "the class seeks

17    only prospective injunctive and declaratory relief"). This is largely because the type of

18    relief sought necessarily implicates judicial economy where a judgment granting an

19    injunction would avoid duplicative suits brought by other class members. *Escalante v.

20    California Physicians' Serv.*, 309 F.R.D. 612, 618 (C.D. Cal. 2015) (finding a potential

----

[4] There are other indicia courts have considered when joinder was not presumptively impracticable but absent from Plaintiff's Motion. *See Valenzuela v. Ducey*, 2017 WL 6033737, at *5 (D. Ariz. Dec. 6, 2017) (joinder impracticable wherein potential class members, as victims of domestic violence or other crimes, would more likely be reluctant to institute separate suits); *Twegbe v. Pharmaca Integrative Pharmacy, Inc.*, 2013 WL 3802807, at *6 (N.D. Cal. July 17, 2013) ("[N]otwithstanding class members' financial incentives and resources to institute suit," that class members may be reluctant to file suit for fear of unlawful retaliation from employer weighed in favor of finding joinder impracticable); *Tietz*, 695 F. Supp. at 445 (certifying 27-member class where members were "geographically diverse and, as retirees, may not have the means to bring individual suits.")

- 11 -

class of 19 is still sufficiently numerous and "in the interests of judicial economy" where plaintiff sought declaratory and injunctive relief).

Here, Plaintiff seeks to certify the Settlement Class for compensatory damages or monetary recovery. Plaintiff proposes a discrete class of members, limited in time and scope, as to which no request for prospective relief would apply.[5] Accordingly, because Plaintiff does not seek declaratory or injunctive relief, this factor does not provide any indicia that joinder is impracticable.

Considering all these factors, Plaintiff has failed to affirmatively demonstrate that the class is so numerous that joinder is impracticable as required by Rule 23(a)(1). Other than sheer number, any other indicia that would support the class is sufficiently numerous are absent. As affirmed by the Supreme Court, "actual, not presumed, conformance with Rule 23(a) remains . . . indispensable." *Dukes*, 564 U.S. at 351 (quoting *Falcon*, 457 U.S. at 160). Therefore, because Plaintiff has failed to affirmatively demonstrate that the class is so numerous that joinder is impracticable when the class size is less than 40, Plaintiff has failed to satisfy Rule 23(a)(1)'s numerosity requirement.

### 2.    Rule 23(a)(2)–Commonality

The second prerequisite is commonality, which requires "questions of law or fact common to the class." Rule 23(a)(2). To satisfy the commonality requirement, the class representative must demonstrate that common points of facts and law will drive or resolve the litigation. *See Dukes*, 564 U.S. at 350. For the purposes of Rule 23(a)(2), even a single common question satisfies the requirement. *See id.* at 359; *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 957 (9th Cir. 2013) (citing *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012)).

Here, Plaintiff identifies several questions common to the proposed class. Plaintiff asserts that all members of the proposed class purchased an Amica policy in Arizona that included multi-vehicle UM or UIM coverage and the same or substantially the same

---

[5] The proposed Settlement Class members were identified from Defendants records from October 2016 through July 2024. (Doc. 36 at 13).

limitation of liability language.  (Doc. 36 at 21).  Plaintiff also alleges that each member requested UM/UIM coverage from Amica but only received the policy limit for one covered vehicle, even though Amica did not provide the required notice under A.R.S. § 20-259.01(H).  (*Id.*)  Moreover, Plaintiff's breach of contract and breach of the duty of good faith and fair dealing claims are identical to those of the rest of the proposed class.  (*Id.*) (citation omitted).  Lastly, because all the policies in this case were issued in Arizona, Arizona law controls and applies to each member.  (*Id.*)  Therefore, Plaintiff presents common questions that can be resolved on a class-wide basis.  *See Dukes*, 564 U.S. at 350.  Accordingly, Plaintiff satisfies Rule 23(a)'s commonality requirement.

### 3.    Rule 23(a)(3)–Typicality

The third prerequisite is typicality, which requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class."  Rule 23(a)(3).  The test of typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Ellis*, 657 F.3d at 984 (citations omitted).  The typicality and commonality requirements somewhat overlap.  *See Falcon*, 457 U.S. at 157 n.13.  The named plaintiff's claims and the rest of the class claims need not be identical to satisfy the typicality requirement.  *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014).  If the claims arise from a similar course of conduct and share the same legal theory, certain factual differences or differing damages may not necessarily defeat typicality.  *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116–18 (9th Cir. 2017).

As discussed, Plaintiff's claims and the proposed Settlement Class members' claims are identical, as they arise out from the same contract and of virtually identical injuries.  Plaintiff's claims are based on the similar facts and legal theories applicable to the proposed Settlement Class.  Accordingly, Plaintiff satisfies Rule 23(a)'s typicality requirement.

### 4.    Rule 23(a)(4)–Adequacy

The fourth and final prerequisite is adequacy, which requires that the "representative

parties will fairly and adequately protect the interests of the class."  Rule 23(a)(4).  "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent."  *Amchem*, 521 U.S. at 625.

To resolve the question of legal adequacy, the Court must answer two questions: (1) whether the named plaintiff and his counsel have any conflicts of interest with other class members; and (2) whether the named plaintiff and his counsel vigorously prosecuted the action on behalf of the class.  *Evon v. L. Offs. of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012).  This adequacy inquiry considers a number of factors, including "the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive."  *Brown v. Ticor Title Ins.*, 982 F.2d 386, 390 (9th Cir. 1992).  "The adequacy-of-representation requirement tend[s] to merge with the commonality and typicality criteria of Rule 23(a)."  *Amchem*, 521 U.S. at 626 n.20.

The first prong requiring examination of potential conflicts of interest in settlement agreements "has long been an important prerequisite to class certification. That inquiry is especially critical when [ ] a class settlement is tendered along with a motion for class certification."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by Dukes*, 564 U.S. 338.  Here, Plaintiff argues there are no conflicts with other Class Members for the same reasons regarding commonality and typicality because Plaintiff suffered the same alleged injury as the rest of the proposed Settlement Class. (Doc. 36 at 23).

The second prong of the adequacy inquiry examines the vigor with which Plaintiff and his counsel have pursued the common claims.  "Although there are no fixed standards by which vigor can be assayed, considerations include competency of counsel and, in the context of a settlement-only class, an assessment of the rationale for not pursuing further litigation."  *Hanlon*, 150 F.3d at 1021 (internal citations omitted).  Probing Plaintiff's and his counsel's rationale for not pursuing further litigation, however, is inherently more complex.  "District courts must be skeptical of some settlement agreements put before them

because they are presented with a 'bargain proffered for . . . approval without the benefit of an adversarial investigation.'" *Id.* at 1022 (quoting *Amchem*, 521 U.S. at 620).

There appears to be no conflict of interest between Plaintiff and the proposed class, especially in light of the commonality and typicality requirements being met. *See Zwicky*, 343 F.R.D. at 116 (finding no conflict when commonality and typicality were met, and plaintiffs suffered the same alleged injury as the rest of the proposed class). The Court also finds that Plaintiff's counsel has no conflict with the proposed class members, as counsel has previously litigated related cases and achieved favorable results. For the same reason, the Court finds that Plaintiff's counsel is likely to "prosecute the action vigorously on behalf of the class." Plaintiff has shown adequacy. Accordingly, Plaintiff satisfies Rule 23(a)'s adequacy requirement.

Although Plaintiff has satisfied the requirements of Rule 23(a)(2)–(4), because Plaintiff has failed to affirmatively demonstrate that it has satisfied the prerequisite of Rule 23(a)(1), the Court cannot certify the proposed Settlement Class.

### 5.    Rule 23(b)

Even assuming *arguendo* Plaintiff satisfied all of Rule 23(a)'s requirements, the Court nevertheless finds that Plaintiff fails to satisfy Rule 23(b)'s requirements, specifically the superiority requirement of Rule 23(b)(3). An action that meets all the prerequisites of Rule 23(a) may be maintained as a class action only if it also meets the requirements of one of the three subdivisions of Rule 23(b). *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 163 (1974).

Plaintiff seeks to certify a class under Rule 23(b)(3) only. (Doc. 36 at 23). Accordingly, the Court only addresses those requirements. A class action may be maintained under Rule 23(b)(3) only when "[1] the questions of law or fact common to class members predominate over any questions affecting only individual members, and [2] that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(3); *see also McCluskey*, 268 F.R.D. at 677 ("[T]his Court cannot simply certify the class under Rule 23(b)(3) based on defendants'

1   lack of opposition.")

2              **i.**      **Predominance**

3          First, common questions must "predominate" over any individual questions.  While

4   this requirement is similar to the Rule 23(a)(2) commonality requirement, the standard is

5   higher at this stage of analysis.  *Dukes*, 564 U.S. at 359.  The predominance inquiry "tests

6   whether proposed classes are sufficiently cohesive to warrant adjudication by

7   representation."  *Amchem*, 521 U.S. at 623.  While Rule 23(a)(2) can be satisfied by even

8   a single question, Rule 23(b)(3) requires convincing proof that common questions

9   "predominate" over individual questions.  *Id.* at 623–24.  "An individual question is one

10  where 'members of a proposed class will need to present evidence that varies from member

11  to member,' while a common question is one where 'the same evidence will suffice for

12  each member to make a prima facie showing [or] the issue is susceptible to generalized,

13  class-wide proof.'"  *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting

14  W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–197 (5th ed. 2012)).  "When

15  common questions present a significant aspect of the case and can be resolved for all

16  members of the class in a single adjudication, there is clear justification for handling the

17  dispute on a representative rather than on an individual basis."  *Hanlon*, 150 F.3d at 1022

18  (citations omitted).

19         Here, the common issues predominate over the individual issues.  As mentioned,

20  liability will be established by policy forms, standardized letters, and the uniform practices

21  of the insurers.  Although the proposed members will have individualized damages, that

22  "does not defeat finding predominance."  *Just Film*, 847 F.3d at 1121.  Here, damages will

23  be calculated on a class-wide basis using a set formula, which is sufficient to satisfy this

24  element.  *See McClure v. State Farm Life Ins. Co.*, 341 F.R.D. 242, 254 (D. Ariz 2022)

25  (finding predominance where the damages model was "applied on a class-wide basis to

26  calculate damages for each individual policyholder in the class").  Additionally, Plaintiff

27  does not have any unique claims that are not common to the Class Members.  The Court,

28  therefore, finds that Plaintiff has shown that common questions of law and fact

1    predominate.

2                        ii.    **Superiority**

3          In addition to the predominance requirement, Rule 23(b)(3) mandates that class

4    action treatment is superior to other methods of adjudication.  "[T]he purpose of the

5    superiority requirement is to assure that the class action is the most efficient and effective

6    means of resolving the controversy."  *Wolin v. Jaguar Land Rover North America*, LLC,

7    617 F.3d 1168, 1175 (9th Cir.2010) (citations omitted).  The Court must determine

8    "whether the objectives of the particular class action procedure will be achieved in the

9    particular case."  *Hanlon*, 150 F.3d at 1023.  Rule 23(b)(3) provides a non-exhaustive list

10   for the Court to determine whether the class action is superior:

11          (A)    class   members'   interests   in   individually
12                 controlling   the   prosecution   or   defense   of
                   separate actions;
13          (B)    the  extent  and  nature  of  any  already  existing
14                 litigation  concerning  the  controversy  by  or
                   against class members;
15          (C)    the desirability or undesirability of concentrating
16                 the litigation in a particular forum; and
            (D)    likely difficulties in managing a class action.
17

18   Rule 23(b)(3).  In the context of settlement-only class certification, trial management issues

19   of Rule 23(b)(3)(D) are irrelevant.  *Amchem*, 521 U.S. at 620.  However, the factors

20   identified in Rule 23(b)(3)(A) and (B) are "designed to protect absentees by blocking

21   unwarranted or overbroad class definitions—demand undiluted, even heightened,

22   attention."  *Id.*  Plaintiff argues that class treatment is the superior method for adjudicating

23   the claims presented here because class treatment will "reduce litigation costs and promote

24   greater efficiency."  (Doc. 36 at 26).  The Court considers these two factors in turn.

25                        a.    **Rule 23(b)(3)(A)—Interest in Individually Controlling**
26                              **Litigation**

27         The first factor is the interest of each member in "individually controlling the

28   prosecution or defense of separate actions."  Rule 23(b)(3)(A).  The Supreme Court and

Ninth Circuit have noted that there is less interest in individually controlling litigation when individual claims are too small to justify separate adjudication. *See Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") (citations omitted); *Zinser*, 253 F.3d at 1190 ("Where damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action.") (citations omitted).

Here, Plaintiff makes a bareface assertion, and Defendant does not dispute, that "many of their claims are too small to make individual litigation possible." (Doc. 36 at 26). However, as discussed *supra*, Plaintiff does not explain whether this is because individual damages are too small to reasonably justify individual actions or if it is merely relative to the costs of pursuing individual actions. The small class and the net settlement to the overall class suggest that recovery is not too small. As provided in Plaintiff's Motion, the projected value owed to the 22 putative member class is $1,773,697.67 (*see* Doc. 36 at 13) and will be allocated based on the provided percentages. (*See* Doc. 36-1 at 17). Therefore, the recovery to individual class members is in the tens of thousands of dollars.[6] Furthermore, based on the percentages provided in the Settlement Agreement, there is a wide range of the amount of recovery to each class member.

The Supreme Court in *Amchem* explained that "[w]hile the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind vindication of the 'rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'" *Amchem*, 521 U.S. at 617 (citing Kaplan, A Prefatory Note, 10 B.C. IND. & COM. L. REV. 497, 497 (1969)). Therefore, although *Amchem* stopped short of categorically prohibiting classes where individual damages run high, it suggests there should be compelling need for class wide treatment of such cases. *Id.* Additionally, the Ninth Circuit

---

[6] This is the amount calculated by Plaintiff to the Settlement Class after administration costs, litigation costs and attorneys' fees. (Doc. 36 at 13).

in *Zinser v. Accufix Research Institute, Inc.*, suggests that a large individual recovery weighs against superiority, specifically Rule 23(b)(3)(A). *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1190–91 (9th Cir. 2001), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001). Even with a putative class exceeding 10,000 and members spread throughout the country, the *Zinser* court noted the *minimum* damages claim of $50,000 to each class member "does not argue persuasively" that class treatment is the superior means of adjudication. *Id.* (citation omitted).

However, the recovery to each member is large is not determinative. If Plaintiff's assertion that the recovery is small based on the costs of litigation, then the Court is more willing to accept that class treatment is the superior method for adjudicating claims. "Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Wolin*, 617 F.3d at 1175; s*ee also Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 515 (9th Cir. 2013) ("In light of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims."); *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir.2001) ("If plaintiffs cannot proceed as a class, some—perhaps most—will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover."). Accepting Plaintiff's assertion, the Court finds that this factor is neutral.

### b.     Rule 23(b)(3)(B)—Other Pending Litigation

The second factor examines the extent and nature of any ongoing litigation concerning the controversy already commenced by or against members of the class. Rule 23(b)(3)(B). This factor is intended to serve the judicial economy by reducing the risk of inconsistent adjudications with already pending lawsuits. *Zinser*, 253 F.3d at 1191 (citation omitted). If the Court finds that several other actions are pending and that a threat of inconsistent adjudications exist, a class action may not be appropriate. *Id.* This inquiry also intersects with Rule 23(b)(3)(A). The existence of ongoing litigation indicates that

1    some parties may have decided that individual actions are an acceptable way to proceed

2    and may consider them preferable to a class action. *Id.*

3         The Court is unaware of any concurrent litigation about the issues of the instant case

4    against Defendant.   There are competing views of whether the absence of competing

5    lawsuits indicates an interest in individuals controlling this action or other actions.

6    *Compare Howard v. Web.com Grp. Inc.*, 2020 WL 3827730, at *6 (D. Ariz. July 8, 2020)

7    ("[T]his Court is unaware of any concurrent litigation begun by any of the other putative

8    class members regarding Defendant's payment practices. A class action appears to be the

9    superior method of adjudicating the state law claims."); *Wilcox v. Swapp*, 330 F.R.D. 584,

10   597 (E.D. Wash. 2019) (finding superiority satisfied where "no party has made the Court

11   aware of any other actions against Defendants for DPPA violations similar to the class

12   claims here"); *Wolph v. Acer America Corp.*, 272 F.R.D. 477, 489 (N.D. Cal. 2011) ("There

13   is no other pending litigation that relates to the issues raised herein. Thus, the first two

14   factors [of Rule 23(b)(3) weigh in favor of certification.") *with Cole v. Gene by Gene, Ltd.*,

15   322 F.R.D. 500, 508 (D. Alaska 2017), *aff'd*, 735 Fed. App'x. 368 (9th Cir. 2018)

16   ("[N]either party has apprised the Court of any other pending litigation against Gene by

17   Gene for alleged violations of Alaska's Genetic Privacy Act. Accordingly, there is no

18   indication that a class action would achieve greater economy of time, effort, or expense.

19   Therefore, this factor weighs against finding that a class action is the superior method of

20   adjudication.").   Here, there is no record evidence establishing that individual proposed

21   Settlement Class members have an interest in prosecuting their cases individually or that

22   there is any pre-existing litigation by proposed Class members regarding this issue.  While

23   the Court is inclined to agree with the seeming majority view among courts that this

24   absence indicates a class action is superior, Plaintiff still has failed to meet its burden.[7]  As

25   discussed *supra*, because Plaintiff failed to satisfy all the requirements of Rule 23(a),

26   specifically the numerosity requirement, the Court cannot find that the class action device

27   appears to be the superior method for adjudicating the claims in this matter.  Because

28

---

[7] However, objectors at a fairness hearing may reveal otherwise.

Plaintiff has failed to meet its burden of affirmatively showing that it has satisfied all the requirements of Rule 23(a) and (b), the Court cannot certify the class.

      **B.      Preliminary Evaluation of Fairness of Proposed Class Action Settlement**

      Once a settlement class is preliminarily certified, the Court must next make a preliminary determination whether the class action settlement is "fair, reasonable, and adequate" pursuant to Rule 23(e)(2). Because the Court cannot certify the class, the Court cannot make a preliminary evaluation of the fairness of the proposed class action settlement.

**V.    CONCLUSION**

      Accordingly,

      **IT IS ORDERED** that Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement and Certification of the Settlement Class (Doc. 36) is **DENIED without prejudice**. The Court gives Plaintiff leave to affirmatively show how it has satisfied all the requirements of Rule 23(a) and (b).

      Dated this 19th day of March, 2025.

Honorable Diane J. Humetewa
United States District Judge